IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| **IN RE UNITED HEALTH ERISA 401(k) LITIGATION** | Civil Action No.: 25-cv-01751 |
| **THIS DOCUMENT RELATES TO:**<br><br>**ALL ACTIONS** | **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

Plaintiffs Theresa M. Kotalik, Debra A. Wisner, Kerry Clements, Joseph L. Clements, and Holly Hendrickson ("Plaintiffs"), by and through their attorneys, on behalf of UnitedHealth Group 401(k) Savings Plan (the "Plan"), themselves, and all others similarly situated, state and allege as follows[1]:

## INTRODUCTION

1.      This is a class action brought pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132, against the Plan's fiduciaries, which include UnitedHealth Group Inc. ("UnitedHealth") and UnitedHealth Group Employee Benefits Plans Administrative Committee ("Committee") for breaches of their fiduciary duties. (Collectively, UnitedHealth and the Committee are

---

[1] Importantly, while the Plan is a legal entity that can sue and be sued, *see* ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1), in a breach of fiduciary duty action such as this and pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants. In short, the Plan is not a party to this action. Rather, this action is brought for the benefit of the Plan and its participants.

referred to as "Defendants").

2.      Plaintiffs allege that during the putative Class Period, Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA, 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan and its participants including Plaintiffs.

3.      As set forth herein, Defendants violated ERISA through their failing to "defray[] reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(A)(ii). Specifically, Defendants' failure stems from the use of Plan participant forfeited funds to reduce UnitedHealth contributions to the Plan instead of using the funds to reduce or eliminate the amounts charged to Plan participants for Plan administrative expenses and costs.

4.      More specifically, and as set forth in more detail below, Plaintiffs allege that Defendants: (a) improperly utilized forfeited Plan assets to disloyally reduce future employer contributions for their own selfish interests; (b) did not engage in a prudent process when deciding to use Plan forfeitures for the employer's own benefit rather than to reduce Plan expenses; (c) failed to monitor those responsible on the Committee for allocation of Plan forfeitures; (d) engaged in party-in-interest fiduciary prohibited transactions by enriching themselves through Plan forfeitures; and (e) engaged in fiduciary prohibited transactions by favoring their own accounts with Plan forfeitures.

5.      Defendants' mismanagement of the Plan – using forfeited funds for UnitedHealth's benefit rather than "for the exclusive purpose of providing benefits to participants and their beneficiaries" -- constitutes a breach of the fiduciary duty, including 29 U.S.C. § 1104(a)(A)(i).

6. Defendants' use of forfeited funds for UnitedHealth's benefit during this time is especially egregious when weighed against the special circumstances UnitedHealth was experiencing at the time – significant revenue growth and ample cash or equivalents on hand. As explained herein, a prudent fiduciary, acting in a like capacity and familiar with the Company's well-documented public success, would have plainly used forfeited funds for the Plan participants' benefit rather than UnitedHealth's benefit.

7. Plaintiffs' claims are brought on behalf of the Plan and seek equitable remedies for losses suffered by the Plan under 29 U.S.C. §§ 1132(a)(2) and 409(a).

8. Defendants' actions were contrary to actions of a reasonable fiduciary in like circumstances and cost the Plan and its participants millions of dollars.

## SUMMARY OF CLAIMS

9. Plaintiffs bring this action as a nationwide class action to recover damages suffered due to Defendants' breaches of their fiduciary duties.

10. Specifically, Plaintiffs bring this suit on behalf of a class of similarly situated persons composed of:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time during the Class Period.

11. Plaintiffs' claims are brought on behalf of the Plan and seek equitable remedies for losses suffered by the Plan under 29 U.S.C. §§ 1132(a)(2) and 409(a).

12. Plaintiffs allege on behalf of the Class that Defendants violated ERISA by failing to act with an eye towards the interests of the Plan's participants and beneficiaries. As set forth herein, rather than act in the best interests of the Plan's participants and

3

beneficiaries, Defendants in their fiduciary capacity acted in the interests of United Health by using funds from forfeited accounts to defray UnitedHealth's costs instead of using such funds to reduce the Plan's administrative expenses and thus lower the expenses and costs to the Plan's participants and beneficiaries.

13.    Notably, this was done when UnitedHealth was experiencing remarkable and sustained growth in its revenue and, thus, a prudent fiduciary in like circumstances would have defrayed expenses to the Plan's participants rather than defray costs to the employer.

14.    Plaintiffs assert that Defendants' conduct concerns the Plan's management and operation -- and does not concern the design, establishment, or modification of an employee benefit plan. Stated another way, the conduct complained of herein concerns Defendants' conduct as the Plan's fiduciaries and not as the Plan's settlor.

15.    Defendants exercised discretion and control over Plan assets and thus were making decisions of Plan administration rather than Plan design when they chose to exercise discretion in the use of forfeited funds for the benefit of UnitedHealth through reducing employer contributions rather than solely in the interest of the participants and beneficiaries through the use such funds to reduce Plan expenses.

## PARTIES

### PLAINTIFFS

16.    Plaintiff Theresa M. Kotalik is a resident of Ingleside, Texas. Plaintiff Kotalik has worked for UnitedHealth since June 2018 until present remotely as a Network Contract on the Dental side for Specialty Benefits Network Contract Manager with a focus on Retention. She is a current participant in the Plan.

4

17.    Plaintiff Debra A. Wisner is a resident of Pequot Lakes, Minnesota. Plaintiff Wisner worked for them from Jan 2010 until March 2021, starting in accounts payable and finishing as a business analyst and worked at the corporate office at 9900 Bren road, Minnetonka, MN. She rolled out of the Plan in April 2024.

