# Exhibit A

No *Shepard's* Signal™
As of: March 31, 2026 9:22 PM Z

# Shulak v. BMO Fin. Corp.

United States District Court for the Northern District of Illinois, Eastern Division

March 30, 2026, Decided; March 30, 2026, Filed

No. 25-cv-02232

**Reporter**
2026 U.S. Dist. LEXIS 67525 *; 2026 LX 138699

JOHN P. SHULAK, individually and as representative of a class of participants and beneficiaries and on behalf of the BMO 401(k) Savings Plan, Plaintiff, v. BMO FINANCIAL CORP., et al., Defendants.

## Core Terms

forfeiture, non-elective, fiduciary duty, fiduciary, anti-inurement, forfeit, plan participant, breach of fiduciary duty, administrative expense, employer contribution, prohibited transaction, motion to dismiss, duty of loyalty, monitor, pension

**Counsel:** **[*1]** For John P. Shulak, individually and as representative of a class of participants and beneficiaries and on behalf of the BMO 401K Savings Plan, Plaintiff: Alfredo Torrijos, Joshua H. Haffner, Vahan Mikayelyan, LEAD ATTORNEYS, Haffner Law PC, Sherman Oaks, CA; Paul Michael Secunda, LEAD ATTORNEY, Walcheske & Luzi LLC, Chicago, IL.

For BMO Financial Corp., Benefits Administration Committee of BMO Financial Corp., Defendants: Andrew Ralston Livingston, LEAD ATTORNEY, Orrick, Herrington & Sutcliffe Llp, San Francisco, CA; David P. Fuad, Orrick, Herrington & Sutcliffe LLP, Los Angeles, CA; Edward W Somers, Orrick, Herrington & Sutcliffe LLP, Chicago, IL; Hannah Stephens, PRO HAC VICE, Groom Law Group, Chartered, Washington, DC; Michael J. Prame, PRO HAC VICE, Groom Law Group Chartered, Washington, DC; Rachel Lynn Capler, Orrick Herrington and Sutcliffe LLP, San Francisco, CA.

**Judges:** Andrea R. Wood, United States District Judge.

**Opinion by:** Andrea R. Wood

## Opinion

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Shulak is a participant in the BMO 401(k) Savings Plan ("Plan"), a defined contribution, individual account, employee pension benefit plan sponsored by Defendant BMO Financial Corp. ("BMO") and administered by Defendant **[*2]** Benefits Administration Committee of BMO Financial Corp. ("Committee"). According to Shulak, Defendants have used certain contributions to the Plan that did not vest prior to a participant's termination of employment in manner that was to their own benefit rather than to the benefit of Plan participants. Shulak therefore has brought the present action on behalf of himself and a putative class of similarly situated Plan participants, asserting various claims under the *Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.* Before the Court is Defendants' motion to dismiss Shulak's complaint pursuant to *Federal Rule of Civil Procedure 12(b)(6)*. (Dkt. No. 69.) For the reasons that follow, Defendants' motion is granted.

**BACKGROUND**

For the purposes of the motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and views those facts in the light most favorable to Shulak as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007)*. The complaint alleges as follows.

Shulak is a participant in the Plan, which is a defined contribution, individual account, employee benefit pension plan.[1] (Compl. ¶¶ 5-6, Dkt. No. 1.) The Plan is

[1] ERISA defines "individual account plan" or "defined contribution plan" to "mean[] a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." *29 U.S.C. § 1002(34)*.

sponsored by BMO, and BMO administers the plan through the Committee, an entity it created to assist in the management and administration of the Plan and its assets. (*Id.* ***[*3]*** ¶ 8.) The Plan is funded by both participant contributions and employer contributions. (*Id.* ¶ 13.) As the employer, BMO[2] makes two different types of contributions. First, BMO makes employer matching contributions equal to the amount of each participant's own contributions, up to a maximum of 5% of the particular participant's earnings. (Defs.' Mot. to Dismiss, Ex. A, Plan Document § 4.1, Dkt. No. 35-3.)[3] Second, BMO makes additional employer non-elective contributions equal to 2% of a participant's earnings, even if that participant makes no contribution of their own during that contribution period. (Plan Document, First and Fifth Amendments § 4.1A.) Upon being deposited into the Plan's trust fund, the participant and employer contributions become Plan assets. (Compl. ¶ 13.)

While Plan participants immediately become vested in their own contributions and employer matching contributions, employer non-elective contributions vest only after the participant has completed three years of service. (Compl. ¶ 14; Plan Document § 9.1, First and Fifth Amendments § 9.1.) If a Plan participant has a break in their service prior to the vesting of employer non-elective contributions, the employer contributions associated with that participant **[*4]** are "forfeited upon the earlier of (i) the time the participant receives a distribution of the entire nonforfeitable portion of his account balances under the [P]lan, or (ii) the date the participant incurs five consecutive one year breaks in service." (Compl. ¶ 15; Plan Document, First Amendment § 10.1(d).) The Plan then provides that forfeited employer non-elective contributions "shall be applied to pay [P]lan expenses as permitted under subsection 11.6 or to reduce future non-elective contributions." (Plan Document, First Amendment § 10.1(d).) The Committee controls the allocation of forfeited contributions. (Compl. ¶ 15.)

Despite the Plan providing the Committee with two options for using forfeitures, the Committee has almost exclusively consistently chosen to use forfeitures to offset future employer non-elective contributions. (*Id.* ¶ 18.) As Defendants acknowledge, they used forfeitures to reduce BMO's non-elective contributions by $1,278,427 in 2023 and by $1,180,804 in 2022. (*Id.* ¶ 17.) Shulak contends that the Committee's allocation of forfeitures puts the interests of itself and BMO ahead of those of the Plan's participants, given that participants are otherwise responsible **[*5]** for Plan expenses. (*Id.* ¶¶ 18-19.) For that reason, he has brought the present action alleging that Defendants committed the following ERISA violations: breach of the fiduciary duties of loyalty and prudence, *29 U.S.C. § 1104(a)* (Count I); breach of the anti-inurement provision, *29 U.S.C. § 1103(c)(1)* (Count II); engaging in a prohibited transaction, *29 U.S.C. § 1106* (Count III); and failing to monitor fiduciaries (Count IV).

**DISCUSSION**

Defendants move to dismiss each of the complaint's four Counts. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)*). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly, 550 U.S. at 555*. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014)* (quoting *Iqbal, 556 U.S. at 678*).

**I. Breach of Fiduciary Duty**

By choosing to use forfeited employer non-elective contributions to reduce BMO's future contributions rather than paying administrative expenses, Shulak contends that Defendants failed to act in accordance with their fiduciary duties under ERISA. **[*6]** To state a breach of fiduciary duty claim under ERISA, a plaintiff must plead "(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff." *Allen v. GreatBanc Trust Co., 835 F.3d 670, 678 (7th Cir. 2016)* (internal quotation marks omitted). In their motion to

---

[2] Participants in the Plan include employees of several BMO subsidiaries and affiliates. (Pl.'s Mem. in Supp. of Mot. to Dismiss at 3, Dkt. No. 35-1.) For simplicity, the Court uses "BMO" to refer to the employer of all Plan participants.

[3] While the Plan Document is not attached to the complaint, because various provisions are referenced in the complaint and give rise to the asserted claims, it is incorporated by reference and properly considered in connection with Defendants' Rule 12(b)(6) motion. *Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012)*.

dismiss, Defendants focus on the second element, arguing that Shulak fails to plausibly allege that Defendants breached any fiduciary duty.

Relevant here, ERISA imposes upon fiduciaries the duties of loyalty and prudence. A fiduciary's duty of loyalty requires it to discharge its "duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan." *29 U.S.C. § 1104(a)(1)(A)*. The fiduciary also has a duty of prudence, which requires it to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *29 U.S.C. § 1104(a)(1)(B)*. "These duties are the highest known **[*7]** to law." *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth, 99 F.4th 928, 943 (7th Cir. 2024)* (internal quotation marks omitted).

While the Plan expressly provides that the Committee may use forfeited employer nonelective contributions to "pay [P]lan expenses as permitted under subsection 11.6" (Plan Document, First Amendment § 10.1(d)), the Plan does not require the Committee to do so. As discussed above, the Committee is also permitted to use forfeitures "to reduce future non-elective contributions." (*Id.*) And the Plan does not mandate that one option be prioritized over another. Under ERISA, a fiduciary must discharge its duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" the requirements of ERISA. *29 U.S.C. § 1104(a)(1)(D)*. Because a fiduciary's duties under ERISA "trump[] the instructions of a plan document," that the Plan allows the Committee discretion in how to use forfeitures does not necessarily shield Defendants against claims for breach of fiduciary duty. *Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 421 (2014)*. Thus, Shulak claims that Defendants' fiduciary duties under ERISA required them to exercise the discretion afforded to the Committee under the Plan by first allocating forfeitures to participants' benefit and paying the Plan's administrative expenses for which they **[*8]** would otherwise be responsible. Only when those administrative expenses are fully paid can Defendants then use the remaining forfeitures to reduce BMO's employer non-elective contributions.

To begin, the Court addresses the parties' dispute as to the scope of the Committee's discretion in allocating the forfeitures. Defendants contend that the complaint improperly suggests that the Plan authorizes the Committee to use forfeitures to pay for any and all of the Plan's administrative expenses when the Plan expressly provides for payment of expenses "as permitted under subsection 11.6." (Plan Document, First Amendment §10.1(d).) And subsection 11.6 concerns only "Committee Expenses" whereas the Plan also identifies at subsection 12.11 a separate category of "Plan and Trust Expenses." (*Compare* Plan Document § 11.6, *with id.* § 12.11.) The Plan provides that both types of expenses are to be paid from the Plan's trust fund, but only with respect to Plan and Trust Expenses does the Plan specify that "expenses to be paid or reimbursed from the trust fund may be drawn from participants' accounts." (*Id.* § 12.11.)

Defendants assert that Shulak's failure to recognize the distinction between the two **[*9]** types of expenses is fatal to his breach of fiduciary duty claims. In particular, Defendants' alleged breaches of their fiduciary duties are predicated on the allegation that their conduct "caus[ed] participants to incur expenses that could otherwise have been covered in whole or in part by forfeited funds." (Compl. ¶ 18.) But that allegation is belied by the fact that the only expenses that the Plan authorizes the Committee to pay with forfeitures are Committee Expenses, and those expenses are not otherwise borne by Plan participants. The Court finds unavailing Shulak's response that Committee Expenses and Plan and Trust Expenses are one and the same. That the Plan specifically delineates the two categories of expenses and makes only one category of expenses directly chargeable to participants' accounts demonstrates the distinctiveness of the two types of expenses. *E.g., Schultz v. Aviall, Inc. Long Term Disability Plan, 670 F.3d 834, 838 (7th Cir. 2012)* ("Plan language is given its plain and ordinary meaning, and the plan must be read as a whole, considering separate provisions in light of one another and in the context of the entire agreement. All language of a plan should be given effect without rendering any term superfluous." (citation omitted)). Properly interpreted, **[*10]** the Plan only authorizes the Committee to use forfeitures either to reduce future employer non-elective contributions or to pay Committee Expenses. The complaint therefore errs insofar as it alleges that Defendants had discretion to allocate forfeitures to cover expenses directly chargeable to Plan participants—*i.e.*, Plan and Trust Expenses—and the breach of fiduciary duty claims predicated on such conduct cannot stand.

Even if the Plan authorized Defendants to use forfeitures to pay for expenses that would otherwise be incurred by participants, the Court would still reject the breach of fiduciary duty claims based on the allegations here. Like the majority of district courts that have addressed substantially similar claims, the Court believes that interpreting ERISA's fiduciary duty provisions as "creat[ing] an unqualified duty to pay administrative costs" would "improperly extend the protection of ERISA beyond its statutory framework." *Hutchins v. HP Inc., 737 F. Supp. 3d 851, 863 (N.D. Cal. 2024)*; *see also* *Cain v. Siemens Corp., No. 24-8730, 2025 WL 2172684, at *4 (D.N.J. July 31, 2025)* (collecting cases). "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kind of benefits employers must provide if they chose to have such a plan." *Lockheed Corp. v. Spink, 517 U.S. 882, 887 (1996)*. ERISA's purpose is simply "to ensure **[*11]** that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Id.* Put another way, "ERISA's principal function" is "to 'protect contractually defined benefits.'" *US Airways, Inc. v. McCutchen, 569 U.S. 88, 100 (2013)* (quoting *Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985)*). In service of that purpose, Congress enacted ERISA's fiduciary duty provisions to "increase the chances that employers will be able to honor their benefits commitments." *Spink, 517 U.S. at 887*.

The flaw in Shulak's theory of liability is that it extends Defendants' fiduciary duties beyond "protect[ing] the benefits which are due to an employee under a plan." *Hutchins, 737 F. Supp. 3d at 863*. With respect to employer non-elective contributions, the Plan entitles each participant to a contribution equal to 2% of that individual participant's earnings. (Plan Document, First and Fifth Amendments § 4.1A.) Shulak does not contend that Defendants' acts have deprived him of any portion of his employer non-elective contribution or any other benefit guaranteed to him under the Plan. Nonetheless, he argues that Defendants' use of forfeitures for their own benefit is inconsistent with their fiduciary duty to act "solely in the interest of participants and beneficiaries."

Even the courts that have found that a fiduciary has a duty of loyalty with respect to its exercise **[*12]** of discretion in allocating forfeitures have not gone so far as to recognize the existence of a "categorical rule that employers must pay plan expenses." *Buescher v. N. Am. Lighting, Inc., 791 F. Supp. 3d 873, 888 (C.D. Ill. 2025)*. Rather, they hold that "what type of forfeiture allocation 'would be in the best interests of participants depends on the particular facts and circumstances present at the time of the allocation decision.'" *Id.* (quoting *McManus v. Clorox Co., No. 4:23-CV-05325-YGR, 2025 WL 732087, at *2 (N.D. Cal. Mar. 3, 2025)*). In those cases, a plaintiff "allows for the possibility that an offset of employer contributions may sometimes also be to the ultimate benefit of participants and beneficiaries" but also specifically alleges why the allocation was not in the participants' interest in the circumstances of that case. *Id. at 888, 890*. But here, the complaint contains only conclusory allegations as to why Defendants' allocation of the forfeitures was for their own benefit rather than that of the Plan's participants.

This case is also distinguishable in that Shulak would go beyond the language of the Plan itself, which, as discussed above, authorizes Defendants only to pay Committee Expenses as an alternative to reducing future employer non-elective contributions as opposed to plan expenses generally. *See* *Buescher, 791 F. Supp. 3d at 879* ("Under . . . the Plan . . . forfeitures **[*13]** may be used to pay administrative expenses or to reduce Employer Contributions . . . ." (internal quotation marks omitted)); *McManus, 2025 WL 732087, at *2* ("At the discretion of Defendants . . . forfeitures may be used to either pay the Plan's expenses or reduce the Company's contributions to the Plan."). Indeed, the complaint alleges not only that Defendants breached their fiduciary duties by failing to allocate forfeitures to pay expenses other than the Committee Expenses but also by failing to "allocat[e] forfeited funds to participants' accounts." (Compl. ¶ 18.) Under Shulak's theory, ERISA's fiduciary duties of prudence and loyalty would effectively create a new benefit in the payment of administrative expenses even as the Plan provides no such entitlement. *Hutchins, 737 F. Supp. 3d at 863*. This Court cannot accept that ERISA's fiduciary duties reach outside of the benefits provided for in the Plan. *See* *Clair v. Harris Tr. & Sav. Bank, 190 F.3d 495, 497 (7th Cir. 1999)* ("[The] benefits payable under an ERISA plan are limited to the benefits specified in the plan."); *see also* *McCutchen, 569 U.S. at 100-01* (noting that ERISA's "statutory scheme . . . 'is built around reliance on the face of written plan documents'" (quoting *Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995)*)). Instead, it agrees with the Circuit Courts that have held that "ERISA does not create an exclusive duty to **[*14]** maximize pecuniary benefits." *Wright v. Or. Metallurgical Corp., 360 F.3d 1090, 1100 (9th Cir. 2004)* (internal quotation marks omitted); *see also* *Rozo v.*

Principal Life Ins. Co., 48 F.4th 589, 598 (8th Cir. 2022) (same); Foltz v. U.S. News & World Report, Inc., 865 F.2d 364, 373 (D.C. Cir. 1989) (same); *cf.* Loomis v. Exelon Corp., 658 F.3d 667, 671 (7th Cir. 2011) ("ERISA does not create any fiduciary duty requiring employers to make pension plans more valuable to participants."). As such, the fiduciary's duties are "fulfilled where the fiduciary ensures that participants have received their ***promised*** benefits." Polanco v. WPP Grp. USA, Inc., No. 24-cv-9548 (JGK), 2025 WL 3003060, at *3 (S.D.N.Y. Oct. 27, 2025).

The Court does not view the two decisions from other courts in this District that Shulak has introduced as supplemental authorities to be contrary to the above analysis. (*See* Pl.'s Fourth Notice of Suppl. Authority, Dkt. No. 106; Pl.'s Fifth Notice of Suppl. Authority, Dkt. No. 108.) First, the district court's decision in Gardner-Keegan v. W.W. Grainger, Inc., No. 1:25-cv-5233, 2026 WL 194772 (N.D. Ill. Jan. 26, 2026), is inapposite because the plan there did "not give discretion as to how the Plan Committee [could] allocate forfeitures. It instead mandate[d] the Plan Committee to utilize forfeitures to pay reasonable administrative expenses . . . before offsetting employer contributions." Id. at *8. Thus, the district court concluded that the duty of loyalty was "not being 'stretched' to create an additional benefit. Rather, the Plan Document [was] structured to guarantee the Plan participants the benefit of covering administrative expenses **[*15]** via forfeitures in the first instance." *Id.* On the other hand, the allegations in *Russell v. Illinois Tool Works, Inc.*, No. 22 CV 02492, 20226 WL 332662 (N.D. Ill. Feb. 9, 2026), are closer to those here. However, the *Russell* court noted that the plaintiffs were not claiming that it was "a *per se* breach any time a fiduciary uses forfeitures for employer contributions" but only "allege[d] liability for certain forfeiture use under the circumstances presented [t]here." *Id.* at *5. And, in *Russell*, the plan gave the fiduciaries discretion between using forfeitures to reduce the employer's contributions or "to pay reasonable [p]lan expenses." *Id.* at *2. By contrast, here, the Plan only gives Defendants the discretion to pay certain Committee Expenses, and the complaint fails to even allege that there were any Committee Expenses that Defendants elected not to pay with forfeitures in favor of reducing future employer non-elective contributions.

