UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: UnitedHealth ERISA 401(k)
Litigation

File No. 25-cv-1751 (ECT/ECW)

**OPINION AND ORDER**

Paul M. Secunda, Walcheske & Luzi LLC, Brookfield, WI; and Amy R. Mason, Cummins & Bonestroo, Bayport, MN, for Plaintiffs Theresa M. Kotalik and Debra A. Wisner.

Paul M. Secunda, Walcheske & Luzi LLC, Brookfield, WI; Charles R. Toomajian, III, and June Pineda Hoidal, Zimmerman Reed LLP, Minneapolis, MN; and Gerald D. Wells, III, and Stephen E. Connolly, Lynch Carpenter, LLP, Philadelphia, PA, for Plaintiff Holly Hendrickson.

Nicholas Pappas, Dorsey & Whitney LLP, New York, NY; and Andrew J. Holly, Brock Huebner, and Alan J. Iverson, Dorsey & Whitney LLP, Minneapolis, MN, for Defendants UnitedHealth Group Incorporated and Administrative Committee for the UnitedHealth Group 401(k) Savings Plan.

This ERISA case concerns the use of "forfeited funds" in the UnitedHealth Group 401(k) Savings Plan. The short story is this: From 2019 through 2023, Plan participants whose UnitedHealth employment ended before they completed two years of service forfeited matching and profit-sharing contributions UnitedHealth made to their accounts during that less-than-two-year period. The Plan gave discretion to its administrator, the UnitedHealth Group Employee Benefits Plans Administrative Committee, to use these forfeited amounts to reduce UnitedHealth's contributions or to pay Plan administrative expenses. In each of the at-issue years—2019 through 2023—the Committee chose to use forfeited amounts to reduce UnitedHealth's contributions. In this case, three current or

former Plan participants claim that the decisions to use forfeited amounts for this purpose injured the Plan and breached duties imposed by ERISA.

UnitedHealth and the Committee seek the case's dismissal. Their primary contention is jurisdictional: They argue Plaintiffs do not allege facts plausibly showing that the Plan suffered a redressable injury. As a fallback, UnitedHealth and the Committee challenge Plaintiffs' ERISA claims on their merits.

The result is mixed. There is no Article III problem. Plaintiffs plausibly allege the Plan suffered an economic injury in the form of a loss of Plan benefits. Regarding the merits, Plaintiffs plausibly allege claims for breach of the duties of prudence and loyalty, and they plausibly allege a derivative failure-to-monitor claim. However, Plaintiffs' claims under ERISA's anti-inurement and prohibited-transaction provisions are not plausibly alleged, and these claims will be dismissed.

I

The relevant facts are straightforward, but before turning to them, introductory clarifications are in order. As will be explained, Defendants advance a "facial" attack on subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The standards governing this type of jurisdictional challenge are the same standards governing a motion to dismiss under Rule 12(b)(6). *See Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citation modified). For these reasons, the facts are drawn entirely from the Consolidated Amended Class Action Complaint [ECF No. 29] and documents embraced by it. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). For efficiency's sake, the Consolidated

Amended Class Action Complaint will be referred to as the "Complaint" and cited in abbreviated form as "Compl."  Page citations are to pagination assigned by the court's CM/ECF system appearing in a document's upper-right corner, not to a document's original pagination.

The Plan is a "defined contribution plan," Compl. ¶ 54, meaning "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015); *see* 29 U.S.C. § 1002(34). UnitedHealth is the Plan sponsor.  Compl. ¶ 25.  It appointed the Committee to serve as Plan administrator.  *Id.* ¶ 29.  And it delegated authority to its Executive Vice President "to determine the number of members on . . . [the] Committee, and to appoint and remove those Committee members."  *Id.* ¶ 26.

Participation in the Plan is voluntary, though eligible UnitedHealth employees "are automatically enrolled in the Plan at a pretax contribution rate of 3%."  *Id.* ¶ 58.  Plan participants are "fully vested in their contributions at all times."  *Id.*  UnitedHealth contributes through required matching contributions and discretionary profit-sharing contributions.  *Id.* ¶ 52; *see id.* ¶¶ 62, 86, 109; *see also* ECF No. 36-1 at 8 ("Each Employer may (but shall not be required to) make Employer Profit Sharing Contributions from year to year during the continuance of the Plan in such amounts as the Employer shall from time to time determine."); ECF No. 36-2 at 9 (same).  UnitedHealth's matching and profit-sharing contributions do not vest until an employee has completed two years of service. ECF No. 36-1 at 11; *see* Compl. ¶ 59.  The Plan incurred "at least $6 million" in

administrative expenses each year from 2019 to 2023.  Compl. ¶ 81.  Throughout that period, each Plan participant paid a fixed annual fee of $21 to cover these administrative expenses.  ECF No. 36-4 at 6.

If a Plan participant left UnitedHealth before completing two years of service, the (now former) employee forfeited the unvested matching and profit-sharing contributions. Compl. ¶ 59.  The Plan included a provision regarding the use of these forfeited funds:

> **Use of Forfeitures.**  Forfeitures *shall be used* for the following purposes, *as determined by the Administrative Committee, in its discretion*: to make restorations for rehired Participants as required in Section 6.2.2, to restore any forfeited transferred account balances as required in Section 7.5.3, to reduce Employer Safe Harbor Matching Contributions, to reduce Employer Profit Sharing Contributions, to reduce Plan expenses in the Plan Year in which the Participant's forfeiture event occurred or in the succeeding Plan Year, or to correct errors, omissions and exclusions.