18.    Plaintiffs Joseph and Kerry Clements are residents of Golden Valley, Minnesota. Joseph Clements was employed by UnitedHealth from October 2006 to January 2020 at both UnitedHealth's Eden Prairie and Minnetonka, MN, locations in the position of finance director for capital finance. Kerry Clements was employed by UnitedHealth from 2010 to 2017 at its Minnetonka, MN, location, in the positions of senior business process analyst, IT business analyst, and operations consultant. Joseph Clements rolled out of the Plan in April 2025 and Kerry Clements is still in the Plan.

19.    Plaintiff Holly Hendrickson resides in the State of Colorado. Plaintiff is a participant in the Plan. As such, Plaintiff has standing to bring this action on behalf of the Plan because she participated in the Plan and was injured by Defendants' unlawful conduct.

20.    Plaintiffs have Article III standing to bring this action on behalf of UnitedHealth Plan because they suffered actual injuries to their Plan accounts by not having forfeited Plan assets reallocated to their Plan accounts as a result of UnitedHealth reducing employer contributions for their own benefit. Those injuries are fairly traceable to Defendants disloyally using Plan forfeitures for their own benefit to reduce their future contributions to UnitedHealth Plan. Finally, these injuries diminished the savings in Plaintiffs' retirement accounts in the Plan and reduced, dollar for dollar (and more when compounded) Plaintiffs' retirement savings.

5

21. Having established Article III standing, Plaintiffs may seek recovery under 29 U.S.C. § 1132(a)(2), ERISA § 502(a)(2), on behalf of the Plan and for relief that sweeps beyond their own injuries.

22. Plaintiffs did not have knowledge of all material facts necessary to understand that Defendants breached their fiduciary duties and engaged in other unlawful conduct in violation of ERISA until shortly before this suit was filed.

23. Having never managed a very large 401(k) Plan, Plaintiffs, and all participants in the Plan, lacked actual knowledge of the misuse and misallocation of Plan forfeitures.

**DEFENDANTS**

24. UnitedHealth Group Incorporated ("UnitedHealth") is an American multinational for-profit UnitedHealth specializing in health insurance and health care services based in Eden Prairie, Minnesota. Selling insurance products under UnitedHealthcare, and health care services under the Optum brand, it is the world's ninth-largest company by revenue and the largest health care company by revenue. The headquarters are located at 9900 Bren Rd E, Minnetonka, MN 55343.

25. UnitedHealth is the Plan sponsor under 29 U.S.C. § 1002(16)(B).

26. Under 12.3 of the Plan document, UnitedHealth delegated to UnitedHealth's Executive Vice President the authority to determine the number of members on Plan Committee, and to appoint and remove those Committee members. In this role, Defendant UnitedHealth, through its Executive Vice President, acted in a fiduciary capacity and had the responsibility to monitor those on the Plan Committee responsible for the loyal and

6

prudent allocation of Plan forfeitures.

27.    Consequently, UnitedHealth appointed individuals to serve on the Committee.  Under ERISA, fiduciaries with the power to appoint have the concomitant fiduciary duty to monitor and supervise their appointees.

28.    Accordingly, UnitedHealth during the putative Class Period is/was a fiduciary of the Plan, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), because it had a duty to monitor the actions of the Committee.

29.    As discussed above, UnitedHealth appointed the Committee to, among other things, serve as the "Plan Administrator."[2]

30.    The Committee is the Plan's administrator within the meaning of 29 U.S.C. § 1002(16)(A), and the Committee is a fiduciary for the Plan. In addition, the members of the Committee are also fiduciaries for the Plan. "[W]here, as here, a committee or entity is named as the plan fiduciary, the corporate officers or trustees who carry out the fiduciary functions are themselves fiduciaries and cannot be shielded from liability by UnitedHealth." *See Stewart v. Thorpe Holding Co. Profit Sharing Plan,* 207 F.3d 1143, 1156 (9th Cir. 2000).

31.    For the foregoing reasons, the Committee and each of its members were fiduciaries of the Plan during the Class Period, within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A).

---

[2] Accordingly, the term "Committee" and "Plan Administrator" are used interchangeably herein.

*Additional John Doe Defendants*

32.    To the extent that there are additional officers, employees and/or contractors of UnitedHealth who are/were fiduciaries of the Plan during the Class Period, the identities of whom are currently unknown to Plaintiffs, Plaintiffs reserve the right, once their identities are ascertained, to seek leave to join them to the instant action. Thus, without limitation, unknown "John Doe" Defendants 1–10 include, but are not limited to, Committee members, Plan Administrators, and/or UnitedHealth officers, employees and/or contractors who are/were fiduciaries of the Plan within the meaning of ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A), during the Class Period.

## JURISDICTION AND VENUE

33.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

34.    This Court has personal jurisdiction over Defendants because they transact business in this District, reside in this District, and/or have significant contacts with this District, and because ERISA provides for nationwide service of process.

35.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district.

## FACTUAL ALLEGATIONS

### ERISA'S OBLIGATIONS

36.    ERISA exists, in large part, to protect the interests of participants, and their

8

beneficiaries, in employee retirement plans. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citing 29 U.S.C. § 1001(b)).

37.    "[A]ny person who exercises discretionary authority or control in the management or administration of an ERISA plan" is, under the statute's terms, a fiduciary. *See Barchock v. CVS Health Corp.*, 886 F.3d 43, 44 (1st Cir. 2018) (citing 29 U.S.C. § 1002(21)(A)).