In sum, the Court finds that Shulak fails to allege that the Plan gave Defendants' discretion to use forfeitures to pay administrative costs that would otherwise be incurred by participants and his complaint fails for that reason. But Shulak's breach of fiduciary duty claims would fail if Defendants had such discretion because their fiduciary duties do not obligate **[*16]** them to confer upon participants benefits that were not provided for in the Plan. Consequently, Shulak's breach of fiduciary duty claims are dismissed.

### II. Anti-Inurement Provision

Under ERISA's anti-inurement provision, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). Stated succinctly, the anti-inurement provision "prohibits employers from misappropriating plan assets for their own benefit." Beck v. Pace Int'l Union, 551 U.S. 96, 107 (2007). Shulak contends that Defendants breached this provision by using forfeitures to reduce the amount they had to contribute for future non-elective contributions, thereby benefitting themselves.

The Supreme Court has interpreted the anti-inurement provision as "focus[ing] exclusively on whether fund assets were used to pay pension benefits to plan participants." Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 442 (1999). Moreover, "claims under the antiinurement provision usually require reversion or diversion of plan assets to the sponsor." Hutchins, 737 F. Supp. 3d at 864-65; *see also* Aldridge v. Lily-Tulip, Inc. v. Salary Ret. Plan Benefits Comm., 953 F.2d 587, 592 n.6 (11th Cir. 1992) ("The [anti-inurement provision] can only be violated if there has been a removal of plan assets for **[*17]** the benefit of the plan sponsor or anyone other than the plan participants."). But here, the forfeitures were held within the Plan until they were used to provide benefits in the form of future employer non-elective contributions. Such circumstances fail to plead a violation of the anti-inurement provision. Hutchins, 737 F. Supp. 3d at 866 ("[There] is not a violation of the anti-inurement provision [where] the forfeited amounts are plan assets which do not leave the Plan trust fund and are used to pay pension benefits to Plan participants."). That remains the case even though BMO received some incidental benefit from the Committee's decision to allocate forfeitures as it did. *E.g.*, Sievert v. Knight-Swift Transp. Holdings, Inc., 780 F. Supp. 3d 870, 880 (D. Ariz. 2025) ("[C]ourts have generally held that receipt of 'incidental' benefits to an employer do not constitute a breach of the anti-inurement provision."). Accordingly, Shulak's anti-inurement claim is dismissed.

**III. Prohibited Transaction**

Shulak next asserts that Defendants' use of the forfeitures to offset BMO's future employer non-elective contributions was a transaction prohibited by ERISA. In particular, *29 U.S.C. § 1106(a)(1)* "regulates the conduct of plan fiduciaries[by] placing certain transactions outside the scope of their lawful authority." *Spink, 517 U.S. at 888*. Thus, § 1106(a)(1) provides **[*18]** as follows:

> [A] fiduciary shall not cause the plan to engage in a transaction, if he knows or should know that such a transaction constitutes a direct or indirect—
>
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> (B) lending of money or other extension of credit between the plan and a party in interest;
>
> (C) furnishing goods, services, or facilities between the plan and a party in interest;
>
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
>
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

*29 U.S.C. § 1106(a)(1)*. Then, *29 U.S.C. § 1106(b)(1)* "prohibits certain 'transactions between plan and fiduciary,' including where a fiduciary 'deal[s] with the assets of the plan in his own interest or for his own account.'" *Wright v. JPMorgan Chase & Co., No. 2:25-cv-00525-JLS-JC, 2025 WL 1683642, at *6 (C.D. Cal. June 13, 2025)* (quoting *29 U.S.C. § 1106(b)(1)*).

"To state a claim under § 1106(a) or (b), a plaintiff must allege a transaction within the meaning of those provisions." *Polanco, 2025 WL 3003060, at *9* (internal quotation marks omitted). However, the Supreme Court has explained that "the payment of benefits is in fact not a 'transaction' in the sense that Congress used that term" in § 1106. *Spink, 517 U.S. at 892-93*. For that reason, Defendants' allocation of forfeitures toward **[*19]** future benefits payments is not the type of transaction that is prohibited by § 1106. *E.g.*, *Cano v. Home Depot, Inc., No. 1:24-cv-03793-TRJ, 2025 WL 2589567, at *7 (N.D. Ga. Aug. 26, 2025)* (holding that the reallocation of forfeited funds does not constitute a prohibited transaction under § 1106(a) or (b)); *Hutchins, 737 F. Supp. 3d at 868* ("[T]he fact that reallocation of forfeited amounts will reduce the amount that [the defendant] contributes as matching contributions in the future does not make this a transaction for purposes of § 1106."). Shulak's prohibited transaction claim is dismissed.

**IV. Failure to Monitor**

Finally, Shulak asserts a claim against Defendants for breaching their duty to monitor. Because this claim is derivative of the complaint's now-dismissed claims for breach of fiduciary duty, breach of ERISA's anti-inurement provision, and engaging in a prohibited transaction, the failure to monitor claim fails as well. *Albert v. Oshkosh Corp., 47 F.4th 570, 583 (7th Cir. 2022)* ("[D]uty to monitor claims rise or fall with [the underlying] duty of prudence and duty of loyalty claims.").

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 69) is granted and Shulak's complaint is dismissed without prejudice. Plaintiff is granted leave to file an amended complaint that remedies the deficiencies discussed herein, if they can do so consistent with the requirements **[*20]** of *Federal Rule of Civil Procedure 11*, by April 20, 2026.

ENTERED:

Dated: March 30, 2026

/s/ Andrea R. Wood

Andrea R. Wood

United States District Judge

---

**End of Document**

# Exhibit B

**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ariel Armenta,<br><br>Plaintiff,<br><br>v.<br><br>WillScot Mobile Mini Holdings Corporation, et al.,<br><br>Defendants. | No. CV-25-00407-PHX-MTL<br><br>**ORDER** |

A plan administrator does not breach the duty of prudence by exercising discretion permitted by the plan and the Employee Retirement Income Security Act. Before the Court is the Defendant's Motion to Dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (Doc. 29.) The Motion is fully briefed. (Docs. 30, 31.) The Court will grant the Motion.

## I. BACKGROUND

The following facts are taken from the Amended Complaint. (Doc. 26.) The Court accepts these allegations as true for this motion to dismiss. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

WillScot is an employer that sponsors and administers a defined contribution retirement plan for its employees (the "Plan"). (Doc. 26 ¶¶ 8, 16.) The Plan incurs administrative expenses for services such as recordkeeping, accounting, and legal services. (*Id.* ¶ 73.) Participants fund the Plan through payroll deductions, and WillScot provides matching contributions. (*Id.* ¶ 75.) Plan participants are immediately vested into their own

contributions and any earnings from their contributions. (*Id.* ¶ 81.) Participants become fully vested in the WillScot matching contributions after a long enough tenure with WillScot, which typically ranges from four to six years. (*See id.*)

If a Plan participant terminates employment with WillScot before becoming fully vested, the participant forfeits the matching contributions and any earnings from those contributions. (*Id.* ¶ 82.) Under the terms of the Plan, the plan administrator has discretion to use these forfeitures to pay for administrative expenses or reduce WillScot's future matching contribution obligations. (*Id.* ¶¶ 83-84.) Specifically, as alleged in the Complaint, the Plan document states,

> Any forfeitures occurring during a Plan Year may be used to pay administrative expenses under the Plan at any time, if so directed by the Administrator. . . . [A]ny forfeitures not used to pay administrative expenses under the Plan shall be applied to reduce the contributions of the Employer for the immediately following Plan Year . . . .

(*Id.* ¶ 83.)

Plaintiff Ariel Armenta commenced this action because WillScot "consistently used Forfeited Plan Assets to almost exclusively reduce WillScot's contractually obligated contributions to the Plan and not to defray Administrative Expenses." (*Id.* ¶ 87.)

Armenta's original Complaint contained five causes of action. (Doc. 1 at 15-21.) The Court dismissed four of these counts with prejudice and dismissed one with leave to amend. (Doc. 25 at 11.) For the surviving count, the Court noted that Armenta's Amended Complaint must "allege facts for the Court 'to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed.'" (*Id.* (quoting *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017)).).

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a complaint "if

there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (citation modified).

A complaint must assert sufficient factual allegations that, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility is more than a mere possibility; a plaintiff is required to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins*, 568 F.3d at 1067.

## III. DISCUSSION

Armenta's only remaining claim is a breach of the duty of prudence under the Employee Retirement Income Security Act ("ERISA"). (Doc. 26 at 28-30.) In her Amended Complaint, Armenta was required to allege facts showing that the fiduciary's decision-making process was flawed. (Doc. 25 at 11.)

ERISA governs the administration of employee benefit plans and protects the interests of plan participants and their beneficiaries with uniform guidelines and rules. *Metro. Life Ins. Co. v. Parker*, 436 F.3d 1109, 1111 (9th Cir. 2006). "The two most basic components of any ERISA plan are the plan administrator and the plan documents." *Id.*

Under ERISA, plan administrators are fiduciaries who have a duty to act "with the care, skill, prudence, and diligence" of a "prudent man." 29 U.S.C. § 1104(a)(1)(B). In fulfilling this duty, a fiduciary must act for the exclusive purpose of "providing benefits to participants and their beneficiaries" and "defraying reasonable expenses of administering the plan." *Id.* § 1104(a)(1)(A). Fiduciaries must act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with" ERISA. *Id.* § 1104(a)(1)(D).

This duty is not "an exclusive duty to maximize pecuniary benefits." *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 877 (D. Ariz. 2025) (quoting

*Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004)). Rather, "the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits." *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 924 (N.D. Cal. 2025). Ultimately, "the prudence analysis focuses on a fiduciary's conduct in arriving at an investment decision, not on its results." *Terraza*, 241 F. Supp. 3d at 1069 (citation modified).

Armenta has alleged no new facts to plausibly allege that the plan administrator's decision-making process was flawed in violation of the duty of prudence. Instead, she revives failed arguments from the first motion to dismiss: that the decision-making process was flawed because (1) the administrator should have first used the funds to defray administrative expenses, and (2) a conflict of interest plagued the process.

**A. Use of Forfeited Assets**

First, Armenta alleges that a prudent administrator would ensure "that Forfeited Plan Assets would be used first to defray plan expenses prior to being used to reduce employer contributions." (*See* Doc. 26 ¶¶ 62, 116.) Then, to show a breach of the duty of prudence, Armenta's Complaint lists how the plan administrator used forfeited assets to offset employer contributions prior to defraying administrative expenses each year. (*See id.* ¶¶ 87-114.)

The Plan, however, gives the plan administrator discretion to use forfeited funds to reduce administrative expenses or reduce WillScot's matching contributions. (*Id.* ¶¶ 83-84.) It does not require that the funds be used in a particular order. Moreover, ERISA permits plan administrators to use forfeited funds to offset the employer's matching contributions. *See Sievert*, 780 F. Supp. 3d at 878 ("To find that Defendant's decision to use forfeited assets to reduce its own contributions is motivated by self-interest and violates its [duty of prudence] would contravene decades of federal regulations suggesting that such a decision is entirely permissible."); *Hutchins*, 767 F. Supp. 3d at 923 (disagreeing with Plaintiff's proposition that ERISA's plan administrator duties "abrogate[] these long-settled rules regarding the use of forfeitures in defined contribution plans").

The plan administrator's use of forfeited contributions is consistent with the Plan and ERISA. WillScot's decision-making process does not automatically become flawed merely because it exercises its discretion in a manner Armenta disapproves. For this claim to proceed, Armenta must at least allege "circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Terraza*, 241 F. Supp. 3d at 1070. Disagreeing with the final decision, rather than alleging flaws in the process leading up to that decision, does not satisfy the pleading standards. *See id.* at 1069.

**B. Conflict of Interest**

Armenta also alleges that the administrator's decision-making process was flawed because of a conflict of interest. (Doc. 26 ¶ 68.) Armenta contends that "[t]he only reasonable explanation" for using the forfeitures primarily to reduce WillScot's matching contributions "is that the Fiduciaries discharged their duties considering the best interests of WillScot as opposed to in the interest of the participants and beneficiaries." (*Id.*)

Certainly, a fiduciary's conflict of interest can violate the duty of prudence. *See Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995). This Court, however, has already found that a conflict of interest cannot, on its own, establish a breach of that duty. (*See* Doc. 25 at 8 (collecting cases supporting this conclusion).) Armenta's allegation of a conflict is entirely conclusory and rests solely on her disagreement with the plan administrator's discretionary decision. That is insufficient. *See Sievert*, 780 F. Supp. 3d at 878, 881 (dismissing a duty of prudence breach claim that alleged a conflict of interest existed merely because the fiduciary allocated forfeitures toward employer matching contributions before defraying administrative expenses).

Instead of pleading specific instances in WillScot's decision-making process that were compromised by a conflict of interest, Armenta proposes a new theory: "A prudent fiduciary acting exclusively in the best interest of the participants would only choose not to offset plan expenses to the extent that there is concern that WillScot would otherwise be unable to meet its future contribution obligations." (Doc. 26 ¶ 124.) According to Armenta, if WillScot instead allocates forfeited assets toward matching contributions, that decision

is plagued by a conflict of interest. (*See id.* ¶¶ 117, 120, 142.)

This theory is contradicted by the very facts Armenta alleges: "it is undisputed that the forfeitures ultimately benefited plan participants because they were used to pay WillScot's contributions directly to plan participants and to offset some administrative expenses." (Doc. 25 at 8.) That was true of the original Complaint and remains true here. The administrator's use of forfeited funds to offset matching contributions is permitted by both the Plan and ERISA and does not plausibly suggest self-dealing or a flawed process. *See Sievert*, 780 F. Supp. 3d at 878. It instead reflects an allocation consistent with the duty of prudence because it "ensures that participants [receive] their promised benefits." *Hutchins*, 767 F. Supp. 3d at 924. Here, plan participants received their contributions, WillScot's matching contributions upon completing the vesting schedule, and occasional forfeiture allocations which offset their administrative expenses. (Doc. 26 ¶¶ 81, 114.) Armenta does not plausibly allege a conflict of interest that would establish a breach of the duty of prudence.

Finally, the Court is aware of the many cases that both parties have cited and discussed in their notices of supplemental authority. (*See* Docs. 35-36, 38-41.) Many of these cases are inapposite to the present dispute because their plan language is more restrictive of the fiduciary's discretion. *See, e.g.*, *Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 WL 194772, at *1 (N.D. Ill. Jan. 26, 2026) (analyzing plan document language stating that "Forfeiture Account amounts shall be utilized to pay reasonable administrative expenses of the Plan . . . and then . . . offset Company Contributions . . . ."). Furthermore, none of the cases cited are binding precedent on this Court, and they are unpersuasive for the Court's determination.

Armenta's breach of the duty of prudence claim does not contain sufficient factual allegations plausibly showing that the fiduciary's decision-making process was flawed. (*See* Doc. 25 at 11.) Nonetheless, in an attempt to survive the motion to dismiss, Armenta states that if "there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, *both of which are plausible*, plaintiff's complaint survives a

motion to dismiss under Rule 12(b)(6).” (Doc. 30 at 2 (emphasis added) (quoting *Davis v. Salesforce.com, Inc.*, No. 21-15867, 2022 WL 1055557, at *1 (9th Cir. Apr. 8, 2022)).) Here, however, Armenta’s Complaint does not plausibly allege a breach of the duty of prudence. The Complaint will therefore be dismissed.

## IV. LEAVE TO AMEND

“Rule 15 advises the court that leave [to amend] shall be freely given when justice so requires. This policy is to be applied with extreme liberality.” *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citation modified). Nevertheless, “liberality in granting leave to amend is subject to several limitations.” *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted). “Those limitations include undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay.” *Id.* Further, “when a district court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions to amend is ‘particularly broad.’” *Chodos v. W. Publ’g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) (quoting *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 879 (9th Cir. 1999)).

Armenta’s breach of the duty of prudence claim under ERISA will be dismissed with prejudice. Armenta was previously given the opportunity to cure her pleading defects, (*see* Doc. 25 at 11), but failed to do so. Because Armenta’s Amended Complaint failed to allege facts showing a flawed decision-making process, a Second Amended Complaint would be futile and cause undue delay.

## V. CONCLUSION

Accordingly,

**IT IS ORDERED granting** Defendant’s Motion to Dismiss (Doc. 29). Plaintiff’s Complaint (Doc. 26) is dismissed with prejudice.

**IT IS FURTHER ORDERED denying** oral argument on Defendant’s Motion to Dismiss (Doc. 29). The Court finds oral argument unnecessary for resolution of the matter. *See* LRCiv. 7.2(f).

. . . .

**IT IS FINALLY ORDERED** directing the Clerk of Court to dismiss with prejudice this action and close this case.

Dated this 30th day of March, 2026.

Michael T. Liburdi
Michael T. Liburdi
United States District Judge

# Exhibit C

No *Shepard's* Signal™
As of: March 31, 2026 9:28 PM Z

# Parker v. Tenneco Inc.

United States District Court for the Eastern District of Michigan, Southern Division

March 27, 2026, Decided; March 27, 2026, Filed

Case No. 23-10816

**Reporter**
2026 U.S. Dist. LEXIS 66509 *; 2026 LX 168401

Tanika Parker, et al., Plaintiffs, v. Tenneco Inc., et al., Defendants.

## Core Terms

fiduciary, forfeiture, monitor, fiduciary duty, motion to dismiss, recordkeeping, board of directors, plaintiff's claim, plan participant, mutual fund, forfeit, amended complaint, district court, single class, imprudent, prudent, replace, website, employer contribution, anti-inurement, co-fiduciary, passively, merger, lower-cost

**Counsel:** **[*1]** For Tanika Parker, individually and on behalf of the DRIV 401(K) RETIREMENT SAVINGS PLAN, and all others similarly situated, Andrew Farrier, individually and on behalf of the DRIV 401(K) RETIREMENT SAVINGS PLAN, and all others similarly situated, Plaintiffs: Boyd Byers, LEAD ATTORNEY, Foulston Siefkin, Wichita, KS; Scott C. Nehrbass, LEAD ATTORNEY, Foulston Siefkin, Overland Park, KS; E. Powell Miller, The Miller Law Firm, Rochester, MI; Samuel Walenz, Foulston Siefkin LLP, KS, Wichita, KS; Sharon S. Almonrode, The Miller Law Firm, P.C., Rochester, MI; Taylor Ester, U.S. District Court for the Eastern District of Michigan, Detroit, MI; Teresa L Shulda, Foulston Siefkin LLP, Wichita, KS.