*Id.* ¶ 62.

Each year from 2019 to 2023, the Administrative Committee elected to use all forfeitures totaling $19.3 million to reduce UnitedHealth's matching and profit-sharing contributions rather than to pay administrative expenses.  *Id.* ¶¶ 74–76.[1]  Assuming that

---

[1]    The Complaint is inconsistent about whether the Committee used forfeitures to reduce just UnitedHealth's required matching contributions or both its matching contributions and discretionary profit-sharing contributions.  Sometimes it alleges the former.  *See* Compl. ¶ 76 ("[B]ased on available information provided in the Form 5500s, between 2019 and 2023, over $19.3 million in forfeited funds were used to reduce UnitedHealth['s] matching contributions."); *id.* ¶¶ 94, 146.  Other times it alleges the latter. *See id.* ¶ 86 (alleging forfeitures were used "to offset UnitedHealth's matching contribution and profit sharing obligations to the Plan"); *id.* ¶ 109 ("Defendants simply chose to only benefit UnitedHealth by using forfeited funds to reduce UnitedHealth's obligations regarding its matching and profit sharing contribution obligations.").  The Complaint will

without the use of forfeited amounts UnitedHealth would have continued to make matching and profit-sharing contributions from its funds at the same levels, the Administrative Committee's decision to allocate forfeitures to UnitedHealth's contributions rather than to administrative expenses during this period resulted in a cumulative loss of Plan funds of up to $25,637,841. *Id.* ¶ 99.

Plaintiffs bring five ERISA claims: (1) Plaintiffs claim Defendants breached the fiduciary duty of prudence imposed by 29 U.S.C. § 1104(a). Compl. ¶¶ 132–40 (Count I). (2) Plaintiffs claim Defendants breached the fiduciary duty of loyalty imposed by 29 U.S.C. § 1104(a). Compl. ¶¶ 141–50 (Count II). (3) Plaintiffs claim UnitedHealth breached the anti-inurement provision of 29 U.S.C. § 1103(c)(1). Compl. ¶¶ 151–56 (Count III). (4) Plaintiffs claim UnitedHealth breached its fiduciary duty by failing to monitor the Committee and Committee members' performance of their fiduciary duties. Compl. ¶¶ 157–62 (Count IV). (5) Plaintiffs claim Defendants violated the prohibited-transaction rules in 29 U.S.C. § 1106(a)(1)(D) and (b). Compl. ¶¶ 163–68 (Count V); *see id.* ¶¶ 48, 101, 108. For relief, Plaintiffs seek class certification, a declaration that "the practices complained of" in the Complaint are unlawful and that Defendants have breached their fiduciary duties, an order enjoining Defendants from "engaging in each of the unlawful practices, policies and patterns set forth" in the Complaint, an order requiring Defendants to "make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, and to restore to the Plan all profits the Defendants made through use

---

be understood more broadly to allege that forfeitures were used to reduce UnitedHealth's matching and profit-sharing contributions.

of the Plan's assets, and to restore to the Plan all profits which the participants would have made" had Defendants fulfilled their fiduciary obligations under ERISA, an order requiring disgorgement of "all assets and profits secured by Defendants as a result" of the ERISA violations, compensatory damages "in the amount of any losses the Plan suffered, to be allocated among the participants' individual accounts in proportion to the accounts' losses," "[o]ther equitable relief" as "may be appropriate," pre-judgment interest, attorneys' fees and costs; and "[s]uch other and further relief as this Court deems just and proper." *Id.* at 32–33.

II

Start with Defendants' jurisdictional challenge and the familiar Rule 12 standards governing its adjudication.  A court reviewing a motion to dismiss for lack of subject-matter jurisdiction must first determine whether the movant is making a "facial" attack or a "factual" attack.  *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).  As the nomenclature suggests, a facial attack challenges only the complaint's jurisdictional allegations—*i.e.*, it challenges jurisdiction on the face of the complaint.  *See id.*  "Conversely, in a factual attack, the existence of subject matter jurisdiction is challenged in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered."  *Id.* at 914–15 (citation modified).  Here, Defendants advance a facial attack to subject-matter jurisdiction.  They accept the truth of the Complaint's jurisdictional allegations and argue these allegations are insufficient.  *See* ECF No. 35 at 16–21; *see also Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).

6

In a facial attack, "the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn*, 918 F.2d at 729 n.6. In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Gorog*, 760 F.3d at 792 (citation omitted). Jurisdictional allegations, like any other allegations in a complaint, are subject to Rule 8(a)'s standard of "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). To meet this requirement, a plaintiff must satisfy the plausibility standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Penrod v. K&N Eng'g, Inc.*, No. 18-cv-2907 (ECT/LIB), 2019 WL 1958652, at *3–4 (D. Minn. May 2, 2019) (applying the *Twombly/Iqbal* plausibility standard to jurisdictional allegations); *Hawse v. Page*, 7 F.4th 685, 688–89 (8th Cir. 2021) (same); *Auer v. Trans Union, LLC*, 902 F.3d 873, 878 (8th Cir. 2018) (same). In other words, the complaint must contain "enough facts" to nudge the showing of subject-matter jurisdiction "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "'[N]aked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (second alteration in original) (quoting *Twombly*, 550 U.S. at 557). A complaint must include "factual content that allows the court to draw the reasonable inference" that there is subject-matter jurisdiction. *Id.* at 678–79 (describing this as a "context-specific task" that requires the court "to draw on its judicial experience and common sense").