38.    To safeguard Plan participants and beneficiaries, ERISA imposes strict fiduciary duties of loyalty and prudence upon employers and other plan fiduciaries.

39.    ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of like character and with like aims." ERISA § 404(a)(1)(A), (B), 29 U.S.C. § 1104(a)(1)(A), (B).

40.    The Supreme Court has held that "ERISA plan fiduciaries must discharge their duties 'with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.'" *Hughes v. Northwestern Univ.*, 595 U.S. 170, 172 (2022) (quoting 29 U.S.C. §1104(a)(1)(B)).

41.    A fiduciary's duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F. 2d 263, 272 n.8 (2d Cir. 1982). Further, a fiduciary's duties are "derived

from the common law of trusts" which, consequently, requires courts to "look to the law of trusts." *Tibble v. Edison Int'l,* 575 U.S. 523, 528–29 (2015).

42.     The continuing duty to monitor is a subset of the duty of prudence, *Tibble v. Edison Int'l*, 575 U.S. 523, 529–30 (2015), and requires a plan fiduciary to "incur only costs that are reasonable in amount and appropriate to the investment responsibilities of the trusteeship." *See Hughes v. Northwestern University*, 63 F.4th 615, 626 (7th Cir. 2023) ("Hughes II") (quoting RESTATEMENT (THIRD) OF TRUSTS § 90(c)(3)).

43.     The inquiry into the duty of prudence is "context specific." *Id*. at 93.

44.     Importantly, a fiduciary must discharge their duties "in accordance with the documents and instruments governing the plan" only "insofar as such documents and instruments are consistent with the provisions" of ERISA's duty of prudence. 29 U.S.C. §1104(a)(1)(D).

45.     Defendants are ERISA fiduciaries as they exercise discretionary oversight, authority, or control over UnitedHealth Plan that it sponsors and provides to its employees.

46.     As set forth herein, Defendants breached these well-established fiduciary duties.

47.     UnitedHealth is a party-in-interest because it is an employer "any of whose employees are covered by such plan." *Id*., § 1002(14)(C).

48.     Moreover, because Defendants are fiduciaries of the Plan and "deal[t] with the assets of the plan in [their] own interest or for [their] own account," they violated the fiduciary duty of loyalty and engaged in prohibited transactions under both 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b)(1), by benefiting themselves as far as reducing

their own future contributions to the Plan.

49.     Plaintiffs were all "participants" in a defined-contribution plan under ERISA Section 3(7), 29 U.S.C. § 1002(7) during the Class Period.

50.     As such, Plaintiffs suffered injury because Defendants failed to use forfeited Plan funds to pay Plan administrative expenses, which would have reduced or eliminated the amounts charged to Plaintiffs' individual accounts.

**THE PLAN**

51.     With 267,555 active participants and $22,432,100,178 in assets under management as of December 31, 2023, the Plan is one of the single largest retirement plans in the country. It ranks in the top 0.01% of over 500,000 401(k) plans in terms of the number of participants and the top 0.01% of plans in terms of the value of its assets.

52.     The Plan is funded by a combination of wage withholdings by Plan participants and UnitedHealth matching contributions, each of which is deposited into the Plan's trust fund.

53.     According to the Plan's Summary Plan Description ("SPD"), the purpose of the Plan is "to help [employees] save for [their] retirement." *See* SPD at 3.

54.     The Plan is a "defined contribution" plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

55.     As an individual account, defined contribution retirement plan, UnitedHealth Plan "provides for an individual account for each participant and for benefits solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeiture of accounts of other participants which may be allocated to such

participant's account." 29 U.S.C. § 1002(34).

56.    In accordance with 29 U.S.C. § 1103(a), the assets of the Plan are held in a trust fund that is separate from UnitedHealth's assets.

57.    According to the "Statement of Changes in Net Assets Available for Benefits", for the year ended December 31, 2023, the Plan had over $22.4 billion in net assets available for benefits to the Plan's participants. *See* 2023 Form 5500.

58.    Pursuant to Section 2 of the Plan document ("Eligibility and Participation"), employees are automatically enrolled in the Plan at a pretax contribution rate of 3%, and are fully vested in their contributions at all times.

59.    If a Plan participant leaves UnitedHealth's employ prior to completing two years of service, they will forfeit any unvested matching contributions made by UnitedHealth to their account.

**FORFEITED ACCOUNTS**

60.    Forfeitures are the nonvested portion of a participant's account that is lost upon termination of employment.

61.    The Plan gave the Committee a discretionary choice about how to use the forfeitures each year.

62.    More specifically, the relevant part of Section 6.2.3. of the Plan document ("Use of Forfeitures") states as follows:

> 6.2.3 **Use of Forfeitures**. Forfeitures *shall be used* for the following purposes, *as determined by the Administrative Committee, in its discretion*: to make restorations for rehired Participants as required in Section 6.2.2, to restore any forfeited transferred account balances as required in Section 7.5.3, to reduce Employer Safe Harbor Matching Contributions, to reduce

Employer Profit Sharing Contributions, to reduce Plan expenses in the Plan Year in which the Participant's forfeiture event occurred or in the succeeding Plan Year, or to correct errors, omissions and exclusions. (emphasis added)

63.    In other words, and putting aside restoration of forfeited benefits, the Committee had significant discretion to either allocate the forfeited funds to pay Plan expenses, thereby saving the participants (who otherwise pay those expenses) money, or elect to use the forfeited funds to reduce UnitedHealth's own contributions to the Plan, thereby acting in UnitedHealth's own best interest.