For Tenneco Inc., Defendant: Todd D. Wozniak, LEAD ATTORNEY, Holland & Knight LLP, Atlanta, GA; Fred K. Herrmann, Kerr, Russell, Detroit, MI; Lindsey Camp, Holland & Knight LLP, West Tower, West Palm Beach, FL.

For Driv Automotive Inc, Tenneco Automotive Operating Company Inc., Defendants: Todd D. Wozniak, LEAD ATTORNEY, Holland & Knight LLP, Atlanta, GA; Fred K. Herrmann, Kerr, Russell, Detroit, MI.

For Does, 1-30, John and Jane Doe Defendants, Defendant: Todd D. Wozniak, Holland & Knight LLP, Atlanta, **[*2]** GA.

For Federal-Mogul Corporation, Federal-Mogul LLC, Federal-Mogul Powertrain LLC, Tenneco Benefits & Pension Investment Committee, Defendants: Todd D. Wozniak, LEAD ATTORNEY, Holland & Knight LLP, Atlanta, GA; Fred K. Herrmann, Kerr, Russell, Detroit, MI.

**Judges:** JUDITH E. LEVY, United States District Judge. Mag. Judge Kimberly G. Altman.

**Opinion by:** JUDITH E. LEVY

## Opinion

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' OMNIBUS MOTION [74]**

Before the Court is Defendants'[1] omnibus motion to

[1] The Defendants identified in the second amended complaint are as follows: Tenneco Inc., DRiV Automotive Inc., Tenneco Automotive Operating Company Inc., Federal-Mogul Powertrain LLC, Federal-Mogul LLC, Federal-Mogul Corporation, the Board of Directors of Tenneco Inc., the Board of Directors of DRiV Automotive Inc., the Board of Directors of Tenneco Automotive Operating Company Inc., the Tenneco Benefits Committee, the Tenneco Compensation Committee, the Tenneco Investment Committee, the Tenneco Benefits & Pension Investment Committee, the Tenneco Benefit Appeals Committee, the Tenneco Benefits Oversight Committee, the Tenneco Administrative Committee, the Tenneco Investment Committee, the Federal-Mogul LLC Benefits Administrative Committee, the Federal-Mogul LLC Compensation Committee, the Federal-Mogul Powertrain LLC Benefits Administration Committee, Brian J. Kesseler, Thomas J. Sabatino, Jr., Roy V. Armes, Thomas C. Freyman, Denise Gray, Michelle A. Kumbier, Dennis J. Letham, James S. Metcalf, Aleksandra A. Misiolek, Charles K. Stevens, III, John S. Stroup, Jane L. Warner, Gregg M. Sherrill, Sunghwan Cho, Roger B. Porter, David B. Price, Kaled Awada, Mattie Masanovich, Paul D. Novas, Peter Acker, Zhenfeng (Jennifer) Lou, Evan Stall,

dismiss Plaintiffs' second amended complaint ("SAC") and to deny Plaintiffs' motion for leave to file a third amended complaint. (ECF No. 74.) The Court issued an order denying Plaintiffs' motion for leave to file a third amended complaint. (ECF No. 92.) This order addresses the remaining portions of Defendants' omnibus motion.

This motion is fully briefed, and several notices of supplemental authority have been filed. (ECF Nos. 78, 82, 83, 84, 87, 90, 91, 94, 95.) On February 24, 2026, the Court held a hearing and heard oral argument on the motion.

For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## I. Background

This case is a putative class action concerning two retirement **[*3]** plans (the "Plans"): the DRiV Plan and the Tenneco Plan, which merged into a single Tenneco Plan in July 2022. Named Plaintiffs Tanika Parker, a DRiV employee, and Andrew Farrier, a Tenneco employee, participated in the Plans during the class period, which is May 2016 through the date of judgment. (ECF No. 70, PageID.1678.)

The Plans are defined contribution plans, where individual accounts are created for each participant and the benefits accrued are based on employee and employer contributions, as well as the gains and losses based on investments. (*Id.* at PageID.1703-1704.) Prior to their merger, the Plans held more than $500 million in assets, which "plac[ed] them within the top 0.2% of all 401(k) plans based on size." (*Id.* at PageID.1680.)

Plaintiffs claim that the fiduciaries for the Plans, i.e., Defendants, breached their fiduciary duties and the Employee Retirement Income Security Act ("ERISA"). The SAC names 46 Defendants. Defendants are the company sponsors of the Plans,[2] boards of directors and committees that administered the Plans or oversaw those who administered the Plans,[3] and individuals who are members of those boards or committees.[4]

Plaintiffs allege that the fiduciaries of the DRiV Plan breached their fiduciary duties **[*4]** or otherwise violated the law in the following ways:

- Failing to replace target date mutual funds with substantively identical, but much less expensive, collective trust versions, causing participants to be charged excessive fees;
- Choosing a recordkeeping service provider that charged excessive fees;
- Using forfeited funds to reduce company contributions instead of using those funds to reduce fees paid by participants;
- Failing to replace investment options with less expensive, substantially similar investment options, causing participants to pay unnecessary investment management fees;
- Failing to offer the lowest-cost share classes of funds, which the Plan qualified for, even though the share classes of funds were identical and cost less;
- Choosing a managed account service provider that charged excessive fees.

Plaintiffs allege that the fiduciaries of the Tenneco Plan breached their fiduciary duties or otherwise violated the law in the following ways:

- Failing to replace target date mutual funds with substantively identical, but much less expensive, collective trust versions, causing participants to be charged excessive fees;

---

Alison Mathieu, Jan Maiden, Jerome Rouquet, Ron Hundzinski, and John and Jane Does 1-30. (ECF No. 70.)

[2] Tenneco Inc., DRiV Automotive, Tenneco Automotive Operating Company, Federal-Mogul Corporation, Federal-Mogul LLC, and Federal-Mogul Powertrain LLC.

[3] Board of Directors of Tenneco Automotive Operating Company Inc., Tenneco Compensation Committee, Tenneco Benefits Committee, Tenneco Benefits & Pension Investment Committee, Tenneco Benefit Appeals Committee, Tenneco Benefits Oversight Committee, Tenneco Administrative Committee, Tenneco Investment Committee, Federal-Mogul LLC Benefits Administrative Committee, Federal-Mogul LLC Compensation Committee, Federal-Mogul Powertrain LLC Benefits Administration Committee.

[4] Brian J. Kesseler, Thomas J. Sabatino, Jr., Roy V. Armes, Thomas C. Freyman, Denise Gray, Michelle A. Kumbier, Dennis J. Letham, James S. Metcalf, Aleksandra A. Misiolek, Charles K. Stevens, III, John S. Stroup, Jane L. Warner, Gregg M. Sherrill, Sunghwan Cho, Roger B. Porter, David B. Price, Kaled Awada, Mattie Masanovich, Paul D. Novas, Peter Acker, Zhenfeng (Jennifer) Lou, Evan Stall, Alison Mathieu, Jan Maiden, Jerome Rouquet, Ron Hundzinski, and John and Jane Doe Defendants 1-30.

• Choosing a recordkeeping service provider that charged **[*5]** excessive fees;

• Using forfeited funds to reduce company contributions instead of using those funds to reduce fees paid by participants;

• Failing to replace certain index funds with lower cost, substantially similar alternatives.

### II. Defendants' motion to dismiss the second amended complaint

#### A. Legal Standard

When deciding a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*, the Court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc., 684 F.3d 605, 608 (6th Cir. 2012)*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)* (quoting *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)*). A plaintiff's claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly, 550 U.S. at 555*.

#### B. Fiduciary duty claims related to forfeitures

Plaintiffs claim that Defendants for both Plans violated their fiduciary duties of loyalty and prudence when Defendants **[*6]** used forfeited Plan assets, otherwise known as forfeitures, to offset future employer contributions. (ECF No. 70, PageID.1797-1798; *see also id.* at PageID.1775-1784.)

As set forth in the Court's April 22, 2025 order:

> Plan participants forfeit their plan contributions when they end their employment before they are fully vested. According to the proposed SAC, Defendants exercised their discretion as fiduciaries to use forfeited contributions to reduce company contributions rather than to reduce administrative expenses borne by plan participants, which violated Defendants' fiduciary duties. Plaintiffs include specific dollar amounts that they argue could have been used to benefit plan participants' interests rather than [benefiting] company interests. The proposed SAC also asserts that the plan fiduciaries were company employees, which created a conflict of interest with respect to how to dispose of forfeited contributions.

(ECF No. 65, PageID.1376 (internal citations omitted).) Defendants argue that Plaintiffs' allegations are insufficient because they have not shown that: (1) the challenged actions were taken in Defendants' fiduciary capacity, (2) Defendants breached their ERISA fiduciary **[*7]** duty, and (3) the Plans suffered harm as a result of any conduct. (ECF No. 74, PageID.2133-2134.)

The Court concludes that Plaintiffs' allegations are insufficient to show a breach of Defendants' fiduciary duties.[5]

An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." *29 U.S.C. § 1104(a)(1)*. "A claim for breach of fiduciary duty under ERISA requires the plaintiff to prove: (1) the defendant is a plan fiduciary; (2) the defendant breached its fiduciary duty; and (3) the breach resulted in harm to the plaintiff." *Chelf v. Prudential Ins. Co. of Am., 31 F.4th 459, 464 (6th Cir. 2022)*.

Numerous district courts confronted with similar allegations—that a defined contribution plan was permitted to use forfeitures to either pay fees or reduce employer contributions and chose to use them to reduce employer contributions—have held that the plausibility of the plaintiffs' allegations depend on "the context and

---

[5] With regard to Defendants' argument that the challenged actions were not taken in Defendants' fiduciary capacity, the Court disagrees. An ERISA fiduciary duty "consist[s] of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 444 (1999)*. This includes "exercis[ing] the powers conferred[ ] by the trust document." *Best v. Cyrus, 310 F.3d 932, 935 (6th Cir. 2002)* (citing *Varity Corp. v. Howe, 516 U.S. 489, 502 (1996)*). "[T]he decision to allocate forfeited amounts constitutes a fiduciary, not settlor, function" because it is a decision permitted by the trust documents. *Barragan v. Honeywell Int'l Inc., No. 24CV4529 (EP) (JRA), 2024 WL 5165330, at *3 (D.N.J. Dec. 19, 2024)*; *see also* *Dimou v. Thermo Fisher Sci. Inc., No. 23-CV-1732 TWR (JLB), 2024 WL 4508450, at *8 (S.D. Cal. Sept. 19, 2024)*; *Rodriguez v. Intuit Inc., 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024)*.

circumstances of the fiduciary's actions." *Hutchins v. HP Inc., 737 F. Supp. 3d 851, 862 (N.D. Cal. 2024)* ("*Hutchins I*") (citing *Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425-27 (2014)*). For example, the *Hutchins I* plaintiff's allegations amounted to a claim that, "if given the option between using forfeited funds to pay administrative costs or to reduce employer contributions, a fiduciary is *always* required to **[*8]** choose to pay administrative costs." *Id. at 862-63*. The *Hutchins I* court found that this theory was "implausible" because the plaintiff's "theory would require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or circumstances" and dismissed the claim. *Id.*

Similarly, the court in *Buescher v. N. Am. Lighting, Inc., 791 F. Supp. 3d 873 (C.D. Ill. 2025)* determined that the plaintiff's claim was sufficient because, while there are instances where participants would benefit from forfeitures being used to pay for employer contributions (such as when the employer is financially unable to meet those obligations), this plaintiff had alleged that those circumstances were not present and the employers were able to meet their contributory obligations. *Id. at 887-88*; *see also* *McManus v. Clorox Co., No. 4:23-CV-05325-YGR, 2025 WL 732087, at *2 (N.D. Cal. Mar. 3, 2025)*.

Here, Plaintiffs' allegations are insufficient because they have not provided any context or circumstances related to Defendants' financial status or actions. Unlike *McManus* and *Buescher*, the SAC fails to allege that the circumstances did not warrant the allocation of forfeitures to company contributions, such as alleging that the Companies (*i.e.*, the sponsors of the Plans) were able to satisfy the required company contributions to the Plans. (*See* ECF No. 70, PageID.1777-1779.) **[*9]** In fact, Plaintiffs agree that Defendants, in some circumstances such as "serious financial difficulty," should "use forfeitures to make up for already-promised contributions." (ECF No. 78, PageID.2776.)[6]

Plaintiffs nonetheless argue that Defendants' use of forfeitures violated their fiduciary duties because they "applied forfeitures in the same, self-serving way year after year, without a prudent or loyal decision-making process." (*Id.*) In the response brief and at oral argument, Plaintiffs represented that a proper fiduciary, when exercising its discretion with regard to the use of forfeitures, should look at the company's status and make a year-by-year determination on what the most prudent application of forfeitures would be. Plaintiffs claimed that Defendants failed to undergo a "prudent process" and instead mechanically applied forfeitures to company contributions every year.

However, this characterization of Plaintiffs' claim does not match their claim as pleaded in the SAC. At no point do Plaintiffs allege that Defendants lacked a prudent process on how to exercise their discretion regarding forfeitures. The SAC only claims that Defendants regularly applied forfeitures to company **[*10]** contributions, and that these decisions *per se* violated Defendants' fiduciary duties. (*See* ECF No. 70, PageID.1778-1779; *id.* at PageID.1783-1784.) But "Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n, 958 F.3d 470, 483 (6th Cir. 2020)*.

As such, Plaintiffs' fiduciary duty claims related to the use of forfeitures are dismissed.

### C. Prohibited transaction claims related to forfeitures

Plaintiffs allege that Defendants engaged in prohibited transactions in violation of *29 U.S.C. § 1106(a)(1)(A)* and § 1106(b)(1) when they used forfeitures to pay for company contributions. (*See* ECF No. 70, PageID.1798.)

*29 U.S.C. § 1106(a)(1)(A)*, which covers "transactions between [a] plan and [a] party in interest," states,

---

[6] The SAC also appears to allege that the allocation of forfeitures to company contributions "caused the company and its related entities to violate the Plan's terms" because it allowed the Companies to forgo their "mandatory" requirement to make matching contributions. (ECF No. 70, PageID.1779 ("Defendants' actions, by applying forfeited amounts already in the DRiV Plan trust to reduce the mandatory new Employer matching and retirement contributions to the DRiV Plan trust, caused the company and its related entities to violate the Plan's terms and caused the Plaintiffs to receive less in benefits than they were contractually owed under the DRiV Plan.").)

By acknowledging that forfeitures, in some circumstances, should be used to make up for company contributions, Plaintiffs appear to abandon their argument that the Companies themselves must always be the source of company contributions. That forfeitures can be used to pay company contributions in certain situations, and that the Companies must always be the source of company contributions, cannot both be true.

"[e]xcept as provided in section 1108 of this title[ ] [a] fiduciary with respect to the plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect[ ] sale or exchange, or leasing, of any property between the plan and a party in interest." *29 U.S.C. § 1106(b)(1)*, which covers "transactions between plan and fiduciary," states, "[a] fiduciary with respect to a plan shall not[ ] deal with the assets of the plan in his own interest **[*11]** or for his own account."

It is undisputed that both claims require a "transaction" or "transactions," whether it is between the Plans and a fiduciary, or a party in interest (such as a fiduciary or an employer).[7] As an initial matter, Plaintiffs have not stated a claim under *29 U.S.C. § 1106(a)(1)(A)* due to the plain language of that statute. Section 1106(a)(1)(A) requires transactions that "constitute a direct or indirect[ ] sale or exchange, or leasing, of any property" between the Plans and the employers (*i.e.*, the Companies). The use of forfeitures for company contributions is not a sale, exchange, or lease of property. The forfeitures do not leave the Plans, and the Plans do not receive anything in return for the use of forfeitures for company contributions.

Regarding § 1106(b)(1), several district courts have held that similar allegations are insufficient to state a prohibited transaction claim under that provision.[8] The Court is ultimately not convinced that the movement of forfeited funds within a Plan consists of a "transaction" such that Defendants can be held liable under this Section. *See* *Buescher, 791 F. Supp. 3d at 897* ("[T]ransactions tend to involve multiple parties and some sort of exchange between them."); *see also* *Hutchins I, 737 F. Supp. 3d at 868*. The Court also notes that § 1006(b)(1) prohibits a **[*12]** fiduciary from "dealing" with the assets of the plan "in his own interest or for his own account," which appears to require "buying and selling" or "the purchase and exchange of something for profit." *Buescher, 791 F. Supp. 3d at 897* (quoting *Deal*, Black's Law Dictionary (12th ed. 2024)). Here, the use of forfeitures as company contributions does not involve an exchange or a purchase between the Plans and any fiduciary.

Finally, as set forth earlier, there are circumstances when using forfeitures to pay company contributions is desirable, such as when a company faces serious financial difficulty, and permitting fiduciaries to use forfeitures in those circumstances would be beneficial for everyone. A finding that using forfeitures for company contributions constitutes a prohibited transaction, no matter the circumstances, would not take into consideration the realities of plan administration. *Id. at 897-98*.

For all of these reasons, Plaintiffs' prohibited transaction claims against Defendants related to forfeitures are dismissed.

**D. Anti-inurement claims related to forfeitures**

Plaintiffs also allege that the allocation of forfeitures to company contributions violates ERISA's anti-inurement provision, *29 U.S.C. § 1103(c)(1)*. Section 1103(c)(1) states that, **[*13]** aside from certain exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

Several district courts have held that similar anti-inurement claims are not viable because the plaintiff never alleged that the forfeited assets left the plan or that the assets were used for a purpose other than participant benefits.[9] These courts have interpreted the Supreme Court's decisions in *Hughes Aircraft Co. v. Jacobson, 525 U.S. 432 (1999)* and *Raymond B. Yates,*

[7] The definition of "party in interest" includes "any fiduciary" of the employee benefit plan and "an employer." *29 U.S.C. § 1002(14)(A)*, (C).