The standing doctrine "serves to identify those disputes which are appropriately resolved through the judicial process"—in other words, those disputes that qualify as

7

"Cases" or "Controversies" under Article III. *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). A plaintiff meets "the irreducible constitutional minimum of standing" when (1) he has suffered an "injury in fact," (2) there is "a causal connection between the injury and the conduct complained of" that is "fairly traceable to the challenged action of the defendant," and (3) it is "likely . . . that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation modified). The Supreme Court has instructed that "[i]n an era of frequent litigation [and] class actions . . . courts must be more careful to insist on the formal rules of standing, not less so." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 146 (2011). "In assessing a plaintiff's Article III standing, we must 'assume that on the merits the plaintiffs would be successful in their claims.'" *Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016) (quoting *Muir v. Navy Fed. Credit Union*, 529 F.3d 1100, 1105 (D.C. Cir. 2008)).

Here, the Complaint alleges facts plausibly showing the essential elements of Article III standing.[2] (1) The Complaint alleges an economic injury. The theory is that

---

[2]    In *Matula v. Wells Fargo & Co.*, an ERISA case challenging an administrator's use of forfeitures, the Eighth Circuit held that the plaintiff lacked Article III standing because the complaint did not contain allegations of "any actual injury to [the plaintiff's] Plan account stemming from Wells Fargo's use of forfeited funds." 175 F.4th 958, 961 (8th Cir. 2026); *see id.* at 961 n.2 ("Specifically, counsel noted the complaint identified 'Plan-level' harms but conceded that 'we haven't pled a harm to [Matula]' and 'we did not identify . . . in our complaint' any specific expenses paid by Matula that could have been offset with forfeited funds."). Here, the Complaint alleges Plaintiffs suffered actual injuries to their accounts. *See* Compl. ¶¶ 20, 80, 99. And Defendants acknowledge that "the Plan's payment of fees from participants' accounts rather than the forfeiture account might result in a loss to Plaintiffs." ECF No. 43 at 7 (citation modified).

UnitedHealth's "robust financial performance" from 2019 through 2023, Compl. ¶ 94; *see id.* ¶¶ 87–92, positioned the company to comfortably satisfy its matching-contribution requirements and make the same amount of discretionary profit-sharing contributions without the forfeited amounts the Committee elected to use to reduce UnitedHealth's contributions, *see id.* ¶ 93. In this situation, Plaintiffs allege, ERISA required the Committee to use forfeited amounts to reduce Plan expenses. *See id.* ¶¶ 102–05. Assuming Plaintiffs' success on the merits of this contention, *Am. Farm Bureau Fed'n*, 836 F.3d at 968, Plaintiffs have shown an injury by their allegation that the Committee's use of forfeited amounts to reduce UnitedHealth's contributions resulted in a more-than-$25 million compounded loss in Plan benefits from 2019 through 2023, *see* Compl. ¶ 99. Complaints alleging this kind of economic harm are no-doubters regarding Article III's injury-in-fact requirement. *See Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 642 (2007) (Souter, J., dissenting); *see also Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014) (recognizing that an alleged economic harm, "even if only a few pennies," "is a concrete, non-speculative injury"). And the math underlying Plaintiffs' injury theory works. *See Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 WL 194772, at *10 (N.D. Ill. Jan. 26, 2026).[3] (2) The Complaint plausibly alleges a causal

---

[3] In addition to characterizing Plaintiffs' failure to allege that the Plan suffered a loss as a jurisdictional/Article III problem, *see* ECF No. 35 at 19–21, Defendants characterized it as a merits problem, *see id.* at 16–19. Plaintiffs sue under 29 U.S.C. § 1132(a)(2). *See* Compl. ¶¶ 7, 11. This statute requires Plaintiffs to show, among other things, that Defendants' fiduciary breaches injured the Plan. 29 U.S.C. § 1109(a); *see Smith v. Med. Benefit Adm'rs Grp., Inc.*, 639 F.3d 277, 282 (7th Cir. 2011). Here, for the same reasons Plaintiffs plausibly allege Article III injury, they meet the statutory requirement that they allege injury to the Plan.

9

connection between Defendants' actions and this injury: But for its decision to use forfeited amounts to reduce UnitedHealth's contributions, the Committee would have used those amounts to reduce Plan expenses, eliminating the injury Plaintiffs identify. (3) Redressability isn't in doubt.   The monetary relief Plaintiffs seek—whether characterized as a restoration, disgorgement, damages, or something else—would position the Plan as if the harm had not occurred.

Defendants advance three arguments to show that Plaintiffs have not plausibly alleged an injury-in-fact, but these contentions are not persuasive.  Defendants first argue the Plan suffered no injury because "the Plan pays the same amount of administrative expenses regardless of the source of such payments."  ECF No. 35 at 18.  Fair enough.  But Plaintiffs' theory isn't just that the Committee should have exercised its judgment to use forfeited amounts to pay administrative expenses.  Plaintiffs allege that, had the Committee done that, UnitedHealth's matching and profit-sharing contributions would have remained the same, increasing the Plan's assets.  *See* Compl. ¶ 99.  Second, Defendants say it is "speculation" whether UnitedHealth would have continued contributing at the same levels had the Committee used forfeited amounts to reduce the Plan's administrative fees.  ECF No. 35 at 19–20.  I do not agree.  The Complaint's allegations regarding UnitedHealth's financial performance permit the plausible inference that UnitedHealth's matching and profit-sharing contributions in the amounts dispensed from 2019 through 2023 were not dependent on the Committee's use of forfeited funds.  In other words, it is plausible that

10

UnitedHealth would have contributed the same amounts regardless.[4]   Third, Defendants argue that UnitedHealth "was free to amend the Plan during the class period to eliminate contributions if it chose to do so." ECF No. 43 at 8.  Presuming that UnitedHealth would have taken that step (in reaction to the Committee's use of forfeited amounts to pay administrative expenses) would be at odds with the Complaint's contrary allegation that UnitedHealth's contributions would not have changed, and that would violate the requirement that the Complaint's factual allegations be accepted as true in this procedural context.  The Complaint plausibly alleges Article III standing.