64.    When Defendants decided to reduce employer contributions, by the Plan's own language, it was a "discretionary," fiduciary decision.

65.    Indeed, per the 2023 Form 5500, "Forfeitures **can be used** to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2023, employer contributions were reduced by $5,514,378 from forfeiture accounts." (emphasis added).

66.    This language, consistent both with the applicable Plan and SPD language, makes clear that the Committee had fiduciary discretion to use the Plan forfeited funds for the Plan expenses, but used Plan forfeitures in a discretionary matter to pay for employer contributions.  The Committee in 2023 did not use that money to reduce Plan expenses, which would have benefitted participants rather than UnitedHealth.

67.    Similar language was contained in each Form 5500 during the Class Period.

68.    For example, 2022's Form 5500 stated: "Forfeitures **can be used** to reduce future employer contributions or to pay certain administrative expenses. (emphasis added). During the year ended December 31, 2022, employer contributions were reduced by

13

$3,902,685 from forfeiture accounts." (emphasis added).

69.    This language, consistent both with the applicable Plan and SPD language, make clear that the Committee had fiduciary discretion to use the Plan forfeited funds for the Plan expenses, but used Plan forfeitures in a discretionary matter to pay for employer contributions.  The Committee in 2022 did not use that money to reduce Plan expenses, which would have benefitted participants rather than UnitedHealth.

70.    Similarly, 2021's Form 5500 stated: "Forfeitures **can be used** to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2021, employer contributions were reduced by $4,008,467 from forfeiture accounts." (emphasis added).

71.    This language, consistent both with the applicable Plan and SPD language, make clear that the Committee had fiduciary discretion to use the Plan forfeited funds for the Plan expenses, but used Plan forfeitures in a discretionary matter to pay for employer contributions.  The Committee in 2021 did not use that money to reduce Plan expenses, which would have benefitted participants rather than UnitedHealth.

72.    Likewise, 2020's Form 5500 stated: "Forfeitures **can be used** to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2020, employer contributions were reduced by $2,683,911 from forfeiture accounts." (emphasis added).

73.    This language, consistent both with the applicable Plan and SPD language, make clear that the Committee had fiduciary discretion to use the Plan forfeited funds for the Plan expenses, but used Plan forfeitures in a discretionary matter to pay for employer

contributions. The Committee in 2020 did not use that money to reduce Plan expenses, which would have benefitted participants rather than UnitedHealth.

74. The 2019 Form 5500 stated: "Forfeitures **can be used** to reduce future employer contributions or to pay certain administrative expenses. During the year ended December 31, 2019, employer contributions were reduced by $3,223,568 from forfeiture accounts." (emphasis added).

75. This language, consistent both with the applicable Plan and SPD language, makes clear that the Committee had fiduciary discretion to use the Plan forfeited funds for the Plan expenses, but used Plan forfeitures in a discretionary matter to pay for employer contributions. The Committee in 2019 did not use that money to reduce Plan expenses, which would have benefitted participants rather than UnitedHealth.

76. All told, based on available information provided in the Form 5500s, between 2019 and 2023, over $19.3 million in forfeited funds were used to reduce UnitedHealth matching contributions.

77. The use of the forfeited funds in this manner presented Defendants with a clear conflict of interest.

78. Using forfeitures to reduce the cost of UnitedHealth's contributions to the Plan would save, and has saved, the Defendants millions of dollars.

79. Yet, so long as there is no risk that UnitedHealth would be otherwise unable to financially satisfy its contribution obligations to the Plan, such a use of forfeitures would be solely in the best interest of UnitedHealth. There was no risk that UnitedHealth would be financially unable to satisfy its contributions during the Class Period.

15

80. Conversely, using forfeitures to pay Plan expenses would in most cases inure to the benefit of the Plan participants, by reducing or eliminating the amounts charged to their individual accounts to otherwise cover those expenses.

81. Indeed, based on the Form 5500s for the relevant years during the Class Period, there was at least $6 million in "Administrative expenses" for each year. All told, for the period 2019 through 2023, the Plan's "Administrative expenses" totaled some $32,610,000.00.

82. Upon information and belief, despite both the clear conflict of interest faced by Defendants and their legal fiduciary duty, Defendants failed to make any real effort to resolve that conflict of interest in a manner that would best serve the interests of the Plan participants.

83. Indeed, Defendants abdicated their duty of prudence by failing to undertake any type investigation into which use of the forfeited funds was in the best interest of the Plan participants.

84. Nor did Defendants engage any independent consultant to advise them on the best course of action for allocating forfeitures, as a prudent person would have.

85. While ERISA requires Defendants to defray the Plan's expenses, 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan permits Defendants to use forfeitures to pay Plan expenses, Defendants, upon information and belief, failed to use any forfeitures for that purpose throughout the Class Period.

86. Instead, Defendants used the forfeitures to offset UnitedHealth's matching contribution and profit sharing obligations to the Plan, despite there being no risk that

UnitedHealth would be unable to otherwise financially satisfy its contribution obligations to the Plan.

**UNITEDHEALTH'S FINANCIAL PERFORMANCE**

87.     During the Class Period, UnitedHealth experienced extraordinary financial performance including sustained revenue growth.

88.     For example, in the January 16, 2025 Press Release, UnitedHealth touted that its "2024 revenues grew $28.7 billion or 8% year-over-year to $400.3 billion, driven primarily by serving people more comprehensively across the enterprise."

89.     In the same press release, UnitedHealth disclosed that 2024's full year earnings from operations were $32.3 billion and that UnitedHealth "returned over $16 billion to shareholders through dividends and share repurchases."