[8] *See* *Buescher, 791 F. Supp. 3d at 897*; ***Hutchins v. HP Inc., 767 F. Supp. 3d 912, 928 (N.D. Cal. 2025)*** ("*Hutchins II*"); *Barragan, 2024 WL 5165330, at *7*; *Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *16 (D. Kan. Aug. 5, 2025)*; *Dimou, 2024 WL 4508450, at *11*; *Brown v. Peco Foods, Inc., No. 3:25-CV-491-TSL-RPM, 2025 WL 3210857, at *9 (S.D. Miss. Nov. 14, 2025)*.

[9] *See* *Madrigal v. Kaiser Found. Health Plan, Inc., No. 2:24-CV-05191-MRA-JC, 2025 WL 1299002, at *6 (C.D. Cal. May 2, 2025)* (collecting cases); *Hutchins II, 2025 WL 404594*; *Barragan, 2024 WL 5165330, at *6*; *Wright v. JPMorgan Chase & Co, No. 2:25-CV-00525-JLS-JC, 2025 WL 1683642, at *6 (C.D. Cal. June 13, 2025)*; *McManus, 2024 WL 4944363, at *7*; *Dimou, 2024 WL 4508450, at *10*; *Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *17 (D. Kan. Aug. 5, 2025)*; *Sievert v. Knight-Swift Transportation Holdings, Inc., 780 F. Supp. 3d 870, 880 (D. Ariz. 2025)*.

M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1 (2004), as stating that an anti-inurement claim fails if the plan's assets were used to pay benefits to participants, even if the employer benefits from those actions. Hutchins I, 737 F. Supp. 3d at 864; Barragan, 2024 WL 5165330, at *5; *see also* Hughes Aircraft Co., 525 U.S. at 442 ("As the language makes clear, the section focuses exclusively on whether fund assets were used to pay pension benefits to plan participants . . . ."); Raymond B. Yates, 541 U.S. at 22 ("The [anti-inurement] provision demands only that plan assets be held for supplying benefits to plan participants.").

Similarly, the Sixth Circuit in Holliday v. Xerox Corp., 732 F.2d 548 (6th Cir. 1984) held that the anti-inurement provision "cannot be read as a prohibition against any decisions of an employer with respect to a pension **[*14]** plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective." Id. at 551. Defendants urge the Court to find that this reasoning also applies here—that Defendants incidentally benefited from the allocation of forfeitures to company contributions does not mean that ERISA was violated. (ECF No. 74, PageID.2147.)

The Court concludes that Plaintiffs' anti-inurement claim fails. Although the forfeitures were not used in the manner Plaintiffs preferred, it is undisputed that the forfeitures, when used "as a substitute for future employer contributions to the Plan[s]" (ECF No. 70, PageID.1798, 1800), remain in the Plans and are still being used to "provid[e] benefits to participants in the plan." 29 U.S.C. § 1103(c)(1). While it is true that *Hughes* and Holliday involve defined-benefit plans, not defined contribution plans (as applies here), Plaintiffs do not sufficiently explain why a defined contribution plan requires employers to use of forfeitures in certain ways and not in others.

**E. Fiduciary duty of prudence claims related to excessive fees**[10]

Plaintiffs claim that Defendant violated their fiduciary duty **[*15]** of prudence in a variety of ways related to excessive fees.

"An ERISA fiduciary must discharge his responsibility 'with the care, skill, prudence, and diligence' that a prudent person 'acting in a like capacity and familiar with such matters' would use." Tibble v. Edison Int'l, 575 U.S. 523, 528 (2015) (quoting § 1104(a)(1)). "[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones. A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones." Id. at 530.

The Court's consideration of Plaintiffs' allegations requires "careful, context-sensitive scrutiny." Smith v. CommonSpirit Health, 37 F.4th 1160, 1164 (6th Cir. 2022) (quoting Dudenhoeffer, 573 U.S. at 425). "Because the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." Dudenhoeffer, 573 U.S. at 425.

*i. Recordkeeping fees*

Plaintiffs allege that Plan participants paid excessive recordkeeping fees due to Defendants' failure to monitor those fees. (ECF No. 74, PageID.2150; ECF No. 70, PageID.1749, 1771.)

As set forth by the Sixth Circuit, plaintiffs challenging excessive fees on these grounds must plead "that the fees were excessive relative to the services rendered **[*16]** or establish other factors relevant to determining whether a fee is excessive under the circumstances." *England v. DENSO Int'l Am. Inc., 136 F.4th 632, 636-37 (6th Cir. 2025)* (cleaned up). Usually, this involves pleading that the challenged plan's fees were greater than the comparator's, even though the challenged plan's fees and a comparator's fees covered equivalent services. *Id.*; *see also* Forman v. TriHealth, Inc., 40 F.4th 443, 449 (6th Cir. 2022) (affirming grant of motion to dismiss because the "employees never alleged that these fees were high in relation to the services that the plan provided"); Smith, 37 F.4th at 1169 (same, because the plaintiff "has not pleaded that the services she received are equivalent to those provided by [comparator plans]" and did not provide other facts relevant to determining "whether a fee is excessive under the circumstances" (cleaned up)).

Plaintiffs provide several comparators in support of their claims. (*See* ECF No. 70, PageID.1753-1755, 1771-1773.) However, Plaintiffs' allegations are insufficient. Although the SAC alleges that the comparators are a

---

[10] At oral argument, Plaintiffs confirmed that they do not pursue claims for breach of duty of loyalty related to their excessive fees claims.

similar size, it does not provide other necessary information to demonstrate that they are apt comparisons, such as the quality of the services or the services provided.

Plaintiffs also compare the recordkeeping fees of the Plans before and after **[*17]** the July 2022 merger. Between 2016 and July 2022, the date of the merger, DRiV Plan participants paid between $54.00 and $100.92 annually per participant in recordkeeping fees. (ECF No. 70, PageID.1754.) Similarly, between 2016 and 2021, Tenneco Plan participants paid between $51.00 and $103.67 annually per participant in recordkeeping fees. (*Id.* at PageID.1771-1772.) After the two Plans merged in July 2022, the Plan participants paid only $39.50 annually per participant. (*Id.* at PageID.1757.) Plaintiffs argue that such a low per-participant recordkeeping fee could have been achieved earlier had Defendants acted prudently: "Defendants could have used the economies of scale of both Plans to negotiate on behalf of all participants in both Plans to consolidate to a single recordkeeper, even before the formal merger of the Plans, but they failed to use the combined size to negotiate lower fees from an existing provider." (*Id.*)

Plaintiffs' attempt to use the post-merger recordkeeping services as the comparator ultimately fails. The SAC alleges that these recordkeeping services remained "at a similar service quality." (*Id.* at PageID.1758.) However, the SAC does not provide allegations regarding **[*18]** whether the services changed before and after the merger.[11] Again, a plaintiff must "identify[ ] the alleged problematic financial metric and then compar[e] it to a 'meaningful benchmark.'" *England, 136 F.4th at 636* (quoting *Forman, 40 F.4th at 451*). For excessive recordkeeping claims, "a plaintiff must 'allege that the fees were excessive relative to the services rendered' or establish 'other factors relevant to determining whether a fee is excessive under the circumstances.'" *Id. at 636-37* (*Smith, 37 F.4th at 1169*). Importantly, the SAC does not include allegations that the services provided to the Plans were the same before and after the merger. The SAC suggests that the services were "comparable," (ECF No. 70, PageID.1758), but it does not provide sufficient allegations demonstrating the plausibility of those claims.

As such, Plaintiffs' excessive recordkeeping fees claims are dismissed.

*ii. T. Rowe Price Mutual Funds*

Both Plans offered a series of T. Rowe Price target date mutual funds ("TDFs") to plan participants. (ECF No. 70, PageID.1713, 1759.) Plaintiffs claim that Defendants should have replaced these TDFs with T. Rowe Price collective trust ("CIT") options, which are cheaper and "substantially identical" to the TDFs "in all material **[*19]** respects, including the same investment strategy, the same investment objective, and the same risk profiles." (*Id.* at PageID.1716.)

Defendants argue that the differences between TDFs and CITs render them incapable of serving as comparators as a matter of law. (ECF No. 74, PageID.2156-2157.) However, the Ninth Circuit, in an unpublished opinion, found that "[w]hether the different regulatory regimes governing mutual funds and collective investment trusts justified defendants' delay in making the switch earlier is itself a factual issue that cannot be resolved at the pleading stage." *Davis v. Salesforce.com, Inc., No. 21-15867, 2022 WL 1055557, at *2 (9th Cir. Apr. 8, 2022)*. Similarly, the Tenth Circuit in *Matney v. Barrick Gold of N. Am., 80 F.4th 1136 (10th Cir. 2023)*, "reject[ed] the notion that CITs could *never* be considered comparable to mutual funds." *Id. at 1153*.[12]

---

[11] In Plaintiffs' response, Plaintiffs state that "there are no facts to suggest that [the merger] resulted in any change in the nature or quality of the recordkeeping services the Plan received." (ECF No. 78, PageID.2788-2789; *see also id.* at PageID.2790 ("[I]t took years before Defendants negotiated their recordkeeping fees down for plausibly the same services.").) Based on the records provided in Plaintiffs' response, the services provided to the DRiV Plan were the same before and after the merger. (*See* ECF No. 78, PageID.2791 (citing ECF Nos. 78-2, 78-3).)

However, the services provided to the Tenneco Plan changed significantly after the merger (*see* ECF No. 78, PageID.2792), contradicting Plaintiffs' argument that the Tenneco Plan received "plausibly the same services" before and after the merger. Plaintiffs attempt to explain this discrepancy by stating that the Tenneco Plan "incurred massive fees for many coded services that the Tenneco fiduciaries ultimately axed as useless in favor of the DRiV Plan's model." (*Id.* at PageID.2792.) Regardless, Plaintiffs' arguments involve allegations outside the SAC, and Plaintiffs may not amend their complaint through a response brief. *See Jocham v. Tuscola Co., 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003)*.

[12] The *Matney* court ultimately held that the plaintiff's

Here, Plaintiffs allege that the TDF and CIT versions of the funds have "the same portfolio management team, glidepath, subasset-class exposure, tactical allocation overlay, and underlying investments," (ECF No. 70, PageID.1716), making them substantially similar and proper comparators. As such, the Court finds that Plaintiffs' allegations are sufficient at the motion to dismiss stage.

*iii. DRiV Plan's Actively Managed Funds*

Plaintiffs claim that the DRiV fiduciaries violated their fiduciary **[*20]** duties when they kept expensive, actively managed funds. "[A]ctively managed funds," as opposed to passively managed funds, "are handled by individuals who are actively picking securities and determining when to sell, leading to more frequent purchases and sales with the ultimate goal of outperforming the market." (ECF No. 70, PageID.1735.) Passively managed funds, such as index funds, do not involve that same kind of activity and instead "track the performance of its specified market index benchmark," like the S&P 500 index. (*Id.* at PageID.1734-1735.) Even though actively managed funds are more expensive and involve more activity, Plaintiffs allege that "actively managed funds do not outperform passively managed index funds in the long term." (*Id.* at PageID.1736.)

Prior to December 2019, both Plans had several "actively managed" options available to participants. For the DRiV Plan, it had "14 to 16 single-asset class options during the Class Period" and "approximately three were passively managed index funds whereas the majority were actively managed funds." (*Id.* at PageID.1735.) In 2019, the Tenneco Plan removed several actively managed options. (*Id.* at PageID.1736.) However, the **[*21]** DRiV Plan kept its actively managed investments until July 1, 2022. (*Id.*) Plaintiffs claim that the DRiV Plan's failure to remove its actively managed investment options between 2019 to 2022 violated Defendants' fiduciary duty because they needlessly kept expensive plans that were not better than the passively managed index funds.

The Sixth Circuit has held that offering actively managed funds to employees, "as opposed to offering only passively managed funds," is not a breach of the fiduciary duty of prudence. *Smith, 37 F.4th at 1165*. As such, Defendants' decision to have actively managed funds as options in the DRiV Plan is not, in and of itself, a breach of its fiduciary duty.

Plaintiffs argue that the DRiV fiduciaries violated their duties because the DRiV fiduciaries did not remove actively managed funds from its lineup when the Tenneco fiduciaries did in 2019. (ECF No. 78, PageID.2797.) Plaintiffs believe that the DRiV Plan's "fail[ure] to take the same action" gives "rise to an inference of insufficient process" (*id.* (quoting *Johnson v. Parker-Hannifin Corp., 122 F.4th 205, 216 (6th Cir. 2024)*)), because the Tenneco Plan's actions demonstrate that "their actively managed lineup of investments 'became imprudent over time' or was 'otherwise clearly unsuitable for the **[*22]** goals of the fund.'" (*Id.* (quoting *Smith, 37 F.4th at 1166*).)

These claims are insufficient. According to the SAC, the Tenneco Plan (prior to December 6, 2019) and DRiV Plan had several actively managed fund options. (ECF No. 70, PageID.1736.) The two Plans had only one actively managed fund in common: the "American Funds EuroPacific Growth Fund." (*Id.*) With regard to actively managed funds that the two Plans did not have in common, Plaintiffs do not explain, nor can the Court discern, how the Tenneco Plan's removal of those funds has any bearing on the DRiV Plan. Additionally, Plaintiff has not plausibly alleged that the shared actively managed fund—the American Funds EuroPacific Growth Fund—"became imprudent over time" or "was otherwise clearly unsuitable for the goals of the fund." *Smith, 37 F.4th at 1166*. The fact that one Plan kept a fund and the other did not does not, on its own, plausibly demonstrate that keeping the fund was violation of Defendants' fiduciary duties. *See, e.g., Davis v. Washington Univ. in St. Louis, 960 F.3d 478, 485 (8th Cir. 2020)* (stating that a fiduciary may have both actively and passively managed funds because "[t]hey have different aims, different risks, and different potential rewards that cater to different investors").

As such, Plaintiffs' claim related to actively **[*23]** managed funds is dismissed.

*iv. DRiV Plan's Managed Account Services*

Plaintiffs' fiduciary duty claim related to managed account services is also insufficiently pled. "Managed-account services are investment services under which a participant pays a fee to have a managed-account provider invest his or her account in a portfolio of

---

allegations were insufficient because they had not sufficiently established that the CITs and TDFs were similar.

preselected investment options." (ECF No. 70, PageID.1740.) Although managed account services are purportedly customized, Plaintiffs allege that "[i]n practice, there may be little customization provided to the participant, which results in no material value to most, if not all, participants relative to the fees paid." (*Id.* at PageID.1741.)

Plaintiffs believe that Defendants did not monitor the fees for managed account services and failed to make appropriate changes or negotiate the fees down to match the general market. (*Id.* at PageID.1742-1743.) Instead, DRiV Plan participants allegedly paid excessive fees to Edelman Financial Engines between 2016 and 2017, and Fidelity between 2018 and 2022. (*Id.* at PageID.1745.) Plaintiffs argue that "similar services were available for significantly lower fees from other providers," and provides information on fees of other **[*24]** providers, such as Morningstar and Vanguard Personal Advisor. (*Id.* at PageID.1746.)

Plaintiffs do not demonstrate that these other providers are proper comparators. Although Plaintiffs state that the services are similar, they provide no information supporting that allegation. Additionally, the information provided on the other providers' fees is not tied to any particular date or year.

Thus, Plaintiffs' managed account services claim is dismissed.

*v. DRiV Plan's Single Class Investments and Vanguard Index Funds*

Plaintiffs allege that the DRiV fiduciaries improperly kept several single class investment options that were more expensive than substantially similar alternate investment options. (ECF No. 70, PageID.1728-1729.) Similarly, Plaintiffs claim that three Vanguard index fund options in the DRiV Plan should have been replaced with lower cost options offered by State Street. (ECF No. 74, PageID.2163; ECF No. 70, PageID.1733.)

These allegations are sufficient at this stage of the case. Plaintiffs have identified "meaningful benchmark[s]," *Smith, 37 F.4th at 1167*, for the single class investment options and Vanguard index options available to DRiV Plan participants. As set forth in the SAC, Plaintiffs' quantitative **[*25]** analysis demonstrates that the identified alternatives were very similar to the DRiV Plan's Single Class Investments and Vanguard Index Fund options. (*Id.* at PageID.1730 (showing that the DRiV Plan investments and Plaintiffs' alternatives have similar "holdings, risk profiles, and investment objections"); *see also id.* at PageID.1734 (alleging the same for the index funds).) Additionally, the identified alternatives were significantly cheaper than the options offered by the DRiV Plan. (*Id.* at PageID.1728-1729, 1733.) Finally, the DRiV Plan's options performed similarly to the identified alternatives. (*Id.* at PageID.1729, 1734.)

Taking these allegations as true, Plaintiffs' showing is sufficient to "move the claim from possible and conceivable to plausible and cognizable." *Smith, 37 F.4th at 1167*; *see also* *Middleton v. Amentum Parent Holdings, LLC, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959, at *7 (D. Kan. Aug. 5, 2025)* (finding similar factual allegations sufficient at the motion to dismiss stage); *Anderson v. Coca-Cola Bottlers' Ass'n, No. 21-2054-JWL, 2022 WL 951218, at *8 (D. Kan. Mar. 30, 2022)* (same).

Defendants' motion to dismiss Plaintiffs' claims related to the DRiV Plan's single class investments and index funds is denied.

*vi. Tenneco Plan's Index Fund Investments*

Defendants argue that Named Plaintiff Farrier does not allege that he invested in challenged index fund investment options in the Tenneco Plan and, "as **[*26]** such, he lacks the requisite causal connection required to state a viable claim under Rule 12(b)(6) and the injury-in-fact required to establish Article III standing." (ECF No. 74, PageID.2162 n.20.)

"Threshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 423 (6th Cir. 1998)*. "A potential class representative must demonstrate individual standing vis-[a]-vis the defendant." *Id.* To establish standing, a plaintiff must demonstrate an injury in fact, causation, and redressability. *Babcock v. Michigan, 812 F.3d 531, 539 (6th Cir. 2016)*. An injury in fact must be a harm that is concrete and particularized, and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Vermont Agency of Nat. Res. v. United States ex rel. Stevens, 529 U.S. 765, 771 (2000)*). To qualify as particularized, the injury "must affect the plaintiff in a personal and individual way." *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 n.1 (1992)*.