## III

### A

Turn next to the merits, keeping in mind the Rule 12(b)(6) standards described above.  Begin with Plaintiffs' claim that Defendants breached ERISA's duty of prudence. The duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  This is an objective standard.

---

[4]     There is another reason to infer that UnitedHealth's matching and profit-sharing contributions would have remained the same had the Committee used forfeitures to reduce the Plan's administrative expenses.  The forfeited amounts the Committee used to reduce UnitedHealth's contributions were insubstantial compared to UnitedHealth's contributions overall.  In 2019, for example, UnitedHealth's matching and profit-sharing contributions exceeded $419 million, ECF No. 37-1 at 4, while the forfeitures used to reduce UnitedHealth's contributions for that same year totaled roughly $3.2 million, Compl. ¶ 74. In other words, the forfeitures used reduced UnitedHealth's total 2019 cash contributions by less than 1%.  The figures for the following years are comparable.  *See* Compl. ¶¶ 65, 68, 70, 72; ECF No. 37-1 at 9, 14, 19, 24.

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).  The duty of prudence concerns how a fiduciary "must act."  *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 278 (8th Cir. 2022).  "The process is what ultimately matters, not the results."  *Id.*; *see Braden*, 588 F.3d at 595 ("In evaluating whether a fiduciary has acted prudently, we therefore focus on the process by which it makes its decisions rather than the results of those decisions.").  "A plaintiff typically clears the pleading bar by alleging enough facts to '*infer* . . . that the process was flawed.'"  *Matousek*, 51 F.4th at 278 (quoting *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 482–83 (8th Cir. 2020)); *see Braden*, 588 F.3d at 595 (holding plaintiff was not "required to describe directly the ways in which appellees breached their fiduciary duties" and need not "plead 'specific facts' explaining precisely how the defendant's conduct was unlawful"); *see also Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) ("We agree with the Eighth Circuit: an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story.").  For example, "'[c]ircumstantial allegations about [the fiduciary's] methods' based on the 'investment choices a plan fiduciary made' can be enough."  *Davis*, 960 F.3d at 483 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).

The Complaint alleges facts plausibly showing the Committee followed an imprudent process in deciding to use forfeited amounts to reduce UnitedHealth's matching and profit-sharing contributions as opposed to using those amounts to reduce administrative expenses.  The Complaint acknowledges that the Plan gave the Committee discretion to choose between using forfeitures to reduce UnitedHealth's matching and

12

profit-sharing contributions or reduce Plan expenses. Compl. ¶¶ 61–62. The Complaint alleges—and Defendants don't seem to dispute—that for every year from 2019 through 2023, the Committee elected to use forfeitures to reduce UnitedHealth's contributions. *See id.* ¶ 76. The Complaint alleges that during each of these years, UnitedHealth would have made matching and profit-sharing contributions in the same amounts without the reductions resulting from the Committee's elections. *See id.* ¶ 99. This allegation is plausible considering the additional allegations regarding UnitedHealth's financial performance during that same period—*i.e.,* allegations showing it "had more than sufficient cash and equivalents on hand" to contribute at these same levels. *Id.* ¶ 93; *see id.* ¶¶ 87–92. This allegation also is plausible considering the forfeitures reduced UnitedHealth's contributions by a relatively modest amount. *Contrast id.* ¶¶ 65, 68, 70, 72, 74, *with* ECF No. 37-1 at 4, 9, 14, 19, 24. If UnitedHealth had made matching and profit-sharing contributions in the same amounts without the reductions resulting from the Committee's elections, then, the Complaint plausibly alleges, the Committee's choice left the Plan with roughly $25.6 million less in cumulative assets by the end of 2023 than had the Committee chosen to use forfeitures to reduce the Plan's administrative expenses. Compl. ¶ 99. This amount, combined with the fact that the Committee made the same asset-reducing choice each year from 2019 through 2023, plausibly shows an imprudent process.

The several grounds Defendants identify to support dismissal of the breach-of-duty-of-prudence claim are unconvincing. (1) Defendants characterize this claim as one alleging that the use of forfeitures to fund employer contributions is "*per se* imprudent" and point

out that a "majority of courts across jurisdictions have dismissed nearly identical claims." ECF No. 35 at 23–24. Plaintiffs do not assert a per se claim. As I understand the Complaint, the claim depends on showing that UnitedHealth would have contributed the same matching and profit-sharing amounts unreduced by forfeitures as it contributed with the help of forfeitures. Cases addressing per se claims are not helpful. (2) Defendants argue that Plaintiffs' theory would be inconsistent with the Plan's terms. *See id.* at 25–28. This is difficult to understand. The Plan gave the Committee the option to use forfeitures to reduce employer contributions or Plan expenses. Compl. ¶ 62. Plaintiffs' theory isn't that the Committee was required in every situation to use forfeitures to reduce Plan expenses. The theory is that the Committee's choice to use forfeitures to reduce UnitedHealth's contributions during the years 2019 through 2023 was imprudent. This theory is consistent with the Plan's terms. (3) Defendants argue that Plaintiffs' theory "ignores that a fiduciary could prudently conclude that further subsidizing participants' fees would lead to unintended consequences," including a decision by UnitedHealth to "reduce or eliminate employer contribution amounts." ECF No. 35 at 28. Perhaps. But accepting this contention would require rejecting the Complaint's factual allegations tending to show the opposite. (4) Defendants point out that "more than sixty years of guidance from the IRS, DOL, and Congress" endorses the use of forfeitures to reduce an employer's pension-plan contributions. *Id.* at 29–32. The fact that the Committee might lawfully have used forfeitures to reduce UnitedHealth's contributions does not answer whether the Committee's decision to do that complied with its duty of prudence. *Cf. Russell v. Ill. Tool Works, Inc.*, No. 22 CV 02492, 2026 WL 332662, at *6 (N.D. Ill. Feb.