90.     In 2023, UnitedHealth's revenues grew $47.5 billion or 14.6% year-over-year, with UnitedHealth returning $14.8 billion to shareholders through dividends and share repurchases.  *See*  https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2023/UNH-Q4-2023-Release.pdf (last visited April 22, 2025).

91.     In 2022, UnitedHealth's revenues grew $36.6 billion or 13% year-over-year, with UnitedHealth returning $13 billion to shareholders through dividends and share repurchases. *See* https://www.sec.gov/Archives/edgar/data/731766/000073176623000003/a2022q4exhibit991.htm (last visited April 22, 2025).

92.     Indeed, UnitedHealth's annual revenue increased every year from 2009 through 2024, with at least double-digit revenue growth between 2021 and 2022 and between 2022 and 2023. *See* https://www.macrotrends.net/stocks/charts/UNH/united

health-group/revenue (last visited April 22, 2025).

93.     Thus, during the years of the putative class period, UnitedHealth had more than sufficient cash and equivalents on hand to satisfy its contribution obligations to the Plan.

94.     Yet, despite this robust financial performance, Defendants consistently acted solely in their own self-interest, and in violation of their fiduciary duty to the Plan participants, by improperly using Plan forfeitures solely to reduce UnitedHealth's matching contributions to the Plan.

95.     By using forfeitures during the Class Period exclusively to benefit UnitedHealth by reducing its Plan contributions, Defendants failed in their fiduciary duty to Plan participants by causing deductions from their individual accounts to cover expenses that otherwise could have been covered by forfeitures.

96.     In contrast, given the circumstances regarding UnitedHealth's significant financial performance, a prudent fiduciary in like circumstances would have defrayed expenses to the Plan's participants rather than defray costs to the employer.

97.     Defendants, at their own discretion, effectively placed their own interests above the interests of the Plan and its participants and caused harm to the Plan and its participants by reducing Plan assets, not allocating forfeited funds to Plan participants' accounts, and also caused Plan participants to incur millions in expenses that could otherwise have been covered in whole or in part by forfeited funds.

**DEFENDANTS BREACH THEIR FIDUCIARY DUTIES AND ENGAGED IN PROHIBITED TRANSACTIONS BY EXCLUSIVELY USING PLAN FORFEITURES TO REDUCE THEIR PLAN CONTRIBUTIONS**

98.     Plaintiffs assert that Defendants violated their fiduciary duties through their

18

decisions regarding how to apply forfeited contributions after the underlying contributions that comprised the forfeited contributions were paid to the Plan and, thus, had become Plan assets.

99.    The following table illustrates the amount the Plan and its participants (including Plaintiffs) lost in potential Plan expenses being paid through forfeitures as a result of Defendants' using Plan forfeitures exclusively for their own benefit from 2019 through 2023 (compounded through 2024), rather than paying all Plan expenses as discretionarily permitted by the Plan:

**Forfeitures Not Used to Pay Plan Expenses (*Disloyal Discretion*)**

| | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|---|
| **Minimum Forfeitures Available to offset Plan Expenses** (Only Direct Compensation) | $3,223,568 | $2,683,911 | $4,008,467 | $3,902,685 | $5,514,378 | |
| **Total Direct Compensation** | $6,629,262 | $6,208,415 | $5,999,781 | $6,837,861 | $6,935,140 | |
| **Forfeitures used to pay Plan Expenses** | $0 | $0 | $0 | $0 | $0 | |
| **Potential Losses** | $3,223,568 | $2,683,911 | $4,008,467 | $3,902,685 | $5,514,378 | |
| Compounding % (Plan Return) | | 14.61% | 15.72% | -16.51% | 17.91% | 20.21% |
| **Potential Cumulative Compounded Losses** | $3,223,568 | $6,378,349 | $11,389,242 | $13,411,306 | $21,327,255 | $25,637,841 |

100.    ERISA explicitly requires Plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).

101.    Furthermore, in deciding to use Plan forfeiture to benefit itself as far as reducing future UnitedHealth contributions through use of Plan assets, Defendants acted

19

with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

102. Plan assets in trust should have been used for the exclusive purpose for which they were contributed in the first place: for the benefit of Plan participants through the reduction of their Plan expenses.

103. Defendants should have allocated this forfeiture money to pay Plan expenses, as permitted by the Plan, and then Plan participants would have been better off.

104. Defendants breached their fiduciary duties of loyalty and prudence when they chose to allocate forfeited amounts to reduce employer contributions rather than to pay administrative expenses given the circumstances of UnitedHealth during the relevant time period.

105. Specifically, as noted above, UnitedHealth was experiencing extraordinary revenue generation. Thus, UnitedHealth breached their fiduciary duties to the Plan and its participants by choosing, in their discretion, to reduce UnitedHealth's obligations rather than reduce the Plan's expenses.

106. Indeed, upon information and belief, Defendants ignored the significant revenue generation of UnitedHealth and instead automatically chose to utilize forfeited amounts to reduce employer contributions.

107. A prudent fiduciary in this particular context would have at minimum engaged in a reasoned and impartial decision-making process considering all relevant factors before determining how to use the forfeited funds in the best interest of the

20

participants and beneficiaries. Defendants, upon information and belief, did not do this.

108.   Furthermore, in deciding to use Plan forfeiture to benefit itself as far as reducing future UnitedHealth contributions through use of Plan assets, Defendants acted with a conflict of interest in administering the Plan and in managing and disposing of its assets. Such self-dealing is not a neutral intra-plan transfer and benefits the employer and thereby violates both the ERISA party-in-interest and fiduciary prohibited transaction rules under 29 U.S.C. § 1106(a)(1)(D) and 29 U.S.C. § 1106(b).