Here, the SAC alleges that, "[d]uring the Class Period [Farrier] invested in imprudent options offered by the

Tenneco Plan that are the subject of this lawsuit, including at least the T. Rowe Price Retirement 2055 Target Date mutual fund, and he paid the recordkeeping costs and administrative costs associated with the Tenneco Plan." (ECF No. 70, PageID.1682.) There are no allegations that Farrier was injured by the Tenneco Plan's failure to replace "index funds from one **[*27]** investment company (Vanguard) with far less expensive funds from another investment company (State Street)." (*Id.* at PageID.1768.) Farrier has not alleged that he suffered an injury from this conduct in a "personal and individual way." *Lujan, 504 U.S. at 560 n.1*.

Farrier's claim regarding the Tenneco Plan's index fund investments is dismissed for lack of standing.

*vii. DRiV Plan's Offered Share Classes*

Plaintiffs claim that Defendants failed to take advantage of lower-cost share classes of the investment options offered by the DRiV Plan. (ECF No. 70, PageID.1737.)

Because the DRiV Plan had a large amount of assets, it qualified for lower-cost share classes in mutual funds. (ECF No. 70, PageID.1737-1738.) Despite the ability to take advantage of those lower-cost share classes, the DRiV Fiduciaries allegedly failed to switch two funds—"DWS RREEF Real State Securities Instl" and "Fidelity Low-Priced Stock K"—with their identical, cheaper counterparts. (*Id.* at PageID.1739.) Plaintiffs provide data from 2021 and 2020 showing that there were lower cost share classes available for those two funds.

Defendants argue that Plaintiffs' claim based on the "Fidelity Low-Priced Stock" fund fails because the lower-priced version **[*28]** "did not even exist until May 2017" and, as such, there was no or limited performance history for this fund. (ECF No. 74, PageID.2165-2166.) In support of this factual allegation, Defendants provide a hyperlink to the Fidelity website. (*Id.* at PageID.2166 n.24.)

"Generally, at the motion-to-dismiss stage, a federal court may consider only the plaintiff's complaint." *In re Omnicare, Inc. Sec. Litig., 769 F.3d 455, 466 (6th Cir. 2014)* (citing *Weiner v. Klais & Co., Inc., 108 F.3d 86, 88-89 (6th Cir. 1997)*). However, "if a plaintiff references or quotes certain documents, or if public records refute a plaintiff's claim, a defendant may attach those documents to its motion to dismiss, and a court can then consider them in resolving the Rule 12(b)(6) motion without converting the motion to dismiss into a Rule 56 motion for summary judgment." *Id.* (citing *Weiner, 108 F.3d at 89*).

The Court declines to consider Defendants' hyperlink to the Fidelity website at this stage of the case. Defendants did not provide this information as an attachment to its motion to dismiss. *See id.* (specifying that "a defendant may attach [referenced documents or public records] to its motion to dismiss"); *see also* Eastern District of Michigan Electronic Filing Policies and Procedures R19(a) ("An exhibit available in original electronic format must be converted to PDF, made text-searchable **[*29]** and filed electronically.").

Even assuming this information was properly presented, the Court is not convinced that it could consider Fidelity's website without converting the motion to dismiss to a motion for summary judgment. Defendants do not provide any justification for the Court to consider Fidelity's website.[13] Plaintiffs do not quote or reference this website in the SAC. (*See, e.g.*, ECF No. 70, PageID.1739.) Further, Defendants do not explain how Fidelity's website is a "public record" such that it could be considered. Out of an abundance of caution, the Court declines to consider Fidelity's website at this time.

To the extent Defendants argue that Plaintiffs' allegations are insufficient to support an inference that the DRiV fiduciaries failed to properly monitor their investment options (ECF No. 74, PageID.2166), Defendants' argument is rejected. The Sixth Circuit has repeatedly held that similar allegations—that the defendants were imprudent when "reasonable effort would have unlocked" a lower cost share class that was "substantially identical" to the existing fund—were sufficient. *See* *Johnson, 122 F.4th at 220-22*; *Forman, 40 F.4th at 450*. As such, the Court also finds these allegations to be sufficient.

**F. Conclusion**

For the **[*30]** reasons set forth above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiffs' fiduciary duty of prudence claims related to the T. Rowe Price Mutual Funds, the DRiV Plan's single class investments, the DRiV Plan's Vanguard index funds, and the DRiV Plan's failure to obtain lower-cost share classes, remain in the case.

---

[13] In contrast, Defendants provide justification for the Court to consider Form 5500s that Defendants attached as exhibits. (ECF No. 74, PageID.2152 n.12.)

### III. Defendants' motion to strike or dismiss 28 Defendants

Defendants claim that the inclusion of 28 Defendants in the second amended complaint violates the Court's April 22, 2025 order (ECF No. 65) granting in part Plaintiffs' motion for leave to file their SAC. (ECF No. 74, PageID.2130-2132.)

#### A. The Court's prior order (ECF No. 65)

On April 22, 2025, the Court granted in part and denied in part Plaintiffs' motion for leave to file a second amended complaint. (ECF No. 65.) Plaintiffs' motion for leave to amend was denied with respect to their failure to monitor claims. (*Id.* at PageID.1374-1375.) The previous order set forth,

> The proposed SAC fails to identify which Defendants breached the obligation to monitor other fiduciaries, in addition to failing to allege which fiduciaries they were obligated to monitor. . . .
>
> Plaintiffs do not allege which **[*31]** Defendants breached the duty to monitor and therefore do not specify against whom they assert their claims. As a result, these claims do not include "sufficient factual matter" to survive a motion to dismiss. *Iqbal, 556 U.S. at 677*; *see also Meizbov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005)* (citing *Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988)*) ("a complaint must contain either direct or inferential allegations respecting all the material elements [of its claims] to sustain a recovery under some viable legal theory"). At best, such an allegation asserts a "mere possibility" that any given Defendant breached their duty to monitor, which is insufficient to state a claim. *See Iqbal, 556 U.S. at 679*.

(ECF No. 65, PageID.1375.)

#### B. Analysis

Defendants argue that, despite the Court's prior order, the SAC named numerous Defendants and renewed allegations related to the denied failure to monitor claims. As such, Defendants believe these Defendants and allegations should be stricken from the SAC pursuant to *Federal Rule of Civil Procedure 12(f)*. (ECF No. 74, PageID.2130.)

The challenged Defendants are as follows:

> (1) the Board of Directors for Tenneco Inc.; (2) the Board of Directors of DRiV Automotive Inc.; (3) the Board of Directors of Tenneco Automotive Operating Company; (4) the Tenneco Compensation Committee; (5) the Federal-Mogul LLC Compensation Committee; (6) **[*32]** the Federal-Mogul Powertrain LLC Benefits Administration Committee; (7) the Federal-Mogul LLC Benefits Administrative Committee; (8) the Tenneco Benefits Oversight Committee; (9) the Tenneco Benefit Appeals Committee; (10) the Tenneco Benefit[s] [ ][14] Committee; and (11) the named and unnamed "Doe" members of these Boards and Committees, including Roy V. Ames, Thomas C. Freyman, Denise Gray, Brian J. Kesseler, Michelle A. Kumbier, Dennis J. Letham, James S. Metcalf, Aleksandra A. Misiolek, Charles K. Stevens, III, John S. Stroup, Jane L. Wa[r]ner, Gregg M. Sherrill, SungHwan Cho, Roger B. Po[rt]er, David B. Price, Jr., Ron Hundzinski, Janice Maiden, and Jerome Rouquet.

(ECF No. 74, PageID.2125 n.2.)[15]

The Court's prior order did not permit Plaintiffs to add failure to monitor claims to its complaint. For the reasons set forth below, the Court reconsiders its prior order and allows Plaintiffs' failure to monitor claims to remain in the case with regard to certain Defendants.

"District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders." *Mallory v. Eyrich, 922 F.2d 1273, 1282 (6th Cir. 1991)* (internal **[*33]** citations omitted); *see also Fed. R. Civ.*

---

[14] At the February 25, 2026 hearing, Defendants clarified that they intended to include "Tenneco Benefits Committee" instead of listing "Tenneco Benefit Appeals Committee" twice. This is consistent with Defendants' Exhibit A, "Demonstrative of Improper Defendants" (ECF No. 74-1), which lists Tenneco Benefits Committee as an "improper defendant."

[15] The unchallenged Defendants are as follows: Tenneco Inc., DRiV Automotive Inc., Tenneco Automotive Operating Company Inc., Federal-Mogul Corporation, Federal-Mogul LLC, Federal-Mogul Powertrain LLC, Tenneco Benefits & Pension Investment Committee, Tenneco Administrative Committee, Tenneco Investment Committee, Thomas J. Sabatino, Jr., Kaled Awada, Mattie Masanovich, Paul D. Novas, Peter Acker, Zhenfeng (Jennifer) Lou, Evan Stall, and Alison Mathieu.

P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). "A District Court may exercise this power *sua sponte* . . . or it may do so on motion of the parties." Livonia Pub. Schs. v. Selective Ins. Co. of the Se., 611 F. Supp. 3d 426, 434 (E.D. Mich. 2020) (citing Leelanau Wine Cellers, Ltd. v. Black & Red, Inc., 118 F. App'x 929, 945-46 (6th Cir. 2004); In re Saffady, 524 F.3d 799, 802-03 (6th Cir. 2008)). "This 'inherent procedural power' allows district courts to 'reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.'" *Id.* (quoting Leelanau Wine Cellars, Ltd., 118 F. App'x at 946). As such, the Court modifies the section of its prior opinion with respect to the failure to monitor claims and will reevaluate those claims and the relevant Defendants.

"Because a claim that certain Defendants failed to monitor the imprudent or disloyal actions of others requires a preliminary finding of breach of those duties, courts generally treat a 'failure to monitor' claim as rising or falling with a breach of duty claim." Dover v. Yanfeng US Auto. Interior Sys. I LLC, 563 F. Supp. 3d 678, 690 (E.D. Mich. 2021). Thus, Plaintiffs' failure to monitor claims arising from dismissed fiduciary duty claims, *see supra* ***[*34]*** II., are also dismissed.

Failure to monitor claims arise under 29 U.S.C. § 1105(a) and are a form of co-fiduciary liability. *See Saumer v. Cliffs Natural Res. Inc.*, No. 1:15-cv-954, 2016 WL 8668509, at *8 (N.D. Ohio Apr. 1, 2016). Section 1105(a) sets forth three forms of co-fiduciary liability. Liability is established if "the fiduciary knew of her co-fiduciary's breach, and that the fiduciary either knowingly participated in or concealed that breach, 29 U.S.C. § 1105(a)(1)," or if "the fiduciary failed to make reasonable efforts to remedy the breach, 29 U.S.C. § 1105(a)(3)." Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan ex rel. Lyon v. Buth, 99 F.4th 928, 949 (7th Cir. 2024); *see also Saumer*, 2016 WL 8668509, at *8. Cofiduciary liability also arises if "the fiduciary, by failing to comply with her duties under ERISA, enabled her co-fiduciary's breach" under § 1105(a)(2). Appvion, 99 F.4th at 949; *Saumer*, 2019 WL 8668509, at *8.

Courts have found that claims brought under § 1105(a)(2) are sufficient when the complaint alleges that the co-fiduciary "controlled those who were fiduciaries of its Plan." Krueger v. Ameriprise Fin., Inc., No. 11-CV-02781 SRN/JSM, 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012); *see also* Appvion, 99 F.4th at 949 (finding co-fiduciary liability for "directors and officers" who "had the power to appoint or remove the trustees and the concomitant duty to monitor them").

*i. Board of Directors of Tenneco, Tenneco Compensation Committee, Tenneco Benefits Oversight Committee, Board of Directors of DRiV Automotive, Board of Directors of Tenneco Automotive*

Regarding the Board of Directors of Tenneco, the Tenneco Compensation Committee, the Tenneco Benefits Oversight Committee, **[*35]** the Board of Directors of DRiV Automotive, the Board of Directors of Tenneco Automotive, and the members of those committees,[16] the Court finds that the proposed SAC's allegations are sufficient to establish that these Defendants controlled or oversaw other fiduciaries who are alleged to have breached their fiduciary duties.

The Tenneco Benefits & Pension Investment Committee, Tenneco Administrative Committee, and Tenneco Investment Committee were, at various times, the fiduciaries responsible for administering and/or managing the assets of the Plans. (*See* ECF No. 55-2, PageID.767, 769.) The Boards of Directors of Tenneco, DRiV Automotive, and Tenneco Automotive, the Tenneco Compensation Committee, and the Tenneco Benefits Oversight Committee "oversaw and appointed members" to those committees and monitored their performance and activities. (*Id.* at PageID.766, 768, 770.) These allegations are sufficient at this stage of the case.

*ii. Federal-Mogul LLC Benefits Administrative Committee, Federal-Mogul LLC Compensation Committee, Federal-Mogul LLC Benefits Administration Committee*

Despite Defendants' argument, several of the challenged Defendants are not relevant to Plaintiffs' failure to monitor claims. Specifically, Plaintiffs alleged

[16] Defendants challenged the inclusion of the following individual board members: Brian J. Kesseler, Roy V. Armes, SungHwan Cho, Dennis J. Letham, David B. Price, Jr., Gregg M. Sherrill, John S. Stroup, Jane L. Warner, Thomas C. Freyman, Denise Gray, Michelle A. Kumbier, Charles K. Stevens, III, James S. Metcalf, Roger B. Porter, and Aleksandra A. Misiolek.

that the Federal-Mogul LLC Benefits Administrative Committee, the Federal-Mogul LLC Compensation **[*36]** Committee, and the Federal-Mogul LLC Benefits Administration Committee were given direct "administrative authority" over the Tenneco Plan. (ECF No. 70, PageID.1692.)

Plaintiffs' allegations regarding these three challenged Defendants do not implicate a duty to monitor. As such, the Federal-Mogul LLC Benefits Administrative Committee, the Federal-Mogul LLC Compensation Committee, the Federal-Mogul LLC Benefits Administration Committee, and its members[17] will remain in the case.

*iii. Tenneco Benefit Appeals Committee, Tenneco Benefits Committee*

Plaintiffs' failure to monitor claims do not appear relevant to the Tenneco Benefit Appeals Committee or the Tenneco Benefits Committee. However, Plaintiffs' allegations remain wholly insufficient regarding these Defendants' fiduciary status and these Defendants must be dismissed.

The only allegation related to the Tenneco Benefit Appeals Committee is that it was created by the Tenneco Board of Directors "[s]ometime before November 3, 2021." (*Id.* at PageID.766.) There is no information on the Tenneco Benefits Appeals Committee's role or duties, nor is the Court able to make any reasonable inferences to determine its duties. As such, the Tenneco Benefits **[*37]** Appeals Committee is dismissed from the case.

Allegations regarding the Tenneco Benefits Committee are also insufficient. According to the proposed SAC, the DRiV Plan's Form 5500s filed between 2016 and 2020 listed the Tenneco Benefits Committee as "the administrator of the DRiV Plan." (*Id.* at PageID.775; *see also id.* at PageID.765.) Plaintiffs do not have any other allegations regarding the Tenneco Benefits Committees. "Courts have held that being named as a plan administrator and signing a plan's Form 5500, which is a disclosure filed with the Department of Labor, is not sufficient on its own to establish that an individual is a fiduciary under ERISA." (ECF No. 65, PageID.1369 (citing *Humphries v. Mitsubishi Chem. Am., Inc., No. 23-cv-06214, 2024 WL 4711296, at *11 (Nov. 7, 2024 S.D.N.Y.)*).) Here, Plaintiffs have not demonstrated that the Tenneco Benefits Committee "exercised discretionary authority with respect to the management and administration of the Plans." *Humphries, 2024 WL 4711296, at *11* (quoting *Cress v. Wilson*, No. 06-cv-02717 (JGK), 2007 WL 1686687, at *2 (S.D.N.Y. June 6, 2007)). The Tenneco Benefits Committee is dismissed from the case.[18]

**C. Conclusion**

In conclusion, the Court's prior order (ECF No. 65) is modified with respect to Plaintiffs' failure to monitor claims, and the Tenneco Benefits Appeals Committee and Tenneco Benefits Committee are dismissed.

**IV. Conclusion**

For the reasons set forth **[*38]** above, Defendants' omnibus motion is GRANTED IN PART AND DENIED IN PART. (ECF No. 74.) Plaintiffs' fiduciary duty of prudence claims related to the T. Rowe Price Mutual Funds, the DRiV Plan's single class investments, the DRiV Plan's Vanguard index funds, and the DRiV Plan's failure to obtain lower-cost share classes, remain in the case. Plaintiffs' failure to monitor claims also remain in the case. Defendants Tenneco Benefits Appeals Committee and Tenneco Benefits Committee are DISMISSED.

Plaintiffs are ORDERED to file a third amended complaint that comports with this order within 14 days of its entry.

IT IS SO ORDERED.

Dated: March 27, 2026

Ann Arbor, Michigan

/s/ Judith E. Levy

JUDITH E. LEVY

United States District Judge

---

[17] Defendants challenged the inclusion of the following individual committee members: Ron Hundzinski and Janice Maiden.

[18] Defendants suggest that the inclusion of members of the Tenneco Benefits Committee violates the Court's prior order. (ECF No. 74-1, PageID.2176 ("Tenneco Benefits Committee and its members").) The Court is unaware of the identity of the Benefits Committee's members and is unable to dismiss them from the suit.

End of Document

# Exhibit D

No *Shepard's* Signal™
As of: March 31, 2026 9:42 PM Z

# Gaetano v. MVHS, Inc.

United States District Court for the Northern District of New York

March 27, 2026, Decided; March 27, 2026, Filed

6:25-CV-118 (AJB/CBF)

**Reporter**
2026 U.S. Dist. LEXIS 65524 *; 2026 LX 142007

JOHN GAETANO, BERTHA NOGAS, KATHI MARTIN, AND MARYANNE TAVERNE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, Plaintiffs, -v- MVHS, INC., Defendant.

## Core Terms

fiduciary, forfeiture, forfeit, employer contribution, fiduciary duty, plan participant, anti-inurement, recordkeeping, monitor, lack standing, prohibited transaction, breach of duty, imprudently, loyalty, breach of fiduciary duty, motion to dismiss, retirement, failure to investigate, duty of loyalty, stable, match, administrative expense, defendant argues, mismanagement, lower-cost, reallocate, nonvested, defray, harbor, offset

**Counsel:** **[*1]** For John Gaetano, Individually and on Behalf of All Others Similarly Situated, Bertha Nogas, Individually and on Behalf of All Others Similarly Situated, Kathi Martin, Individually and on Behalf of All Others Similarly Situated, Maryanne Taverne, Individually and on Behalf of All Others Similarly Situated, Plaintiffs: Ankita Sangwan, Gustavo F. Bruckner, Samuel J. Adams, LEAD ATTORNEYS, Pomerantz LLP, New York, NY.