9, 2026) (rejecting this contention in context of claim that defendant breached duty of loyalty). Plaintiffs plausibly allege that Defendants breached the duty of prudence.

B

Turn next to Plaintiffs' claim that Defendants breached the duty of loyalty. The duty of loyalty requires a fiduciary to act "solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). "Perhaps the most fundamental duty of a [fiduciary] is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons." *Pegram v. Herdrich*, 530 U.S. 211, 224 (2000) (citation modified). A breach-of-loyalty claim is "governed by a two-step framework: first, the reviewing court evaluates the parties' interests to determine if they conflict; if so, the court closely scrutinizes the defendant's actions to determine the defendant's mindset." *Snyder v. UnitedHealth Grp., Inc.*, No. 21-cv-1049 (JRT/DJF), 2024 WL 1076515, at *8 (D. Minn. Mar. 12, 2024) (citing *Rozo v. Principal Life Ins. Co.*, 48 F.4th 589, 596–97 (8th Cir. 2022)). "The duty of loyalty is a subjective standard; what matters is *why* the defendant acted as it did." *Id.* (citation modified) (quoting *In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d 868, 875 (D. Minn. 2018), *aff'd sub nom.*, *Allen v. Wells Fargo & Co.*, 967 F.3d 767 (8th Cir. 2020)). A defendant's motivation poses a question of fact. *Id.* (citing *Rozo*, 48 F.4th at 597).

The Complaint plausibly alleges both elements of this claim. Though the claim's elements are distinct, the analysis of this claim parallels the breach-of-duty-of-prudence claim's analysis. UnitedHealth and Plaintiffs' interests conflicted regarding the use of forfeitures. Using forfeitures to reduce UnitedHealth's matching and profit-sharing contributions benefitted UnitedHealth, if not greatly, while using forfeitures to reduce Plan expenses would have advantaged Plaintiffs. The Complaint alleges at a high level that self-interest motivated the Committee to use forfeitures to reduce UnitedHealth's contributions. Compl. ¶ 147. Specific allegations showing that the use of forfeitures to pay Plan expenses would have increased Plan assets permit the plausible inference that Defendants' interests motivated this decision.

According to Defendants, Plaintiffs fail to plausibly allege a breach of the duty of loyalty because the Plan authorized the use of forfeitures to reduce UnitedHealth's contributions. ECF No. 35 at 33. This contention does not account for the subjective standard governing a duty-of-loyalty claim. What matters isn't whether the Plan or statute might have allowed a fiduciary acting in good faith to make the same decision; what matters is whether a fiduciary made the decision with the subjective intent to serve her own or her employer's interests rather than with the "purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i); *see In re Wells Fargo ERISA 401(k) Litig.*, 331 F. Supp. 3d at 875. Defendants also argue that pleading a "conflict of interest" alone amounts to pleading a legal conclusion that is not enough to meet the pleading requirements of Rule 8 (and *Twombly*/*Iqbal*). ECF No. 35 at 34. This is correct as a legal rule, but it is not an accurate description of what Plaintiffs have done.

16

Here, the Complaint does not merely "point to . . . the tension inherent in the fiduciaries' dual roles as ERISA fiduciaries and [employer] officers." *Dormani v. Target Corp.*, 970 F.3d 910, 917 (8th Cir. 2020). Its allegations concern a specific benefits-related decision regarding the use of forfeitures, and it alleges how that decision held conflicting advantages (and disadvantages) for Plaintiffs and Defendants. That is enough to show a conflict of interest.

C

Plaintiffs' claim that UnitedHealth violated ERISA's anti-inurement provision is not plausible. The statute on which this claim is based, 29 U.S.C. § 1103(c)(1), provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." This section "focuses exclusively on whether fund assets were used to pay pension benefits to plan participants." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442 (1999). "The provision demands only that plan assets be held for supplying benefits to plan participants." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004). Its purpose, "in common with ERISA's other fiduciary responsibility provisions, is to apply the law of trusts to discourage abuses such as self-dealing, imprudent investment, and misappropriation of plan assets, by employers and others." *Id.* at 23. Section 1103(c)(1) does not prohibit "incidental benefits" conferred upon an employer. *Hughes Aircraft Co.*, 525 U.S. at 445–46; *see Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) (finding no violation of § 1103(c)(1) because "[a]ny benefit received by [the employer] was, at

17

most, indirect"). "[C]laims under the anti-inurement provision usually require reversion or diversion of plan assets to the sponsor." *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851, 864–65 (N.D. Cal. 2024); *see Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) (recognizing that § 1103(c)(1) "can only be violated if there has been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan participants"); *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995) (finding no violation of § 1103(c)(1) where no "reversion, diversion, or any other sort of payment of surplus assets to" the employer was alleged); *Boyle v. Anderson*, 68 F.3d 1093, 1102 (8th Cir. 1995) (explaining that § 1103(c)(1) was "intended to prohibit . . . wrongful diversions of trust assets").