109.   Defendants simply chose to only benefit UnitedHealth by using forfeited funds to reduce UnitedHealth's obligations regarding its matching and profit sharing contribution obligations.

110.   Plan assets in trust should have been used for the exclusive purpose for which they were contributed in the first place: for the benefit of Plan participants through the reduction of their Plan expenses, unless there were financial reasons that made reducing company contributions in the participants' best interests.

111.   Defendants should have allocated this forfeiture money to pay Plan expenses, as permitted by the Plan, and then Plan participants would have been better off.

112.   Although it is possible that reducing employer contributions may be in the best interests of participants in instances where there is a risk that UnitedHealth may be financially unable to satisfy its matching contribution obligations, there is no evidence that UnitedHealth had such financial inability.

113.   Rather, the evidence, as detailed in ¶¶ 81-86 above, indicate just the opposite: UnitedHealth experienced extraordinary financial results during the Class Period, and was

21

in no risk of being unable to satisfy its contribution obligations under the Plan absent the use of forfeitures.

114. Thus, using forfeitures to reduce future employer contributions at a time that UnitedHealth was experiencing extraordinary financial results is in the best interest of UnitedHealth because that option decreases UnitedHealth's own contribution costs.

115. This conduct constituted a breach of ERISA's duty of prudence and loyalty.

116. In short, UnitedHealth received a benefit amounting to tens of millions of dollars in contribution expenses by electing to act only in its best interest by using Plan assets as a substitute for UnitedHealth's own future contributions to the plan.

117. Plaintiffs, and the other members of the Class, are entitled to receive benefits in the amount of the difference between the value of their account currently, or as of the time their account was distributed, and what their account would have been worth but for Defendants' breaches of fiduciary duties as described herein.

## CLASS ACTION ALLEGATIONS

118. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and 23(b)(1), or, in the alternative, 23(b)(2), of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons:

> All persons, except Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time during the Class Period.

119. The members of the Class are so numerous that joinder of all members is impractical. For example, the 2023 Form 5500 indicates that there are over 266,000 Plan participants at year's end.

120.    There are questions of law and fact common to the class because Defendants owed fiduciary duties to the Plan and to all participants and beneficiaries and took the actions alleged herein with respect to the Plan and not as to any individual. Such common questions include:

      i.    Whether Defendants breached their fiduciary duties of loyalty and prudence, with respect to the administration, management and supervision of Plan services provided in allocating Plan forfeitures;

      ii.    Whether Defendants engaged in party-in-interest or fiduciary prohibited transactions with Plan assets, by using Plan forfeitures to reduce UnitedHealth's Plan contributions rather than reallocating those plan assets to pay Plan expenses; and,

      iii.    Whether Defendants' breaches of fiduciary duties and prohibited transactions caused losses to the Plan and its participants, and, if so, in what amounts.

121.    The claims of Plaintiffs are typical of the claims of the Class they seek to represent. Plaintiffs and the members of the Class participated in the Plan and suffered injuries as a result of the same alleged misconduct by Defendants.

122.    Plaintiffs' claims and the claims of all Class members arise out of the same conduct, policies, and practices of Defendants as alleged herein, and all members of the Class have been similarly affected by Defendants' wrongful conduct.

123.    Plaintiffs will fairly and adequately protect the interests of the Class as their interests are aligned with those of the members of the Class. Plaintiffs have no interests adverse to the Class they seek to represent and have retained competent and experienced counsel.

124.   This action may be properly certified under Rule 23(b)(1). Class action status in this action is warranted under Rule 23(b)(1)(A) because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants. Class action status is also warranted under Rule 23(b)(1)(B) because prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

125.   In the alternative, certification is also appropriate under Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

126.   Plaintiffs' attorneys have substantial and varied experience in complex ERISA and class action litigation and will adequately represent the class.

127.   The claims brough by the Plaintiffs arise from fiduciary breaches and prohibited transactions as to the Plan in its entirety and does not involve mismanagement of individual accounts.

128.   The claims asserted on behalf of the Plans in this case fall outside the scope of any exhaustion language in the individual participants' Plan.

129.   Exhaustion is intended to serve as an administrative procedure for participants and beneficiaries whose claims have been denied and not where a participant or beneficiary brings suit on behalf of a plan for breaches of fiduciary duty.

130. Under ERISA, an individual "participant" or "beneficiary" is distinct from an ERISA plan. A participant's obligation – such as a requirement to exhaust administrative remedies – does not by itself, bind the plan.

131. Moreover, any administrative appeal would be futile because the entity hearing the appeal (the Plan Administrator) is the same Plan Administrator that made the decisions that are at issue in this lawsuit. Policy supporting exhaustion of administrative remedies in certain circumstances – that the Court should review and where appropriate defer to a Plan administrator's decision – does not exist here because courts will not defer to plan administrator's legal analysis and interpretation.

## COUNT I
### BREACHES OF FIDUCIARY DUTY OF PRUDENCE
**(Asserted against all Defendants)**

132. Plaintiffs re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

133. At all relevant times during the Class Period, the Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

134. As fiduciaries of the Plan, the Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). These fiduciary duties included managing the assets of the Plan for the sole and exclusive benefit of the Plan's participants and beneficiaries, and acting with the care, skill, diligence, and prudence under the circumstances that a prudent person acting in a like capacity and familiar with such matters

would use in the conduct of an enterprise of like character and with like aims.