For MVHS, Inc., Defendant: Katherine S. McClung, Bond, Schoeneck & King, PLLC, Rochester, NY; Suzanne M. Messer, Bond Schoeneck & King, PLLC - Syracuse, Syracuse, NY.

**Judges:** Anthony J. Brindisi, United States District Judge.

**Opinion by:** Anthony J. Brindisi

## Opinion

**DECISION and ORDER**

**I. INTRODUCTION**

On January 23, 2025, plaintiffs John Gaetano, Bertha Nogas, Kathi Martin, and Maryanne Taverne (collectively "plaintiffs"), employees of Mohawk Valley Health System, Inc. ("MVHS" or "defendant"), filed this putative class action alleging that defendant mismanaged the employer-sponsored retirement plan (the "Plan") and violated the *Employee Retirement Income Security Act of 1974 ("ERISA")*. Dkt. No. 1 ("Compl.").

Defendant has moved under *Rule 12(b)(6) of the Federal Rules of Civil Procedure* to dismiss plaintiffs' complaint. Dkt. No. 13. The motion has been fully briefed, Dkt. Nos. 13, 14, 15, and will be considered on the **[*2]** basis of the submissions without oral argument.[1]

**II. BACKGROUND**

In July 1989, MHVS established the MVHS, Inc. 401(k) Plan (the "Plan"). Compl. ¶ 13. The Plan is a defined-contribution retirement plan. *Id.* As such, participants allocate their retirement contributions among a menu of investment options that have been pre-selected by MVHS. *Id.* ¶¶ 13, 15, 23.

Plaintiffs Gaetano, Nogas, Martin, and Taverne are four former employees of MVHS and alleged participants in

[1] Both parties have filed sur-replies. Dkt. Nos. 16, 17. But neither party sought, nor received, prior leave of court as required by this District's Local Rules. L.R. 7.1(a)(1). Although "the Court has discretion to consider documents filed in violation of procedural rules," ***Anghel v. New York State Dep't of Health, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013)***, *aff'd*, *589 F. App'x 28 (2d Cir. 2015)* (summary order), the Court declines to exercise its discretion here.

the Plan. Compl. ¶¶ 9-12. Plaintiffs claim that they suffered financial losses as a result of defendant's mismanagement of the Plan and violations of ERISA. *Id.* Specifically, plaintiffs assert that defendant breached its fiduciary duties, violated ERISA's anti-inurement provision, and engaged in a prohibited transaction by failing to prudently select and monitor Plan investments, charging participants excessive fees, and improperly using forfeited funds for its own benefit rather than defraying the cost of the Plan's administrative expenses borne by plaintiffs. *See id.* ¶¶ 23-55.

During the putative class period, from January 23, 2019 through January 25, 2025 (the "Class Period"),[2] the number of participants ranged from 2,810 **[*3]** to 4,486. Compl. ¶ 43. As of December 31, 2023, the Plan had 4,486 participants and approximately $204 million in assets under management. *Id.* ¶ 13. During the Class Period, Lincoln National Corporation ("Lincoln") served as the Plan's custodian and recordkeeper. *Id.* ¶¶ 16, 19.

## III. LEGAL STANDARD

### A. *Rule 12(b)(1)*

"A district court properly dismisses an action under *Rule 12(b)(1)* for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l, 790 F.3d 411, 416-17 (2d Cir. 2015)* (quoting *Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)*). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova, 201 F.3d at 113* (citing *Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996)*).

"Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both *Rules 12(b)(1)* and *12(b)(6)*, the motion court must address the 12(b)(1) motion first." *Brokamp v. James, 573 F. Supp. 3d 696, 703 (N.D.N.Y. 2021)* (citing *Hartwick v. Annucci, 2020 U.S. Dist. LEXIS 215240, 2020 WL 6781562, at *4 (N.D.N.Y. Nov. 18, 2020)*), *aff'd*, *66 F.4th 374 (2d Cir. 2023)*. Further, a district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction. *Makarova, 201 F.3d at 113*.

### B. *Rule 12(b)(6)*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)*). At the motion to dismiss stage, the Court must "accept all **[*4]** factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *Mayor & City Council of Balt. v. Citigroup, Inc., 709 F.3d 129, 135 (2d Cir. 2013)*. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal, 556 U.S. at 678*.

When ruling on a motion to dismiss under *Rule 12(b)(6)*, the Court may properly consider "documents appended to the complaint or incorporated in the complaint by reference," "matters of which judicial notice may be taken," and documents that, although not incorporated by reference, are "integral" to the complaint. *Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016)*. In the context of ERISA claims, courts "routinely consider employee benefit plan documents to be incorporated by reference into complaints." *Polanco v. WPP Grp. USA, Inc., 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *3 (S.D.N.Y. Oct. 27, 2025)* (collecting cases). Material "integral" to the complaint includes disclosure documents publicly filed by the Plan and its alleged comparators. *See* *Singh v. Deloitte LLP, 123 F.4th 88, 95 (2d Cir. 2024)*.

Evaluating ERISA claims at the motion to dismiss stage requires "particular care . . . to ensure that the complaint alleges *nonconclusory* factual content raising a *plausible* inference of misconduct and does not rely on the vantage point of hindsight." *Sacerdote v. N.Y. Univ., 9 F.4th 95, 107 (2d Cir. 2021)* (quoting *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc. ("PBGC"), 712 F.3d 705, 716 (2d Cir. 2013)*). But as "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail" **[*5]** prior to discovery, a claim under ERISA "may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Id.*

"Because ERISA fiduciaries face 'difficult tradeoffs,' we

---

[2] Plaintiffs define the Class Period as beginning six years before the date of the complaint, which the Court calculates to be January 23, 2019. Compl. ¶ 9 n.2.

'give due regard to the range of reasonable judgments [they] may make based on [their] experience and expertise.'" *Boyette v. Montefiore Med. Ctr., 2025 U.S. App. LEXIS 391, 2025 WL 48108, at *1 (2d Cir. Jan. 8, 2025)* (quoting *Hughes v. Northwestern Univ., 595 U.S. 170, 177, 142 S. Ct. 737, 211 L. Ed. 2d 558 (2022)*) (summary order). "It is not 'necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions.'" *Singh, 123 F.4th at 93* (quoting *PBGC, 712 F.3d at 718*).

**IV. DISCUSSION**

The complaint consists of four counts. First, plaintiffs claim that defendant breached its fiduciary duties by (1) imprudently failing to investigate the availability of alternative share classes; (2) imprudently failing to investigate alternative investment funds; (3) imprudently failing to investigate how it should use forfeited funds; and (4) disloyally utilizing forfeited accounts to lessen its own matching contributions (Count I). Second, plaintiffs allege that defendant breached its duty of prudence by failing to monitor Lincoln's recordkeeping fees, resulting in plaintiffs paying excessive fees (Count II). Third, plaintiffs **[*6]** allege that defendant violated the anti-inurement provision of ERISA (Count III) and engaged in prohibited transactions (Count IV) by using forfeited accounts to lessen its matching contributions.

**A. Standing**

Before turning to the merits of plaintiffs' complaint, the Court must first address defendant's argument that plaintiffs lack standing for certain of their claims.[3] Defendant argues that: (i) plaintiff Kathi Martin lacks standing for all claims because she is not a Plan participant; (ii) plaintiff Maryanne Taverne lacks standing as to the failure to monitor share fund options because she does not allege she invested in such funds; and (iii) all plaintiffs lack standing as to the breach of fiduciary duties claim regarding the Plan's stable fund options because none invested in any of those investment options. Dkt. No. 13-4 ("Def.'s Mot.") at 11-13.[4]

"Article III limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' and by extension requires a plaintiff to satisfy the irreducible constitutional minimum of standing." *Duke v. Luxottica U.S. Holdings Corp., 167 F.4th 16, 26 (2d Cir. 2026)* (quoting *Lujan v. Defs. of Wildlife, 504 U.S. 555, 559-60, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*) (internal quotation marks omitted). "The standing doctrine, which emerges from Article III, is designed 'to ensure that federal courts do not exceed their authority **[*7]** as it has been traditionally understood.'" *SM Kids, LLC v. Google LLC, 963 F.3d 206, 211 (2d Cir. 2020)* (quoting *Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016)*).

The Second Circuit recently clarified that when, as here, plaintiffs are suing on behalf of a proposed class, they must plausibly allege that they have both Article III standing and class standing. *Collins v. Ne. Grocery, Inc., 149 F.4th 163, 170-71 (2d Cir. 2025)*.

For the reasons discussed below, plaintiffs have plausibly alleged that they have individual and class standing as to their claims for (1) breach of fiduciary duty of prudence regarding defendant's alleged failure to investigate the availability of alternative share classes (Count I); (2) breach of duty of prudence claim for failure to monitor excessive recordkeeping fees (Count II); (3) breach of duties of prudence and loyalty as to the use of forfeited funds (Count I); (4) violation of the anti-inurement provision (Count III); and (5) engaging in prohibited transactions (Count IV). However, defendant's motion to dismiss must be granted as to (i) plaintiff Martin because she lacks standing for all claims as a non-Plan participant; and (ii) the failure to investigate alternative funds claim (Count I) for lack of standing as to all plaintiffs.

**1. Individual Standing**

To have individual—or Article III—standing, plaintiffs each must "have (1) suffered an injury **[*8]** in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, 578 U.S. at 338*. Notably, "a plaintiff need not state a meritorious or even

---

[3] Although not expressly framed in those terms, the Court construes defendant's standing arguments as seeking dismissal under *Fed. R. Civ. P. 12(b)(1)*. And whether a defendant raises such arguments or not, "standing is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, [a court] has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction." *Tavarez v. Moo Organic Chocolates, LLC, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022)*.

[4] Pagination corresponds to CM/ECF header.

plausible claim for relief under existing law in order to have standing to pursue a claim." Duke, 167 F.4th at 26.

"ERISA creates a private right of action for plan participants . . . to sue for relief for an alleged ERISA violation." Collins, 149 F.4th at 171. While plaintiffs "allege various ERISA violations[,] . . . [t]his does not necessarily provide constitutional standing." *Id.* (internal quotations and citation omitted). A plaintiff in an ERISA case must have a "concrete stake in [the] suit"—that is, must stand to benefit personally from the litigation—to have standing. Thole v. U. S. Bank N.A, 590 U.S. 538, 543-44, 140 S. Ct. 1615, 207 L. Ed. 2d 85 (2020); Duke, 167 F.4th at 26-27.

Our circuit's precedent "demonstrates that defined contribution plan participants seeking to obtain monetary relief for alleged ERISA violations must allege a non-speculative financial loss actually affecting, or imminently threatening to affect, their individual retirement accounts." Collins, 149 F.4th at 171 (collecting cases). To that end, plaintiffs can either allege that "*all* Plan participants were harmed by [defendant's] purported fiduciary breaches," or, alternatively, **[*9]** that "specific plaintiffs were harmed in a manner that also injured other [P]lan participants." Id. at 172 (emphasis added).

Defendant argues that each plaintiff lacks standing for various reasons. First, defendant contends that Kathi Martin was not a participant in the Plan. Def.'s Mot. at 13 (citing Dkt. No. 13-1 ("Ratcliffe Decl.") ¶ 3). In response, Martin concedes that she was not a participant in the Plan at issue here and, noting that her confusion stemmed from her participation in "a different retirement plan offered by [defendant] with similar investment options," wisely requests to "respectfully withdraw her claims from this action as to herself only." Dkt. No. 14 ("Pls.' Opp.") at 15-16 n.4. Defendant's motion must be, and is, granted as to Martin.[5]

Regarding the remaining plaintiffs, defendant argues that their claims, to the extent that they allege mismanagement of funds they did not invest in, must be dismissed for lack of standing. Def.'s Mot. at 12-13. The Court addresses standing as to each claim in turn.

#### a. Breach of Fiduciary Duties of Prudence and Loyalty

Counts I and II of the complaint encompass several purported breaches of the fiduciary duties of prudence and loyalty. **[*10]** Compl. ¶¶ 63-72. Namely, plaintiffs bring claims for (1) breach of the duty of prudence based on a failure to investigate the availability of alternative share classes (Count I); (2) breach of the duty of prudence based on a failure to investigate the availability of alternative funds (Count I); (3) breach of the duty of prudence based on defendant's failure to monitor indirect recordkeeper costs (Count II); and (4) breach of the duties of prudence and loyalty regarding the utilization of forfeited funds (Count I). The Court will address each alleged breach in turn.

#### (1) Failure to Investigate the Availability of Alternative Share Classes

The complaint asserts that defendant acted imprudently by failing to investigate the availability of lower-cost and equally or better performing share classes. Compl. ¶¶ 24-33. Specifically, plaintiffs allege that although defendant "had access to . . . low-cost institutional share classes," defendant "instead offered higher cost mutual fund share classes," wasting "the assets of the Plan"—participants' retirement dollars. *Id.* ¶ 26.

Plaintiffs point to two funds that defendant allegedly retained despite the availability of other identical and lower-cost **[*11]** share classes: (1) the Harbor Capital Appreciation Fund (hereinafter the "Harbor Fund"); and (2) the John Hancock Disciplined Value Mid Cap Fund (hereinafter the "John Hancock Fund"). *Id.* ¶¶ 27-29.

Upon review, plaintiffs John Gaetano and Bertha Nogas have clearly alleged standing for this claim because they each personally invested in the Harbor Fund and the John Hancock Fund. Compl. ¶¶ 9-10. However, defendant correctly argues that plaintiff Maryanne Taverne lacks standing to assert this claim because, unlike Gaetano and Nogas, she does not allege that she invested in either fund. Def.'s Mot. at 13; Compl. ¶ 12.

Plaintiffs concede this point. Pls.' Opp. at 15-16; *see* Barsoumian v. Williams, 29 F. Supp. 3d 303, 323 (W.D.N.Y. 2014) ("[T]his claim was found to be

[5] Relatedly, plaintiffs "reserve the right to amend their pleading to assert claims on behalf of participants in the [similar] plan, including [p]laintiff Martin." *Id.* Plaintiffs are reminded that once the deadline to amend the complaint as of right has passed, as here, *see* FED. R. CIV. P. 15(a)(1)(A), plaintiffs must either seek defendant's written consent or move the Court for leave to amend. Leave to amend the complaint will be granted "freely . . . when justice so requires." Sacerdote, 9 F.4th at 115 (quoting Fed. R. Civ. P. 15(a)(2)).

abandoned due to Plaintiff's failure to oppose this portion of the motion to dismiss"), *aff'd sub. nom.* Barsoumian v. Univ. at Buffalo, 594 Fed. Appx. 41 (2d Cir. 2015) (summary order). Accordingly, Taverne lacks standing to pursue claims based on failure to investigate alternative share classes of these funds. *See* Collins, 149 F.4th at 172.

**(2) Failure to Investigate Availability of Alternative Funds**

Second, plaintiffs "separately" allege that defendant breached its fiduciary duty of prudence by failing to investigate the availability of lower-cost and better-performing alternative **[*12]** funds. Compl. ¶¶ 30-33. Specifically, plaintiffs contend that defendant selected and retained funds with excessive fees or lower return rates without considering whether the Plan received sufficient benefits to justify the cost of these funds or if other lower-cost funds were available. *Id.* ¶¶ 34-45.

In support of these allegations, plaintiffs rely on two funds that defendant allegedly retained despite the availability of alternative lower-cost or better performing funds: (1) the T. Rowe Price Target Date Mutual Funds (hereinafter the "T. Rowe Mutual Funds");[6] and (2) the Plan's stable value funds (which are not specifically named in the complaint). *Id.* ¶¶ 30-33.

As to the Plan's stable value funds, the complaint alleges that defendant chose to invest in lower-performing funds when "substantially similar products were available in the market that offered a better return," including other options offered by Lincoln. Compl. ¶ 32. Defendant argues that none of the plaintiffs has standing for this claim because they did not invest in any of the Plan's stable fund options. Def.'s Mot. at 13. Plaintiffs respond that the complaint does not separately allege that defendant **[*13]** failed to monitor the stable fund options, and any perceived differentiation is only intended to provide "an illustrative example of [defendant's] . . . deficient fiduciary process." Pls.' Opp. at 16 n.5.

Defendant has the better argument. Whether or not plaintiffs chose to frame their claim as one cause of action or as separate causes of action for each fund, plaintiffs have not plausibly alleged that any of "their benefits were or would imminently be affected by the performance of, or by fees associated with," the Plan's stable fund options. Collins, 149 F.4th at 172; *see also* TransUnion LLC v. Ramirez, 594 U.S. 413, 431, 141 S. Ct. 2190, 210 L. Ed. 2d 568 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]").

Plaintiffs also fail to plausibly allege that defendant's actions related to the stable fund options constitute the sort of "plan-wide mismanagement" that "affected all plan participants, including them." Collins, 149 F.4th at 172. Plaintiffs therefore lack standing to challenge defendant's duty to investigate the Plan's stable fund options.

Turning to the T. Rowe Mutual Funds, the complaint alleges that defendant could have offered participants the less costly, but otherwise identical, T. Rowe Price **[*14]** Retirement Trusts collective trust. Compl. ¶¶ 30-31. Defendant does not argue that plaintiffs lack standing regarding their claim that defendant allegedly breached the duty of prudence in offering the T. Rowe Mutual Funds instead of the related collective trust. But as mentioned *supra*, "standing is a threshold matter of justiciability," so the Court must examine plaintiffs' standing as to each claim, whether or not defendant challenges it. Tavarez, 623 F. Supp. 3d at 370.

As with the stable value funds, plaintiffs clearly lack standing to pursue a claim based on the T. Rowe Mutual Funds for the same reason: plaintiffs do not allege that any of them invested in any version of this fund, or that all Plan participants were harmed by this purported breach. Collins, 149 F.4th at 172. Plaintiffs therefore lack standing as to their breach of duty of prudence claim for failure to investigate the availability of alternative funds.