Here, the Complaint alleges that forfeitures were used to pay Plan benefits in the form of UnitedHealth's matching and profit-sharing contributions. Any benefit to UnitedHealth was incidental to this primary purpose. *See Hutchins*, 737 F. Supp. 3d at 864–67 (rejecting comparable claim). To defend this claim, Plaintiffs cite *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024). ECF No. 40 at 32–33. There, the court denied a motion to dismiss a § 1103(c)(1) claim, finding that the use of forfeitures was "equivalent to 'debt forgiveness' and [was] thus a 'direct and greater-than-incidental benefit' to Intuit." *Rodriguez*, 744 F. Supp. 3d at 946. Key to the determination that the use of forfeitures amounted to "debt forgiveness" was the court's conclusion that the Intuit plan could plausibly be construed "as prohibiting the use of forfeitures to reduce Intuit's matching contributions." *Id.* We don't have that here. For this reason, *Rodriguez* is distinguishable.

18

D

Plaintiffs claim UnitedHealth breached its fiduciary duty by failing to monitor the Committee and Committee members' performance of their fiduciary duties. "[A]ppointing fiduciaries must review the performance of trustees and other fiduciaries 'in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards.'" *In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1093 (D. Minn. 2017) (quoting *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011)). To state a failure-to-monitor claim, a plaintiff must allege (1) that the defendant was responsible for appointing and removing the fiduciary responsible for an alleged breach of fiduciary duties; and (2) the defendant had knowledge or participated in those fiduciary breaches. *Krueger v. Ameriprise Fin., Inc.*, No. 11-cv-2781 (SRN/JSM), 2012 WL 5873825, at *18 (D. Minn. Nov. 20, 2012) (citing *Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 787 (E.D. Mo. 2010)). Without an underlying fiduciary breach, a failure-to-monitor claim fails. *See Allen*, 967 F.3d at 777. Here, UnitedHealth argues only that this claim should be dismissed because Plaintiffs failed to plausibly allege an underlying fiduciary breach. ECF No. 35 at 40. Because I've concluded that the Complaint plausibly alleges breaches of the fiduciary duties of prudence and loyalty, Plaintiffs' failure-to-monitor claim will not be dismissed.

E

Plaintiffs claim Defendants violated the prohibition on self-dealing in 29 U.S.C. § 1106(b). Compl. ¶¶ 164–65. Though not referenced within Count V, Plaintiffs elsewhere claim Defendants also violated the prohibition on plan-asset "transfer[s] to, or use[s] by or

19

for the benefit of a party in interest" in § 1106(a)(1)(D).  Compl. ¶ 108.  Section 1106 "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § [11]04(a), by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241–42 (2000) (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)).  Section 1106(b)(1) prohibits a plan fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account."  29 U.S.C. § 1106(b)(1).  "[V]iolations of [29] U.S.C. § 1106(b)(1) generally involve an ERISA fiduciary's use of plan assets for personal profit, gain or advantage."  *Alves v. Harvard Pilgrim Health Care Inc.*, 204 F. Supp. 2d 198, 214 (D. Mass. 2002).  A transaction does not violate 1106(b)(1)'s self-dealing prohibition merely because it confers some incidental benefit on a fiduciary.  *See Lockheed Corp. v. Spink*, 517 U.S. 882, 892–93 (1996).  The bar against self-dealing is "absolute."  *Pipefitters Loc. 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 722 F.3d 861, 868 (6th Cir. 2013); *see Barboza v. Cal. Ass'n of Pro. Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015) (explaining that "prohibited transactions constitute 'per se violations of ERISA'" (quoting *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1345 (9th Cir. 1994))).

This claim is not plausible.  It is difficult to understand how Defendants "deal[t] with the assets of the plan in [their] own interest or for [their] own account," 29 U.S.C. § 1106(b)(1), when the assets (the forfeitures) were used to pay Plan benefits.  *See Hutchins*, 737 F. Supp. 3d at 868 (rejecting comparable claim).  The decision to use forfeitures to reduce UnitedHealth's contributions did not risk the Plan's ability to pay promised benefits.  It served that purpose.  *See Lockheed Corp.*, 517 U.S. at 893.  And,

considering Plaintiffs do not characterize their prohibited-transaction claim as an alternative to their other claims, the categorical prohibited-transaction/self-dealing theory cannot survive Plaintiffs' concession that the use of forfeitures to reduce an employer's contributions would be appropriate in some circumstances. *See* ECF No. 40 at 19 (acknowledging that Plaintiffs "expressly allege a *context-dependent* violation of ERISA's loyalty standard, not a categorical rule"); *see Gardner-Keegan*, 2026 WL 194772, at *11; *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873, 897–98 (C.D. Ill. 2025).[5]

*

This case is one of many filed in federal courts asserting ERISA claims against plan fiduciaries who used forfeited funds to reduce an employer's plan contributions. These cases have produced many judicial decisions. We last updated the list on June 9. As of that date, we identified 51 of these decisions. Though relatively few of them are cited