135. The Defendants breached these fiduciary duties by failing to act solely in the best interest of the Plan participants regarding the use of the Plan's forfeiture accounts.

136. In deciding how to allocate forfeitures, Defendant Plan Committee utilized an impudent and flawed process. Despite the conflict of interest presented by this decision, Defendant Plan Committee failed to undertake any reasoned and impartial decision-making process to determine whether using the forfeited funds in the Plan to reduce UnitedHealth's own future contribution expenses, as opposed to the administrative expenses charged to participant accounts, was prudent, and failed to consider whether participants would be better served by another use of these Plan assets after considering all relevant factors.

137. The failure to engage in an appropriate and prudent process resulted in Plan participants incurring otherwise avoidable Plan administration costs.

138. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan and its participants suffered millions of dollars of losses due to the failure to utilize forfeited accounts to pay Plan expenses. Had the Defendants complied with their fiduciary obligations, the Plan would not have suffered these losses, and the Plan's participants would have had more money available to them for their retirement.

139. In making their decision regarding forfeitures, Defendants were motivated primarily by their own self-interest, and not that of the Plan's participants and beneficiaries.

140. Each Defendant knowingly participated in each breach of the other

26

Defendants, knowing that such acts were a breach, enabled the other Defendants to commit breaches by failing to lawfully discharge their own fiduciary duties, and knew of the breaches by the other Defendants and failed to make any reasonable and timely effort under the circumstances to remedy the breaches. Accordingly, each Defendant is also liable for the breaches of all other Defendants pursuant to 29 U.S.C. § 1105(a).

## COUNT II
### BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Asserted against all Defendants)

141. Plaintiffs re-allege and incorporates by reference the paragraphs above as if they were set forth again herein.

142. At all relevant times during the Class Period, the Defendants were fiduciaries of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control over the administration and/or management of the Plan or disposition of the Plan's assets.

143. As fiduciaries of the Plan, these Defendants were subject to the fiduciary duties imposed by ERISA § 404(a), 29 U.S.C. § 1104(a).

144. Pursuant to 29 U.S.C. § 1104(a)(1)(A), these Defendants were required to discharge their duties to the Plan "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

145. Defendants have continually breached their duty of loyalty to the Plan and its participants by utilizing forfeited funds for the benefit of UnitedHealth instead of in the sole interest of the Plan and its participants and beneficiaries.

27

146. Instead of acting solely in the interest of Plan participants by utilizing forfeited funds in the Plan to reduce and eliminate the administrative expenses charged to their individual accounts, Defendants used these Plan assets for the purpose of reducing UnitedHealth's own contributions to the Plan, thereby saving UnitedHealth millions of dollars each year at the expense of the Plan. Due to Defendants use of forfeited funds to decrease UnitedHealth matching contributions, the Plan and its participants and beneficiaries incurred otherwise avoidable Plan expense deductions to their individual accounts.

147. In making this decision, Defendants were motivated primarily or exclusively by their own self-interest rather than the interests of the Plan's participants and beneficiaries.

148. As a direct and proximate result of the breaches of fiduciary duties alleged herein, the Plan suffered millions of dollars in losses.

149. Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), Defendants are liable to restore to the Plan all losses caused by their breaches of fiduciary duties, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief as deemed just and proper by the Court.

150. Further, each Defendant knowingly participated in the breach of the other Defendants, knowing that such acts were a breach, enabled other Defendants to commit a breach by failing to lawfully discharge its own fiduciary duties, knew of the breach by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breach. Thus each Defendant is also liable for the breaches of all other

Defendants pursuant to 29 U.S.C. § 1105(a).

**COUNT III**
**BREACH OF ERISA'S ANTI-INUREMENT PROVISION**
**(Asserted against UnitedHealth)**

151.   Plaintiffs re-allege and incorporates by reference the paragraphs above as if they were set forth again herein.

152.   Pursuant to 29 U.S.C. § 1103(c)(1), "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

153.   Because all the Plan's forfeited funds are initially placed in the Plan's trust, these forfeited funds are Plan assets.

154.   UnitedHealth's use of the forfeited funds to defray its own contributions to the Plan in order to save itself millions of dollars in funds that UnitedHealth would otherwise have to contribute to the Plan, caused the assets of the Plan to inure to the benefit of UnitedHealth in violation of 29 U.S.C. § 1103(c)(1).

155.   Pursuant to 29 U.S.C. §§ 1109(a) and 1132(a)(2), UnitedHealth is liable to restore to the Plan all losses caused by its breaches of ERISA's anti-inurement provision, and also must restore any profits resulting from such breaches. In addition, Plaintiffs are entitled to equitable relief and other appropriate relief for Defendants' breaches as set forth in their Prayer for Relief.

156.   UnitedHealth is also liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT IV
### FAILURE TO ADEQUATELY MONITOR OTHER FIDUCIARIES
**(Asserted against UnitedHealth)**

157. Plaintiffs re-allege and incorporate by reference the paragraphs above as if they were set forth again herein.

158. Under Plan Section 12.3, Defendant UnitedHealth delegated to UnitedHealth's Executive Vice President, Human Capital, the authority to determine the number of members on Plan Committee, and to appoint and remove those Committee members. Defendant UnitedHealth knew or should have known that these fiduciaries had critical responsibilities for the Plan.

159. In light of this authority, UnitedHealth had a duty to monitor those individuals to ensure that they were adequately performing their fiduciary obligations, and to take prompt and effective action to protect the Plan in the event that they were not fulfilling those duties.