[6] The parties seem to conflate plaintiffs' duty of prudence claims predicated on the availability of alternate share classes with those based on the availability of alternate funds as they relate to the T. Rowe Mutual Funds. *See* Def.'s Mot. at 7; Pls.' Opp. at 16. Unlike the Harbor Fund and the John Hancock Fund, the complaint does not allege that there was a better *class* of shares available for the T. Rowe Mutual Funds, but rather that a different *form of investment* was available in the collective trust option. Compl. ¶¶ 30-31. The Court therefore considers allegations related to the T. Rowe Mutual Funds as part of the alternative funds allegations. Whether construed as part of their alternative share class or alternative funds claim, plaintiffs lack standing to pursue a breach of duty of prudence claim regarding the T. Rowe Mutual Funds because none of the plaintiffs has alleged they suffered a concrete injury based on a personal investment in such funds.

**(3) Failure to Monitor Recordkeeping Fees**

Plaintiffs next allege that defendant breached its fiduciary duty of prudence by failing to monitor the Plan's recordkeeping fees. Compl. ¶¶ 34-45. Plaintiffs allege that Lincoln, the Plan's custodian and recordkeeper, received excessive compensation from Plan assets and that defendant's **[*15]** failure to recognize this "potential for abuse" caused participants to unnecessarily diminish their retirement savings. *Id.* ¶¶ 43, 45.

Plaintiffs allege that those fees depended not upon the amount of assets in a plan participant's account, but on the number of total participants within the Plan. Under the Plan, "the cost of providing administrative services to a participant with a $100,000 account balance is the same for a participant with a $1,000 account balance." Compl. ¶ 40.

Upon review, plaintiffs have plausibly alleged a concrete injury with respect to their claim for excessive recordkeeping fees. *See, e.g., Collins, 149 F.4th at 172* (affirming plaintiffs had standing to pursue certain excessive fee claims); *Leber v. Citigroup 401(k) Plan Inv. Comm., 323 F.R.D. 145, 156 (S.D.N.Y. 2017)* (finding that plaintiffs personally suffered an injury in fact where plaintiffs alleged that they "personally paid excessive fees"). Accordingly, plaintiffs have Article III standing to pursue their failure to monitor fees claim.

**(4) Improper Use of Forfeited Funds**

Finally, plaintiffs allege that defendant breached its fiduciary duties of loyalty and prudence by using leftover money to reduce its own financial obligations. Compl. ¶¶ 46-55. As plaintiffs explain, employees who do not spend sufficient time in the **[*16]** Plan for defendant's contributions to "vest" forfeit these contributions back to defendant. *Id.* ¶ 47. According to plaintiffs, defendant then applies these forfeited funds to reduce its own future employer contributions rather than to offset the Plan's administrative expenses. *Id.*

Plaintiffs have standing to pursue this claim for the same reason they can pursue their excessive fees claim: all participants pay for the administration of the Plan. Compl. ¶ 54. And plaintiffs allege that from 2019 to 2023, defendant directed substantial funds that could have been used to offset Plan expenses to instead reduce its own matching contributions to the Plan. *Id.* ¶¶ 48-52. This is the sort of alleged "plan-wide mismanagement" that "affected all plan participants, including them." *Collins, 149 F.4th at 172*. Plaintiffs have therefore sufficiently alleged standing to pursue their breach of fiduciary duties claim regarding the forfeitures.

In sum, plaintiffs have standing to assert their breach of fiduciary duty of prudence claim to the extent it is premised on funds that plaintiffs invested in: the John Hancock Fund and the Harbor Fund. In addition, plaintiffs have standing to pursue their duty of prudence and loyalty claims **[*17]** to the extent they sufficiently allege plan-wide mismanagement, namely, as to the excessive recordkeeping fees and improper use of forfeited funds. Otherwise, plaintiffs have not plausibly alleged individual injury, which is fatal to the standing inquiry for the remaining portions of their breach of fiduciary duty claims.

**b. Remaining Claims**

Plaintiffs also assert claims alleging that defendant violated ERISA's anti-inurement provision (Count III) and engaged in a prohibited transaction (Count IV) by applying forfeited funds to reduce its own future employer contributions rather than to offset the Plan's administrative expenses. Compl. ¶¶ 46-55, 73-81.

As with their breach of fiduciary duties claim premised on the same conduct, plaintiffs have plausibly alleged that they suffered an injury regarding defendant's alleged use of forfeited nonvested accounts to reduce employer matching contributions. Plaintiffs' allegations are sufficient, at least for purposes of individual or Article III standing, to support a plausible inference that defendant's challenged conduct amounted to plan-wide mismanagement that caused every plan participant to suffer a financial loss.

Thus, plaintiffs have plausibly alleged **[*18]** an injury to their individual accounts due to the challenged conduct. As a result, plaintiffs have individual standing for their claims that defendant violated the anti-inurement provision and engaged in a prohibited transaction.

**2. Class Standing**

"[T]o establish 'class standing,' a showing of individual injury is required." *Collins, 149 F.4th at 174*. While "members of a defined contribution plan who chose certain investment options may in certain circumstances bring claims on behalf of other participants that chose entirely different investment options," in such circumstances, plaintiffs "may only challenge, on behalf

of the class, [d]efendants' general practices which affect *all* participants . . . or [d]efendants' practices that are sufficiently similar to the practices causing, or imminently threatening to cause, harm to [p]laintiffs' individual retirement benefits." *Id.* (emphasis in original).

Therefore, our circuit's standard for class standing permits plaintiffs to "bring claims on behalf of absent class members only if they plausibly alleged (1) that they personally have suffered some actual injury as a result of the purportedly illegal conduct of the defendant, and (2) that such conduct implicates the **[*19]** same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Collins, 149 F.4th at 174* (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.("NECA"), 693 F.3d 145, 162 (2d Cir. 2012)*) (cleaned up).

To "implicate the same set of concerns," a named plaintiff's injury must not "have the potential to be very different" or be likely to "turn on very different proof" from the injuries of absent class members. *Id. at 175* (quoting *NECA, 693 F.3d at 162-63*). Additionally, ERISA plaintiffs may not assert that they have standing as representatives of a plan in lieu of traditional Article III standing. *Id. at 175-76* (citing *Thole, 590 U.S. at 543*).

After considering the allegations in the complaint, each of the claims for which plaintiffs have shown individual or Article III standing are sufficiently alleged to establish class standing as well. Plaintiffs' incentives are aligned with those of the absent class members because they each allege they personally lost a portion of their retirement savings due to defendant's challenged conduct. *See* Compl. ¶¶ 9, 10, 12.

Thus, plaintiffs may assert claims on behalf of themselves and the putative class for (1) breach of the duty of prudence regarding defendant's failure to investigate the availability of alternative share classes (Count I); (2) breach of the duty of prudence based on defendant's **[*20]** failure to monitor recordkeeping costs (Count II); (3) breach of the duties of prudence and loyalty regarding the utilization of forfeited funds (Count I); (4) defendant's violation of the ERISA anti-inurement provision (Count III); and (5) defendant's engagement in a prohibited transaction by misusing forfeited funds (Count IV).

### B. Failure to State a Claim

Defendant also seeks dismissal of plaintiffs' claims under *Rule 12(b)(6)* for failure to state a claim. *See* Def.'s Mot. at 14-27. As detailed *supra*, after conducting a review of this Court's subject matter jurisdiction, plaintiffs' remaining claims are for breach of the fiduciary duty of prudence (Counts I and II), violation of the fiduciary duty of loyalty (Count I), violation of the anti-inurement provision (Count III), and engaging in a prohibited transaction (Count IV). Compl. ¶¶ 63-81. The Court will first address the merits of plaintiffs' share class and excessive fee claims before turning to the claims that relate to defendant's use of forfeited funds.

#### 1. Breach of Fiduciary Duty of Prudence

ERISA imposes a duty of prudence upon plan fiduciaries, directing them to make reasonable investment and managerial decisions "with the care, skill, prudence, **[*21]** and diligence under the circumstances then prevailing" that a prudent man acting in a like capacity and familiar with such matters would use. *Singh v. Deloitte LLP, 650 F. Supp. 3d 259, 266 (S.D.N.Y. 2023)* (quoting *29 U.S.C. § 1104(a)(1)(B)*), *aff'd*, *123 F.4th 88 (2d Cir. 2024)*. To state a claim for breach of fiduciary duty under ERISA, the plaintiffs must allege that "(1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty." *Id. at 265-66*.

Defendant does not dispute that it was a fiduciary acting in its fiduciary capacity when it engaged in the challenged conduct. *See* Def.'s Mot. at 6, 19-20. The only element contested by defendant is the question of breach. Plan fiduciaries "normally ha[ve] a continuing duty . . . to monitor investments and remove imprudent ones," which includes "systematically consider[ing] all the investments . . . at regular intervals to ensure that they are appropriate." *Tibble v. Edison Int'l, 575 U.S. 523, 529, 135 S. Ct. 1823, 191 L. Ed. 2d 795 (2015)* (cleaned up).

In order to plausibly raise an inference that the plan fiduciary acted imprudently, a plaintiff must "alleg[e] facts that, if true, would demonstrate that 'an adequate investigation would have revealed to a reasonable fiduciary that [an] investment at issue was improvident' or 'that a superior alternative investment was readily apparent such that an **[*22]** adequate investigation would have uncovered that alternative.'" *Collins v. Northeast Grocery, Inc., 2025 U.S. App. LEXIS 20979, 2025 WL 2383710, at *2 (2d Cir. Aug. 18, 2025)* (quoting *PBGC, 712 F.3d at 718-19*) (summary order).

That said, plaintiffs may not rely on "after-the-fact allegations that . . . a better alternative was available at the time of the challenged decisions." *2025 U.S. App. LEXIS 20979, [WL] at *2*. And "while 'there is no doubt a claim for breach of ERISA's duty of prudence can be based on allegations that the fees associated with [a] defined-contribution plan are too high compared to available, cheaper options,' plaintiff[s] must allege a 'meaningful benchmark' to raise [an] inference of imprudence." *Singh, 123 F.4th at 95* (quoting *Matney v. Barrick Gold of N. Am., 80 F.4th 1136, 1148 (10th Cir. 2023)*).

**a. Failure to Investigate the Availability of Alternative Share Classes**

As discussed *supra*, plaintiffs argue that defendant breached its fiduciary duty of prudence by failing to investigate the availability of lower-cost and equally or better performing share classes. Compl. ¶¶ 24-29. Specifically, plaintiffs allege that although defendant "had access to . . . low-cost institutional share classes," defendant "instead offered higher cost mutual fund share classes," wasting "the assets of the Plan." *Id.* ¶ 26. Plaintiffs allege that defendant retained more expensive share classes of the Harbor Fund and the John Hancock Fund despite **[*23]** the availability of other identical and lower-cost share classes. *Id.* ¶¶ 27-29.

Defendant argues that plaintiffs "assert no factual allegations concerning the process that MVHS allegedly used (or did not use) to monitor the Plan's investments, let alone how the process was flawed," and that the complaint "contains no factual allegations that the Plan qualified for the lower-class shares of the classes of the two identified funds." Def.'s Mot. at 14-15.

This argument must be rejected. Plaintiffs cannot, and are not required to, know defendant's process for selecting certain share classes without the benefit of discovery, which is precisely why a claim under ERISA "may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Sacerdote, 9 F.4th at 107*.

That said, in order to reach discovery, plaintiffs first must plead such "circumstantial factual allegations." *Id. at 107*. Plaintiffs have failed to do so here, and their assertion that the complaint's allegations are "analogous" to those in *Sacerdote* is unpersuasive. Pls.' Opp. at 17. In *Sacerdote*, the plaintiffs alleged that "63 of the funds included in the 103-fund and 84-fund Plans charged **[*24]** excessive . . . fees, each of which plaintiffs set forth with specificity." *Sacerdote, 9 F.4th at 109*.

Plaintiffs have not done that. Instead, plaintiffs have alleged that defendants allegedly acted imprudently with regard to share class selection of two funds, and have failed to even allege how many total fund options were included in the Plan during the Class Period. *See* Compl. ¶¶ 13-16, 23-55. Plaintiffs' allegations are therefore too conclusory for the Court to infer that defendant acted imprudently with regard to the selection of share classes. Thus, plaintiffs have failed to plausibly allege a breach of duty of prudence claim for failure to investigate alternative share classes.

**b. Failure to Monitor Recordkeeping Fees**

Plaintiffs next allege that defendant breached its duty of prudence by failing to monitor the Plan's recordkeeping fees. Compl. ¶¶ 34-45. In particular, plaintiffs allege that Lincoln's compensation as the recordkeeper was unreasonable and excessive for the services provided. In support of this claim, plaintiffs assert that the compensation provided to Lincoln, as compared to "several different high-quality, national recordkeepers" for other "similarly sized defined contribution plans," was **[*25]** significantly higher. *Id.* ¶ 44. Plaintiffs allege that the services provided to these other plans and the Plan at issue here were "materially identical." *Id.*

"To state an imprudence claim arising out of excessive fees, [p]laintiffs ha[ve] to allege that the 'challenged fees were excessive relative to the services rendered' or otherwise allege 'factors relevant to determining whether a fee is excessive under the circumstances.'" *Collins, 2025 U.S. App. LEXIS 20979, 2025 WL 2383710, at *3* (quoting *Singh, 123 F.4th at 93-94*).

Plaintiffs have not done so here. The complaint alleges no facts, let alone any "meaningful benchmark[s]," to support the inference that recordkeeping services provided by Lincoln's many alleged comparators were "materially identical" to the services provided by Lincoln as plaintiffs allege. *Singh, 123 F.4th at 95* (internal quotations omitted); *see* Compl. ¶ 44.

Indeed, despite the complaint's nine pages of tables showing that alleged comparator plans paid less for their recordkeeping services during the Class Period,

*see* Compl. at 20-28, the complaint is devoid of any factual allegations regarding the services the other recordkeepers provided to the allegedly similar-sized plans. Compl. ¶¶ 34-45, 69-72. "Plaintiffs cannot rely, as they in effect do here, on bare allegations **[*26]** that other plans paid lower fees." *Collins, 2025 U.S. App. LEXIS 20979, 2025 WL 2383710, at *3* (citing *Singh, 123 F.4th at 95-96*). Thus, defendant's motion to dismiss must be granted as to plaintiffs' claim for breach of the fiduciary duty of prudence.

**2. Forfeiture Claims**

Plaintiffs' remaining claims for breach of fiduciary duties, violation of ERISA's anti-inurement provision, and engaging in a prohibited transaction are all premised on the same underlying conduct: defendant's use of nonvested, forfeited funds to decrease its own employer contributions rather than to defray Plan expenses. *See* Compl. ¶¶ 46-55, 66-68, 73-81.

Plaintiffs allege that, under the Plan, participants are "immediately vested in their own contributions, along with any income or losses on those balances. [Defendant's] matching contributions, plus any income or losses on those balances, become vested over a period of years depending on when the participant was hired." Compl. ¶ 46. But when a participant has a "break in service" before defendant's contributions have vested, "the participant forfeits the balance of unvested matching contributions . . . and [d]efendant exercises discretionary authority and control over how these Plan assets are thereafter reallocated." *Id.* ¶ 47.

Plaintiffs acknowledge **[*27]** that the terms of the Plan provide that "forfeited nonvested accounts may be used to pay Plan administrative expenses *or* reduce future matching contributions." Compl. ¶ 47 (emphasis added); *see* Dkt. No. 13-2 ("Plan") § 7.13. Even so, plaintiffs assert that defendant violated its fiduciary duties of prudence and loyalty and provisions of ERISA by "reallocating nearly all of these Plan assets to reduce future matching contributions to the Plan." Compl. ¶ 47.

Defendant correctly states that this is a novel legal issue which has not yet been examined by this Court or the Second Circuit. Def.'s Mot. at 24. And "no Circuit Court of Appeals has yet ruled on the issue," *Heet v. Nat'l Med. Care, Inc., __ F. Supp. 3d __, 2026 U.S. Dist. LEXIS 26516, 2026 WL 353317, at *2 (D. Mass. Feb. 9, 2026)*, though appeals are currently pending before several circuit courts. *2026 U.S. Dist. LEXIS 26516, [WL] at *5*; *see, e.g., Hutchins v. HP Inc. ("Hutchins I"), 737 F. Supp. 3d 851, 862-64 (N.D. Cal. 2024) and Hutchins v. HP Inc. ("Hutchins II"), 767 F. Supp. 3d 912, 924-27 (N.D. Cal. 2025)*, *appeal docketed*, No. 25-826 (9th Cir. Feb. 6, 2025); *Jacob v. RTX Corp., __ F. Supp. 3d __, 2026 U.S. Dist. LEXIS 12172, 2026 WL 173228, at *8 (E.D. Va. Jan. 22, 2026)*, *appeal docketed*, No. 26-1127 (4th Cir. Feb. 3, 2026).

District courts nationwide have reviewed this issue and reached mixed conclusions. *See McManus v. Clorox Co., 2025 U.S. Dist. LEXIS 43765, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025)* (noting that this is a novel ERISA interpretation with no binding authority over which "[r]easonable minds can differ, and several district courts do"). Based on this Court's research, there appears to be only one in-circuit decision, *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *1*, discussing the issue thus far.

Defendant argues **[*28]** that the Court should follow what appears to be the majority approach by dismissing plaintiffs' forfeiture claims because (1) the use of forfeitures satisfied ERISA's fiduciary mandates; (2) plaintiffs impermissibly seek to create a new benefit, not remedy the breach of an existing duty; and (3) these claims contravene established law.

For the reasons discussed below—including several of the same reasons discussed in *Polanco*—the Court agrees with defendant. Plaintiffs have failed to state a claim under each of their three theories premised on defendant's allegedly improper use of forfeitures, and this claim or these claims must be dismissed.

**a. Breach of Fiduciary Duties**

First, plaintiffs allege that defendant's decision to use forfeitures to decrease employer contributions breached its fiduciary duties because defendant "failed to undertake any investigation into which option was in the best interest of the Plan's participants" and that "[i]n making these decisions, [d]efendant is presented with a conflict of interest that pits its interests over the participants' interests." Compl. ¶ 54. The Court will first address plaintiffs' duty of loyalty claim, followed by their duty of prudence **[*29]** claim.

**(1) Duty of Loyalty**

The duty of loyalty "requires plan fiduciaries to act 'solely in the interest of the [plan's] participants and

beneficiaries.'" *Cunningham v. Cornell Univ., 604 U.S. 693, 696, 145 S. Ct. 1020, 221 L. Ed. 2d 591 (2025)* (quoting *§ 1104(a)(1)(A)*). "Among other things, the duty of loyalty requires the fiduciary to deal fairly and honestly with beneficiaries, . . . so as to ensure that a plan receives all funds to which it is entitled." *Id.* (internal quotations and citations omitted).