---

[5]   Effective January 1, 2024, the Plan was amended to require that forfeitures be used to reduce UnitedHealth's contributions (and not administrative expenses). ECF No. 36-3 at 4. Defendants argued that this amendment rendered Plaintiffs' claims implausible beginning on that date. ECF No. 35 at 39–40. Plaintiffs did not respond to this argument, meaning they waived the issue. *See Dorosh v. Minn. Dep't of Hum. Servs.*, No. 23-cv-1144 (ECT/LIB), 2023 WL 6279374, at *9 (D. Minn. Sep. 26, 2023) ("A plaintiff waives its claims by failing to respond to a defendant's arguments on a motion to dismiss."); *Hopper v. BMO Harris Bank, N.A.*, No. 22-cv-1828 (JRT/JFD), 2023 WL 4936160, at *3 (D. Minn. Aug. 2, 2023) ("Failure to respond to arguments in favor of dismissal may constitute waiver and abandonment, justifying dismissal on that basis alone."); *Doe v. Mayorkas*, No. 22-cv-752 (ECT/DTS), 2022 WL 4450272, at *2 (D. Minn. Sep. 23, 2022) (citing *Espey v. Nationstar Mortg., LLC*, No. 13-cv-2979 (ADM/JSM), 2014 WL 2818657, at *11 (D. Minn. June 19, 2014) (collecting cases)); *Christensen v. PennyMac Loan Servs.*, 988 F. Supp. 2d 1036, 1042 (D. Minn. 2013) ("Plaintiff's failure to respond amounts to a waiver, and on that basis alone, defendants' motion to dismiss should be granted."). The Complaint will be dismissed to the extent it asserts claims based on Defendants' actions after January 1, 2024.

above, we have carefully reviewed them all.  They are the following: *Hutchins v. HP Inc.*, 737 F. Supp. 3d 851 (N.D. Cal. 2024); *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912 (N.D. Cal. 2025), *appeal filed*, 25-826 (9th Cir. Feb. 7, 2025); *Tillery v. WakeMed Health & Hosps.*, 819 F. Supp. 3d 442 (E.D.N.C. 2026); *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-CV-1732 TWR (JLB), 2024 WL 4508450 (S.D. Cal. Sep. 19, 2024); *Dimou v. Thermo Fisher Sci. Inc.*, No. 23-cv-1732-BJC-JLB, 2025 WL 2611240 (S.D. Cal. Sep. 9, 2025); *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870 (D. Ariz. 2025); *Jacob v. RTX Corp.*, 817 F. Supp. 3d 341 (E.D. Va. 2026), *appeal filed*, No. 26-1127 (4th Cir. Feb. 6, 2026); *Polanco v. WPP Grp. USA, Inc.*, No. 24-cv-9548 (JGK), 2025 WL 3003060 (S.D.N.Y. Oct. 27, 2025); *Polanco v. WPP Grp. USA, Inc.*, No. 24-cv-9548 (JGK), 2026 WL 1099370 (S.D.N.Y. Apr. 22, 2026), *appeal filed*, No. 26-1379 (2d Cir. May 19, 2026); *Estay v. Ochsner Clinic Found.*, Civil No. 25-507, 2025 WL 2644782 (E.D. La. Sep. 15, 2025); *Estay v. Ochsner Clinic Found.*, Civil No. 25-507, 2026 WL 809570 (E.D. La. Mar. 24, 2026), *appeal filed*, No. 26-30236 (5th Cir. Apr. 27, 2026); *Donelson v. Meijer, Inc.*, --- F. Supp. 3d ---, No. 1:25-cv-1156, 2025 WL 3754241 (W.D. Mich. Dec. 29, 2025); *Enstrom v. SAS Inst. Inc.*, 820 F. Supp. 3d 410 (E.D.N.C. 2026), *appeal filed sub nom.*, *Stana v. SAS Inst. Inc.*, No. 26-1305 (4th Cir. Mar. 18, 2026); *Bozzini v. Ferguson Enters. LLC*, No. 22-cv-05667-AMO, 2025 WL 1547617 (N.D. Cal. May 29, 2025); *Brown v. Peco Foods, Inc.*, 812 F. Supp. 3d 664 (S.D. Miss. 2025); *Brewer v. All. Coal, LLC*, No. 24-CV-0406-CVE-SH, 2025 WL 3527171 (N.D. Okla. Dec. 9, 2025); *Cain v. Siemens Corp.*, Civil No. 24-8730, 2025 WL 2172684 (D.N.J. July 31, 2025); *Shulak v. BMO Fin. Corp.*, No. 25-cv-02232, 2026 WL 879652 (N.D. Ill. Mar. 30, 2026); *del Bosque v.*