160. UnitedHealth also had a duty to ensure that the individuals responsible for Plan forfeitures possessed the needed qualifications and experience to carry out their duties; had adequate financial resources and information; maintained adequate records of the information on which they based their decisions and analysis with respect to the Plan; and reported regularly to UnitedHealth.

161. UnitedHealth breached its fiduciary monitoring duties by, among other things:

    a) Failing to monitor and evaluate the performance of individuals responsible for Plan forfeitures on the Plan Committee or have a system in place for doing so, standing idly by as the Plan misallocated Plan forfeitures for UnitedHealth's own benefit;

b) failing to monitor the process by which the Plan Committee was evaluated and failing to investigate the proper use of Plan forfeitures; and

c) failing to remove individuals responsible for Plan forfeitures on the Plan Committee whose performance was inadequate in that these individuals continued to misallocate Plan forfeitures in conduct that benefited UnitedHealth, for the benefit of UnitedHealth and to the detriment of the Plan and Plan participants' retirement savings.

162. As a consequence of the foregoing breaches of the duty to monitor, the Plan suffered millions of dollars of objectively unreasonable and unnecessary monetary losses. Had the Defendants complied with their fiduciary obligations to monitor other Defendants that they appointed, the Plan would not have suffered these losses, and Plan participants would have had more money available to them for their retirement.

**COUNT V**
**SELF-DEALING**
**(Asserted against all Defendants)**

163. Plaintiffs re-allege and incorporates by reference the paragraphs above as if they were set forth again herein.

164. 29 U.S.C. § 1106(b) provides that "[a] fiduciary with respect to a plan shall not," among other things, "deal with the assets of the plan in his own interest or for his own account."

165. Defendants violated this prohibition in its management and control of forfeiture funds in the Plan. By allocating these Plan assets toward offsetting UnitedHealth's future contributions owing to the Plan, thereby saving UnitedHealth tens of millions of dollars in contribution expenses, Defendant Plan Committee dealt with the assets of the Plan in their own interest and for their own account.

31

166. Defendants, therefore, dealt with the Plan assets in their own interest and for their own account.

167. As a result of their self-dealing, Defendants caused the Plan to suffer losses in the amount of the Plan assets that were substituted for employer contributions owing to the Plan, as well as all lost investment returns on those assets.

168. Each Defendant is personally liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the prohibited conduct alleged in this claim, to restore to the Plan all assets and profits obtained through the use of Plan assets and is subject to other equitable or remedial relief as appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and/or on behalf of themselves and all other similarly situated members of the Class respectfully request the Court grant the following relief:

A. Designation of this action as a class action on behalf of the Class pursuant to Fed. R. Civ. P. 23(b)(1), or in the alternative, Fed. R. Civ. P. 23(b)(2);

B. Designation of Plaintiffs as representatives of the Class;

C. Designation of Plaintiffs' counsel as class counsel for the Class;

D. A declaratory judgment that the practices complained of herein are unlawful under ERISA;

E. A Declaration that the Defendants, and each of them, have breached their fiduciary duties under ERISA;

F. An Order compelling the Defendants to make good to the Plan all losses to

the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

G.      An order requiring the Defendants to disgorge all assets and profits secured by Defendants as a result of each violation of ERISA;

H.      Actual damages in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses;

I.      An injunction against Defendants from engaging in each of the unlawful practices, policies and patterns set forth herein;

J.      An order enjoining Defendants from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

K.      Other equitable relief to redress Defendants' illegal practices and to enforce the provisions of ERISA as may be appropriate, including appointment of an independent fiduciary or fiduciaries to run the Plan and removal of Plan's fiduciaries deemed to have breached their fiduciary duties;

L.      An award of pre-judgment interest;

M.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiffs and members of the Class pursuant to 29 U.S.C. § 1132(g); and

N.      Such other and further relief as this Court deems just and proper.

Dated: October 3, 2025                    Respectfully submitted,

                                          **WALCHESKE & LUZI, LLC**

                                          /s/ *Paul M. Secunda*
                                          Paul M. Secunda (admitted pro hac)
                                          235 N. Executive Drive, Suite 240
                                          Brookfield, Wisconsin 53005
                                          Telephone:  (414) 828-2372
                                          psecunda@walcheskeluzi.com

                                          **LYNCH CARPENTER, LLP**
                                          Gerald D. Wells, III (admitted *pro hac vice*)
                                          Stephen E. Connolly (admitted *pro hac vice*)
                                          1760 Market Street, Suite 600
                                          Philadelphia, PA 19103
                                          Tel: (267) 609-6910
                                          Fax: (267) 609-6955
                                          jerry@lcllp.com
                                          steve@lcllp.com

                                          **CUMMINS & BONESTROO**
                                          Amy R. Mason, Esq. (#0347760)
                                          363 5th Avenue North
                                          200 Professional Bldg
                                          Bayport, MN 55003
                                          Telephone: 612-306-3808
                                          amason@cblawoffices.com

                                          **ZIMMERMAN REED LLP**
                                          June P. Hoidal (033330x)
                                          Charles R. Toomajian (0397879)
                                          1100 IDS Center
                                          80 South 8th Street
                                          Minneapolis, MN 55402
                                          Tel: (612) 341-0400
                                          Fax: (612) 341-0844
                                          June.Hoidal@zimmreed.com
                                          Charles.Toomajian@zimmreed.com

                                          ***Attorneys for Plaintiffs and the
                                          Proposed Class***

34

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed with the Court this 3rd day of October 2025. All counsel of record will receive service by the Court-generated notice and may access the documents via the Court's CM/ECF system.

*/s/Paul M. Secunda*