"To plausibly plead a duty of loyalty claim under ERISA, a plaintiff must allege facts showing that the fiduciary in question acted purposely—or with the goal—of providing benefits to itself or someone else." *Carlisle v. Bd. of Trs. of the Am. Fed'n of the N.Y. State Teamsters Conf. Pension & Ret. Fund, 2025 U.S. Dist. LEXIS 22163, 2025 WL 438123, at *20 (N.D.N.Y. Feb. 7, 2025)* (cleaned up), *aff'd*, *2025 U.S. App. LEXIS 30499, 2025 WL 3251154 (2d Cir. Nov. 21, 2025)* (summary order).

First, defendant argues that it did not violate ERISA because the Plan "explicitly authorizes MVHS to use forfeitures to offset employer contributions." Def.'s Mot. at 19. But this alone is not determinative. *See* *Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 421, 134 S. Ct. 2459, 189 L. Ed. 2d 457 (2014)* (holding that ERISA's fiduciary duties "trump[ ] the instructions of a plan document").

To the contrary, and as plaintiffs assert, "plan terms do not excuse fiduciary misconduct." Pls.' Opp. at 26. Nevertheless, "most courts have rejected duty of loyalty claims concerning forfeitures, reasoning that '[w]hen (1) a plan document gives **[*30]** a plan fiduciary discretion in how to use forfeitures and (2) participants otherwise receive everything guaranteed by the plan's terms, plan fiduciaries do not violate their duty of loyalty merely by declining to use forfeitures to cover administrative expenses.'" *Tillery v. WakeMed Health & Hosps., __ F. Supp. 3d __, 2026 U.S. Dist. LEXIS 36193, 2026 WL 125784, at *4 (E.D.N.C. Jan. 15, 2026)* (quoting *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *4* and collecting cases).

So too here. Plaintiffs have failed to plausibly allege that defendant breached its duty of loyalty based on the forfeiture allegations in the complaint. First, plaintiffs have not alleged that they received anything less than what the Plan promised. *See Hutchins II, 767 F. Supp. 3d at 925* ("[W]here the terms of an ERISA plan comply with the law, the plan fiduciary is not authorized to provide Plan participants with *more* benefits than the Plan documents set out.") (citations omitted); *Faber v. Metro. Life Ins. Co., 2009 U.S. Dist. LEXIS 98775, 2009 WL 3415369, at *7 (S.D.N.Y. Oct. 23, 2009)* ("[W]here a fiduciary complies with a plan's lawful terms and provides the beneficiaries the benefits they were due under the plan, there is no violation of *§ 1104(a)*'s 'exclusive purpose' requirement."), *aff'd*, *648 F.3d 98 (2d Cir. 2011)*.

In reaching that conclusion, the Court agrees with defendant that "ERISA is not intended to create benefits; rather, it protects the benefits that are due to an employee under a plan." Def.'s Mot. at 20 (citing *Lockheed Corp. v. Spink, 517 U.S. 882, 887, 116 S. Ct. 1783, 135 L. Ed. 2d 153 (1996)*). Indeed, "[n]othing in ERISA **[*31]** requires employers to establish employee benefits plans. Nor does ERISA mandate what kinds of benefits employers must provide if they choose to have such a plan." *Spink, 517 U.S. at 887*. "ERISA does, however, seek to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Id.*

Plaintiffs have not alleged that the Plan's terms limit when and how defendant chooses to allocate nonvested forfeitures; to the contrary, plaintiffs acknowledge that defendant explicitly maintains "discretionary authority and control" over how forfeitures are "reallocated," whether to Plan expenses or employer contributions. Compl. ¶ 47; *see* Plan § 7.13. Thus, plaintiffs' argument that defendant failed to "protect the benefits that are due to an employee under a plan" is plainly incorrect. Pls.' Opp. at 26.

Not only does the Plan provide that defendant can choose whether to use forfeited funds for Plan expenses or employer contributions, but neither the Plan nor the Adoption Agreement dictates an order of priority for the use of such funds. *See* Plan §§ 7.12, 7.13; Dkt. No. 13-3 ("Adoption Agreement") § 8-6. Therefore, accepting plaintiffs' theory would effectively create an additional **[*32]** benefit—payment of plaintiffs' administrative costs—not contemplated by the Plan.

Moreover, plaintiffs mistakenly "assume[ ] that Plan participants would have received greater benefits if [defendant] had used [f]orfeitures to cover administrative expenses instead of future employer contributions." *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *4*. Under the terms of the Adoption Agreement, which "contains the elective provisions that an Employer may complete to supplement or modify the provisions under the Plan," Plan § 1.05, defendant is "authorized to make Employer Contributions under the Plan." Adoption Agreement § 6-1.

That said, the next section notes that defendant is not

*required* to make such contributions. Adoption Agreement § 6-2 ("The Employer will determine in its sole discretion how much, *if any*, it will make as an Employer Contribution.") (emphasis added). Therefore, "[b]ecause [defendant] was not required to pay employer contributions, every forfeited dollar allocated toward future employer contributions was a dollar Plan participants would not otherwise have in their accounts." *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *4*. So plaintiffs did benefit via the elective employer contributions, and instead "essentially claim that they would have preferred to have [f]orfeitures **[*33]** used to pay administrative expenses *as well as* employer contributions." *Id.* (emphasis in original).

Plaintiffs are correct that defendant *could* have used forfeitures to defray Plan costs and still have made elective employer contributions, but "the Plan document does not guarantee participants that benefit," *id.*, and, as stated above, ERISA solely protects the benefits that are due to an employee under a plan. *See Faber, 2009 U.S. Dist. LEXIS 98775, 2009 WL 3415369, at *7*.

Plaintiffs cite several cases in their opposition denying motions to dismiss these types of forfeiture claims. *See* Pls.' Opp. at 23-27. The Court has considered these, along with more recent decisions holding similarly (which have emerged as the minority approach to this issue among district courts), and finds them to be distinguishable from this case.

First, plaintiffs rely on *Rodriguez v. Intuit Inc., 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024)*. But *Rodriguez* is plainly distinguishable. The plaintiffs there alleged that the defendant company made certain decisions that were not authorized by its ERISA plan documents, thereby *violating* the plan terms. *744 F. Supp. 3d at 944-45*. Here, by contrast, plaintiffs do not allege any such violation; the Plan terms explicitly permit defendant to use forfeitures to offset employer contributions in its discretion. Compl. ¶ 47.

Plaintiffs **[*34]** also point to *Perez-Cruet v. Qualcomm Inc.* to argue that defendant improperly put its own interests above Plan participants. *2024 U.S. Dist. LEXIS 93522, 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024)*, *reconsideration denied*, *2024 U.S. Dist. LEXIS 143199, 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024)*. The Court agrees with the *Hutchins* court that *Perez-Cruet* is unpersuasive because the analysis in that case was "conclusory and [did] not directly address many of the points made by Defendants in the motion to dismiss." *Hutchins I, 737 F. Supp. 3d at 862 n.1* (citing *Perez-Cruet, 2024 U.S. Dist. LEXIS 93522, 2024 WL 2702207, at *2-3*). The court in *Perez-Cruet* simply reasoned that plaintiffs stated a claim based on "[b]ack-of-the-envelope math" which revealed that if the defendants had used the forfeited amounts from a certain year towards expenses, the participants would not have incurred any charge for plan administration that year. *2024 U.S. Dist. LEXIS 93522, 2024 WL 2702207, at *2*. As discussed, just because an employer *can* use forfeitures to pay for expenses does not mean it *must*—that would give participants an additional benefit not proscribed by the Plan.

Additionally, plaintiffs cite *McManus*, which is also distinguishable. There, the court found allegations that the defendants, "after giving themselves discretion to do so as fiduciaries, used Plan assets to reduce Clorox's non-elective contributions to the Plan instead of reducing Plan participants' administrative costs," were sufficient to state a claim for **[*35]** breach of the duty of loyalty. *2025 U.S. Dist. LEXIS 43765, 2025 WL 732087, at *3*. In finding this claim plausible, the *McManus* court reasoned that the plaintiff's "argument that defendants were motivated solely by self-interest . . . is plausible given that no other justification is readily apparent." *2025 U.S. Dist. LEXIS 43765, [WL] at *4*. But the existence of a possible conflict of interest does not automatically amount to a breach of ERISA's fiduciary duty of loyalty. *See Hutchins II, 767 F. Supp. 3d at 924*; *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *7*.[7]

Lastly, defendant argues—and the Court agrees—that a ruling in plaintiffs' favor would contravene a U.S. Treasury Department regulation. *See* Def.'s Mot. at 24-26 (citing *Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282, 12283 (proposed Feb. 27, 2023)* (to be codified at 26 C.F.R. pt. 1)). Although the Treasury regulation to which defendant points does not "foreclose[ ] [plaintiffs'] theory as a matter of law," *Hutchins I, 737 F. Supp. 3d at 859*, such regulations have been set forth by many similarly situated

[7] As noted by the *Polanco* court, *McManus* is distinguishable for the additional reason that, in that Plan, the defendant was required to make non-elective contributions, so participants would have still been entitled to such contributions even if the defendant *had* used forfeitures to defray Plan expenses. *2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *7*. But here, as in *Polanco*, if defendant had used forfeitures to cover administrative expenses, it "would have been under no obligation to make employer contributions as well." *Id.*

defendants and widely found to be persuasive by other courts. *See id. at 863-64* (rejecting plaintiffs' argument "that the general fiduciary duty provision of ERISA abrogates these long-settled rules regarding the use of forfeitures in defined contribution plans" because plaintiffs pointed to no "intervening changes in the law or any particularized facts justifying departure from . . . settled rules"); *see also Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *4-6*; *Middleton v. Amentum Parent Holdings, LLC, 2025 U.S. Dist. LEXIS 150274, 2025 WL 2229959, at *15 (D. Kan. Aug. 5, 2025)*.

**(2) [*36] Duty of Prudence**

Having dismissed the loyalty claim, the Court now turns to the breach of duty of prudence claim. As discussed in detail *supra* regarding the merits of plaintiffs' other duty of prudence claims, the duty of prudence directs fiduciaries to make reasonable investment and managerial decisions "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a prudent man acting in a like capacity and familiar with such matters would use. *Singh, 650 F. Supp. 3d at 266* (quoting *29 U.S.C. § 1104(a)(1)(B)*).

As in *Hutchins I* and *Hutchins II*, the allegations regarding defendant's imprudence in the complaint are overbroad. *737 F. Supp. 3d at 862*; *767 F. Supp. 3d at 926-27*. Plaintiffs' claim that defendant breached its fiduciary duties by choosing to allocate forfeitures to employer contributions rather than Plan expenses, if accepted by the Court, would essentially boil down to one conclusion: "if given the option between using forfeited funds to pay administrative costs or to reduce employer contributions, a fiduciary is *always* required to choose to pay administrative costs" regardless of "any particular circumstances that may be present" in the case. *Hutchins I, 737 F. Supp. 3d at 862*. Such a rule would "fl[y] in the face of decades of ERISA practice." *Hutchins II, 767 F. Supp. 3d at 927*.

The trial court's analysis in **[*37]** *Heet v. Nat'l Med. Care, Inc. provides a useful foil, 2026 U.S. Dist. LEXIS 26516, 2026 WL 353317, at *2*. There, the court denied a motion to dismiss a similar set of forfeiture claims. In doing so, the court found that the allegations appropriately cabined the breadth of the plaintiffs' claims to fit the circumstances, such that they comported with *Hutchins I* and *Hutchins II*. *Id.* Additionally, the court noted that the complaint alleged sufficient facts to support an inference that defendants failed to properly investigate as a prudent fiduciary would have done, including, *inter alia*, "whether there was a risk that it would default on its Plan matching contributions if forfeitures were used to pay Plan administrative expenses." *2026 U.S. Dist. LEXIS 26516, [WL] at *7*.

Here, plaintiffs do not plead, as they must, details supporting an inference that defendant failed to conduct an adequate inquiry. *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *8* ("There must be specific facts alleged that invite the inference that the fiduciary actually engaged in imprudent conduct.") (quoting *Hutchins II, 767 F. Supp. 3d at 927*). In this case, plaintiffs do not allege that they did not receive the benefits to which they were entitled under the Plan. Thus, plaintiffs fail to plausibly allege that a "proper" investigation would have led to a different outcome. Accordingly, plaintiffs' claim for breach of the fiduciary duty **[*38]** of prudence based on the forfeitures must be dismissed.

**b. Prohibited Transactions**

Plaintiffs next allege that defendant violated *Section 1106 of ERISA* by using forfeited funds to decrease its own employer contributions during the Class Period instead of defraying Plan expenses. Defendant argues plaintiffs have not adequately alleged a prohibited transaction claim because (1) their allegations are purposely vague and (2) the conduct at issue does not constitute a "transaction." Def.'s Mot. at 22-23.

*Section 1106 of ERISA* protects beneficiaries against "transactions tainted by a conflict of interest and thus highly susceptible to self-dealing." *Lowen v. Tower Asset Mgmt., Inc., 829 F.2d 1209, 1213 (2d Cir. 1987)*. *Section 1106* "supplements" the duty of loyalty by "categorically barring" self-dealing transactions between an ERISA plan and a fiduciary. *Cunningham, 604 U.S. at 697*. "To state a claim under *§ 1106(a)* or *(b)*, a plaintiff must allege a transaction within the meaning of those provisions." *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *9* (internal citation omitted).

The Supreme Court has held that the payment of benefits is not a "transaction" within the meaning of the "prohibited transactions" provision. *See Spink, 517 U.S. at 892-93*. The types of transactions enumerated in *§ 1106(a)(1)* "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at **[*39]** arm's

length." *Id. at 893*. Additionally, the Court emphasized that these transactions "involve uses of plan assets that are potentially harmful to the plan." *Id.* "The payment of benefits conditioned on performance by plan participants cannot reasonably be said to share that characteristic." *Id.*

Measured against this general body of law, plaintiffs have failed to adequately state a claim under *Section 1106* because the conduct at issue here, *i.e.*, using forfeitures to decrease employer contributions, does not constitute a "transaction" within the meaning of either of those provisions. Plaintiffs' argument that *Spink* does not apply is unfounded. *See* *Polanco, 2025 U.S. Dist. LEXIS 210810, 2025 WL 3003060, at *10* (noting that "numerous courts agree" that *Spink* applies "with equal force to *Section 1106(b)(1)*, given the Supreme Court 'has interpreted *§ 1106* to prohibit fiduciaries from involving the plan and its assets in certain kinds of business deals'" and collecting cases) (quoting *Wright v. Oregon Metallurgical Corp., 360 F.3d 1090, 1100 (9th Cir. 2004)*).

Plaintiffs have not adequately pleaded a prohibited transaction within the meaning of *§ 1106(a)* or *(b)*. Accordingly, this claim must be dismissed.

**c. Violation of Anti-Inurement Provision**

Plaintiffs' final claim asserts that defendant violated ERISA's anti-inurement provision, *29 U.S.C. § 1103(c)(1)*, which provides that "the assets of a plan shall never inure **[*40]** to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." *29 U.S.C. § 1103(c)(1)*.

Defendant argues that plaintiffs fail to state a claim because (1) there are no allegations of removal or diversion of assets from the Plans, and in fact, plaintiffs admit that the assets remain in the plan, and (2) even if reducing employer contribution costs provided an "incidental" benefit to defendant, it did not violate ERISA's anti-inurement provision. Def.'s Mot. at 21-22.

"Although there is 'scant caselaw discussing the precise elements of a *prima facie* claim of violation of ERISA's anti-inurement provision,' the Second Circuit has held that allegations of 'indirect' benefits inuring to an employer are insufficient to state an anti-inurement claim under *Section 403(c)(1)*." *Krohnengold v. New York Life Ins. Co., 2022 U.S. Dist. LEXIS 143029, 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022)* (quoting *Walsh v. Satori Grp., Inc., 2021 U.S. Dist. LEXIS 97585, 2021 WL 2072237, at *4 (E.D. Pa. May 24, 2021)* and citing *Flanigan v. Gen. Elec. Co., 242 F.3d 78, 88 (2d Cir. 2001)*). "When a plaintiff does not allege that the defendant used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, the defendant could not have violated the anti-inurement provision." *Tillery, 2026 U.S. Dist. LEXIS 36193, 2026 WL 125784, at *7* (quoting *Barragan v. Honeywell Int'l Inc., 2024 U.S. Dist. LEXIS 230056, 2024 WL 5165330, at *5-6 (D.N.J. Dec. 19, 2024)*)

Plaintiffs argue that whether forfeitures are removed from **[*41]** or reallocated within the Plan "is a distinction without a difference." Pls.' Opp. at 27. But that argument is without merit. Plaintiffs do not allege that any of the forfeited assets at issue ever left the Plan, Compl. ¶¶ 53, 75, or that defendant used Plan assets "for a purpose other than to pay its obligations to the Plan's beneficiaries." *Hughes Aircraft Co. v. Jacobson, 525 U.S. 432, 442-43, 119 S. Ct. 755, 142 L. Ed. 2d 881 (1999)*.

Moreover, using forfeitures to pay plan participants benefits participants. When defendant reallocates nonvested forfeited assets to participants' accounts via its discretionary contributions, the participants' accounts increase—a clear benefit. "Although defendants also benefit from the use of forfeitures to reduce employer contributions, such allegations of 'indirect' benefits to an employer are 'insufficient to state a claim under the anti-inurement provision.'" *Jacob, 2026 U.S. Dist. LEXIS 12172, 2026 WL 173228, at *8* (quoting *Hutchins II, 767 F. Supp. at 924*).

Thus, plaintiffs have failed to plausibly allege a claim for violation of the anti-inurement provision, and this claim must be dismissed.

**V. CONCLUSION**

For the foregoing reasons, plaintiffs lack standing to pursue certain of their claims, and the claims for which they do have standing are insufficiently pleaded to withstand a motion to dismiss.

Therefore, it is

**ORDERED** that **[*42]**

1. Defendant's motion to dismiss (Dkt. No. 13) is

**GRANTED**;

2. Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED**.

The Clerk of the Court is directed to terminate the pending motion (Dkt. No. 13), enter a judgment accordingly, and close the case.

**IT IS SO ORDERED**.

Dated: March 27, 2026

Utica, New York.

/s/ Anthony J. Brindisi

Anthony J. Brindisi

U.S. District Judge

---

**End of Document**