22

*Coca-Cola Sw. Beverages LLC*, No. 3:25-CV-01270-X, 2025 WL 3171326 (N.D. Tex. Nov. 13, 2025); *Cano v. Home Depot, Inc.*, No. 1:24-cv-03793-TRJ, 2025 WL 2589567 (N.D. Ga. Aug. 26, 2025), *appeal dismissed*, No. 25-13158-JJ, 2025 WL 3700579 (11th Cir. Dec. 1, 2025); *Wright v. JPMorgan Chase & Co.*, No. 2:25-cv-00525-JLS-JC, 2025 WL 1683642 (C.D. Cal. June 13, 2025); *Gaetano v. MVHS, Inc.*, No. 6:25-CV-118 (AJB/CBF), 2026 WL 850360 (N.D.N.Y. Mar. 27, 2026); *Middleton v. Amentum Parent Holdings, LLC*, No. 23-CV-2456-EFM-BGS, 2025 WL 2229959 (D. Kan. Aug. 5, 2025); *Naylor v. BAE Sys., Inc.*, No. 1:24-cv-00536 (AJT/WEF), 2024 WL 4112322 (E.D. Va. Sep. 5, 2024); *Armenta v. WillScot Mobile Mini Holdings Corp.*, No. CV-25-00407-PHX-MTL, 2025 WL 2645518 (D. Ariz. Sep. 15, 2025); *Armenta v. WillScot Mobile Mini Holdings Corp.*, No. CV-25-00407-PHX-MTL, 2026 WL 864463 (D. Ariz. Mar. 30, 2026); *Garner v. Northrop Grumman Corp.*, No. 1:25-cv-00439 (AJT/WEF), 2025 WL 3488657 (E.D. Va. Dec. 4, 2025); *Fumich v. Novo Nordisk Inc.*, Civil No. 24-9158 (ZNQ) (JBD), 2025 WL 2399134 (D.N.J. Aug. 19, 2025); *McWashington v. Nordstrom, Inc.*, No. C24-1230 TSZ, 2025 WL 1736765 (W.D. Wash. June 23, 2025); *Beroset v. Duke Univ.*, No. 1:25-CV-919, 2026 WL 765518 (M.D.N.C. Mar. 16, 2026); *Hernandez v. AT&T Servs., Inc.*, No. 2:25-cv-00676-ODW (PVCx), 2025 WL 3208360 (C.D. Cal. Nov. 14, 2025); *Barragan v. Honeywell Int'l Inc.*, No. 24cv4529 (EP) (JRA), 2024 WL 5165330 (D.N.J. Dec. 19, 2024); *Barragan v. Honeywell Int'l Inc.*, No. 24cv4529 (EP) (JRA), 2025 WL 2383652 (D.N.J. Aug. 18, 2025); *Steen v. Sonoco Prods. Co.*, No. 4:24-cv-03105-JD, 2025 WL 2420725 (D.S.C. June 4, 2025); *Parker v. Tenneco Inc.*, No. 23-10816, 2026 WL 852046 (E.D. Mich. Mar. 27, 2026); *Curtis v. Amazon.com Servs., LLC*, No. C24-

23

2164RSM, 2026 WL 124323 (W.D. Wash. Jan. 16, 2026); *Madrigal v. Kaiser Found. Health Plan, Inc.*, No. 2:24-cv-05191-MRA-JC, 2025 WL 1299002 (C.D. Cal. May 2, 2025); *Buescher v. N. Am. Lighting, Inc.*, 791 F. Supp. 3d 873 (C.D. Ill. 2025); *Russell v. Illinois Tool Works, Inc.*, No. 22 CV 02492, 2026 WL 332662 (N.D. Ill. Feb. 9, 2026); *Perez-Cruet v. Qualcomm Inc.*, No. 23-cv-1890-BEN (MMP), 2024 WL 2702207 (S.D. Cal. May 24, 2024), *reconsideration denied*, No. 23-CV-1890-BEN (MMP), 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024); *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2024 WL 4944363 (N.D. Cal. Nov. 1, 2024); *McManus v. Clorox Co.*, No. 4:23-CV-05325-YGR, 2025 WL 732087 (N.D. Cal. Mar. 3, 2025); *Heet v. Nat'l Med. Care, Inc.*, 819 F. Supp. 3d 63 (D. Mass. 2026); *Becerra v. Bank of Am. Corp.*, No. 3:24-cv-921-MOC-DCK, 2025 WL 3032922 (W.D.N.C. Aug. 12, 2025); *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935 (N.D. Cal. 2024); *Stewart v. Nextera Energy, Inc.*, No. 23-81314-CIV-CANNON, 2025 WL 3098085 (S.D. Fla. Aug. 14, 2025); *In re Cigna ERISA Litig.*, No. 25-cv-2465-JMY, 2026 WL 1398620 (E.D. Pa. May 19, 2026); *Gardner-Keegan v. W.W. Grainger, Inc.*, No. 1:25-cv-5233, 2026 WL 194772 (N.D. Ill. Jan. 26, 2026); *Liao v. Fisher Asset Mgmt., LLC*, No. 24-cv-02036-JST, 2024 WL 4351869 (N.D. Cal. Sep. 30, 2024); *Liao v. Fisher Asset Mgmt., LLC*, No. 24-cv-02036-JST, 2025 WL 1696556 (N.D. Cal. June 16, 2025), *appeal filed*, No. 25-4379 (9th Cir. July 16, 2025); *Nykiel v. Smith & Nephew, Inc.*, Civil No. 24-12247-NMG, 2025 WL 2347549 (D. Mass. July 11, 2025), *R. & R. adopted*, Civil No. 24-12247-NMG, 2025 WL 2347430 (D. Mass. Aug. 13, 2025).

Whether any of these decisions was informative here depended on a variety of considerations. These included the claim or claims at issue in those cases, the precise

theory or theories underlying those claims, and the cases' facts, including specifically the fiduciaries' alleged actions and the Plan terms. I identified no clear trend or consensus in these decisions that might justify a particular outcome on this motion.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT** Defendants' Motion to Dismiss the Consolidated Amended Complaint [ECF No. 33] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Consolidated Amended Class Action Complaint [ECF No. 29] is **DISMISSED WITH PREJUDICE** to the extent it concerns Defendants' actions on or after January 1, 2024.

2. To the extent they concern Defendants' actions before January 1, 2024, Counts III and V are **DISMISSED WITHOUT PREJUDICE**.

3. In all other respects, Defendants' Motion to Dismiss the Consolidated Amended Complaint is **DENIED**.

Dated: June 22, 2026                    s/ Eric C. Tostrud
                                        Eric C. Tostrud
                                        United States District Court